## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **WALTER WELCH, Individually and on Behalf of all Others Similarly Situated,**<br><br>**Plaintiff**<br><br>vs.<br><br>**CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC,**<br><br>**Defendants.** | **CIVIL ACTION NO. 2:19-cv-01260**<br><br>**JUDGE TERRY A. DOUGHTY** |
| **KELLY BATES, Individually and on Behalf of all Others Similarly Situated,**<br><br>**Plaintiff**<br><br>vs.<br><br>**CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC,**<br><br>**Defendants.** | **CIVIL ACTION NO. 2:19-cv-01427**<br><br>**JUDGE TERRY A. DOUGHTY** |

## MEMORANDUM OF LAW IN SUPPORT OF THERESA AND HARRY COKER'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF SELECTION OF COUNSEL</u>

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................................ 1

II.   FACTUAL BACKGROUND.................................................................................................. 2

III.  ARGUMENT........................................................................................................................ 4

    A.    Consolidation of the Actions Is Appropriate ...................................................... 4

    B.    Appointing Movant as Lead Plaintiff Is Appropriate ......................................... 5

       1.    The Procedure Required by the PSLRA ............................................................ 5

       2.    Movants Satisfy the "Lead Plaintiff" Requirements of the PSLRA ................. 6

          a.    Movants Have Complied with the PSLRA and Should Be Appointed Lead Plaintiff ................................................................................................ 6

          b.    Movants have the Largest Financial Interest in the Litigation ......................... 6

          c.    Movants Satisfy Rule 23 .................................................................................. 7

    C.    Approving Movants' Selection of Counsel Is Appropriate ............................. 9

IV.  CONCLUSION ..................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Johnson v. LeBlanc,*
   Civil Action No.: 6:10-cv-0985 Section P, U.S. Dist. LEXIS 68036 (W.D. La. July 7, 2010).. 5

*In re Orthodontics Ctrs. Of America, Inc.,*
   Civ. A. No. 01-949 Section "T" (5), 2001 U.S. Dist. LEXIS 21816 (E.D. La. Dec. 17, 2001) ...... 8

*Tarica v. McDermott Int'l Inc.*,
   Civ. A. No. 99-3831 Section "R" (5), 2000 U.S. Dist. LEXIS 5031 (E.D. La. Apr. 13, 2000)..... 9

**Statutes**

15 U.S.C. § 77z-1 ................................................................................................................. *passim*

15 U.S.C. § 78u-4 ............................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................... 1, 8, 9, 10

Fed. R. Civ. P. 42(a) ................................................................................................................. 5

## I.      PRELIMINARY STATEMENT

Lead Plaintiff movants Theresa and Harry Coker ("Movants") respectfully submit this memorandum of law in support of their motion ("Motion") to appoint them as lead plaintiff in the above captioned actions (the "Actions") and approve their selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel and Fishman Haygood ("Fishman") as Liaison Counsel, pursuant to Section 21D of the Securities Exchange Act of 1934 and Section 27 of the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on behalf of a persons who purchased or otherwise acquired securities of Waitr Holdings, Inc. ("Waitr" or the "Company") (A) in connection with Old-Waitr's (defined below) going public transaction and business combination on November 15, 2018 with Landcadia Holdings, Inc. ("Landcadia") (the "Going Public Transaction"), and the follow-on secondary offering on May 16, 2019 (the "Secondary Offering") of Waitr securities, and (B) between May 17, 2018 to August 8, 2019 (the "Class Period"), inclusive, seeking to recover damages against Defendants pursuant to Sections 11, 12, and 15 of the 1933 Securities Act, 15 U.S.C. §§ 77a, et seq. (the "Securities Act"), and/or § 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

Movants are the most adequate plaintiff as defined by the PSLRA.  Specifically, Movants have standing to assert Exchange Act claims because they purchased Waitr securities during the Class Period and suffered losses of $44,319.37 as a result of Defendants' alleges material misstatements. *See* Declaration of Jason W. Burge in Support of Theresa and Harry Coker's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Burge Decl.") at Exhibit ("Ex.") B. In addition, Movants satisfy the requirements of Federal

1

Rules of Civil Procedure 23 in that their claims are typical of the claims of the putative class and they will fairly and adequately represent the interests of the class.

Accordingly, the Court should grant Movants' motion.

## II.      FACTUAL BACKGROUND[1]

Waitr Inc. ("Old-Waitr", the pre-merger entity) was formed in 2013, and in 2014 began operating as a platform for online mobile food ordering and delivery service. ¶ 1. After a slow start, the Company expanded rapidly, connecting restaurants, diners and delivery drivers predominately in non-urban "underserved" tertiary-markets as the popularity of third-party online food delivery "apps" grew. *Id.* By the time Old-Waitr was founded, strong competitors were already in the market. *Id.*

Landcadia, a special purpose acquisition company ("SPAC" or "blank check company") whose business was to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses, was founded in 2008. ¶ 2. In May 2016, Landcadia completed an initial public offering raising approximately $250 million.  *Id.* Pursuant to its offering Landcadia and its co-chairmen, Tilman Fertitta ("Fertitta") and Richard Handler ("Handler") were required to complete an acquisition within 24 months, or by June 1, 2018. *Id.* If, however, Landcadia, Fertitta, and Handler were unable to complete an initial business combination within that time, Landcadia would be forced to redeem 100% of its public shares and to liquidate itself at a per-share price, payable in cash and including interest. *Id.*

With two weeks left before the deadline, Landcadia announced the lastminute agreement to enter a combination with Old-Waitr, whereby Landcadia would acquire Old-Waitr for cash and

---

[1] These facts are taken from the Complaint for Violation of Federal Securities Laws ("*Welch* Complaint") filed on September 26, 2019, styled *Welch v. Meaux, et al..*, Case No. 2:19-cv-01260 [Dkt. No. 1]. All paragraph references ("¶_") are to paragraphs in the *Welch* Complaint.

stock valued at $308 million—with $50 million cash and the remainder in stock—and whereby post-acquisition entity Waitr shares would immediately begin trading on the NASDAQ Global Select Market (the "NASDAQ") under the ticker symbol "WTRH". ¶ 4. As investors ultimately learned, a SPAC facing the end of its redemption period combined with an immature under-developed company that would otherwise have remained private is a recipe for disaster. ¶ 5.

Throughout the Class Period, Defendants made materially false and/or misleading statements because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them: that (i) Waitr lacked a plan to achieve profitability and, contrary to Defendant Meaux's statements, Waitr was not at or near profitability and Defendants had created the illusion of financial stability by engaging in a host of illegal and improper activities each designed to inflate revenues and earnings—such as unilaterally breaking low-rate contracts and imposing significantly higher rates, and by refusing to pay drivers for mileage related expenses—both of which ultimately resulted in independent class action lawsuits; and (ii) Waitr's technology provided no real advantage, and again contrary to representations by Defendant Meaux, the Company could not obtain the developer, programming, or engineering resources necessary to enhance, maintain and develop industry leading software from its headquarter location in Lake Charles, Louisiana. ¶ 6.

Throughout the Class Period, Meaux represented that Waitr could afford to maintain its 15% take rate, which made the service affordable to its core base of small restaurants in secondary markets and which also significantly under-cut competitors' pricing, because Waitr simply had a better business model. On August 8, 2019, the last day of the Class Period, investors found out the truth. ¶ 22. Horrendous financial and operational results were the 2Q 2019 were reported, and it was announced that Defendant Meaux was fired as CEO and replaced with an inexperienced 35

3

year old. ¶ 22. Waitr also reported massive losses, terrible operating performance, huge cost increases, diminishing prospects, and losses accelerating far in advance of any growth. ¶ 23. Waitr also announced that it had failed to meet guidance, which had recently been reaffirmed. The Company's shares collapsed after these revelations, dropping over 50% from $3.76 closing price on August 8, 2019, to a closing price of $1.89 per share on August 9, 2019. ¶ 24.

## III.    ARGUMENT

### A.        <u>Consolidation of the Actions Is Appropriate</u>

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered. 15 U.S.C. § 78u-4(a)(3)(B)(ii); 15 U.S.C. § 77z-1(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* FED. R. CIV. P. 42(a). The Court has broad discretion under this rule to consolidate cases pending within this District. *Johnson v. LeBlanc,* Civil Action No.: 6:10-cv-0985 Section P, U.S. Dist. LEXIS 68036, at *7 (W.D. La. July 7, 2010).

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct. The Actions name substantially the same parties as defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate.

B.    <u>**Appointing Movant as Lead Plaintiff Is Appropriate**</u>

1.    **The Procedure Required by the PSLRA**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i). Plaintiff in the first filed action through his counsel, published notice regarding the pendency of this action on *PRNewswire*, a national, business-oriented newswire service, on September 27, 2019. *See* Burge Decl. Ex. C. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4 (a)(3)(A) and (B);. 15 U.S.C. §§ 77z-1 (a)(3)(A) and (B)

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...

5

(bb) in the determination of the court, has the largest financial interest in the relief

sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii).

As discussed below, Movants satisfy the requirements of the PSLRA and, thus, should be appointed Lead Plaintiff.

### 2. Movants Satisfy the "Lead Plaintiff" Requirements of the PSLRA

#### a. *Movants Have Complied with the PSLRA and Should Be Appointed Lead Plaintiff*

The time period in which class members may move to be appointed Lead Plaintiff herein under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A) & (B) and 15 U.S.C. § 77z-1(a)(3)(A) & (B), expired on November 26, 2019. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on September 27, 2019), Movants timely moved this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Movants signed a certification stating that they are willing to serve as the representative party on behalf of the class. *See* Burge Decl. Ex. A. In addition, Movants have selected and retained competent counsel to represent them and the class. *See* Burge Decl. Exs. D and E. Accordingly, Movants have satisfied the individual requirements of the PSLRA and are entitled to have their application for consolidation, appointment as Lead Plaintiff, and selection of Lead Counsel and Liaison Counsel considered and approved by the Court.

#### b. *Movants have the Largest Financial Interest in the Litigation*

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Burge Decl. Ex. A, Movants purchased Waitr securities in reliance upon the

6

materially false and misleading statements issued by Defendants and were injured thereby. In addition, Movants incurred a loss of approximately $44,319.37 on their transactions in Waitr securities. Burge Decl. Exs. A and B. Movants, thus, have a significant financial interest in this case and believes they have the largest loss of any competing movant. Therefore, as the movants with the largest known financial interest in these Actions, Movants should be appointed Lead Plaintiff pursuant to the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B).

### c.    *Movants Satisfy Rule 23*

According to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B).. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the motion for class certification. *See In re Orthodontics Ctrs. Of America, Inc.,* Civ. A. No. 01-949 Section "T" (5), 2001 U.S. Dist. LEXIS 21816 (E.D. La. Dec. 17, 2001) . Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "the claims or defenses

of the representative parties are typical of the claims or defenses of the class." *Tarica v. McDermott Int'l Inc.*, Civ. A. No. 99-3831 Section "R" (5), 2000 U.S. Dist. LEXIS 5031, at \*13 (E.D. La. Apr. 13, 2000).

Movants satisfy this requirement because, just like all other class members, they: (1) purchased Waitr securities during the Class Period; (2) purchased Waitr securities in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages thereby. Thus, Movants' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events and are based on similar legal theories.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff can show that it fairly and adequately represents the interests of the class, pursuant to Rule 23(a)(4), if it appears that (1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation.

Here, Movants are an adequate representative of the class. As evidenced by the injuries suffered by Movants relating to their purchase of Waitr securities at prices allegedly artificially inflated by Defendants' materially false and misleading statements, the interests of Movants are clearly aligned with those of absent Class members and there is no evidence of any antagonism between Movants' interests and those of the other members of the Class. Further, Movants have taken significant steps to demonstrate that they will protect the interests of the Class, including: (1) retaining competent and experienced counsel; and (2) filing a PSLRA certification indicating his willingness to represent the interests of the class and their understanding of their duties as class representatives. As shown below, Movants' proposed Lead Counsel and Liaison Counsel are highly

8

qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C.        Approving Movants' Selection of Counsel Is Appropriate

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v). In that regard, Movants have selected Levi & Korsinsky as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions. *See* Burge Decl, Ex. D. Movant have also selected Fishman as Liaison Counsel, a well-regarded firm in New Orleans, Louisiana, also with substantial experience in securities cases, to serve as Liaison Counsel. *Id.* at Ex. E. Accordingly, the Court should approve Movants' selection of Lead Counsel and Liaison Counsel.

## IV.    CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court: (i) consolidate the related Actions; (ii) appoint Movant as Lead Plaintiff; (iii) approve Levi & Korsinsky as Lead Counsel; (iv) approve Fishman as Liaison Counsel; and (v) grant such other relief as the court may deem just and proper.

*[Signature on Following Page]*

DATED: November 26, 2019

BY: */s/ Jason W. Burge*
Jason W. Burge (La. Bar 30420)
**FISHMAN HAYGOOD, LLP**
201 St. Charles Avenue, 46th Floor
New Orleans, LA  70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
jburge@fishmanhaygood.com


*Liaison Counsel for Movants and Proposed*
*Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
55 Broadway, 10th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email:gnespole@zlk.com

*Attorneys for Movants and Proposed Lead*
*Counsel for the Class*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above pleading was served on counsel of record via the

Court's CM/ECF notification system on November 26, 2019.

*/s/ Jason W. Burge*
Jason W. Burge

10