**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| WALTER WELCH, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC,<br><br>Defendants. | Civil Action No. 2:19−CV−01260<br><br>JUDGE TERRY A. DOUGHTY<br><br>MAGISTRATE JUDGE KATHLEEN KAY<br><br>CLASS ACTION |
| KELLY BATES, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC,<br><br>Defendants. | Civil Action No. 2:19−CV−01427<br><br>JUDGE TERRY A. DOUGHTY<br><br>MAGISTRATE JUDGE KATHLEEN KAY<br><br>CLASS ACTION |

**MEMORANDUM IN SUPPORT OF WALTER WELCH, SEAN BARNARD, AND THE DELIVERY INVESTOR GROUP'S MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT THE DELIVERY INVESTOR GROUP AS LEAD PLAINTIFF, AND APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

## TABLE OF CONTENTS

|  |  | Page: |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| RELEVANT FACTUAL AND PROCEDURAL BACKGROUND | | 3 |
| ARGUMENT | | 8 |
| I. | THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS | 8 |
| II. | THE COURT SHOULD APPOINT THE DELIVERY INVESTOR GROUP AS LEAD PLAINTIFF | 9 |
| | A. The Procedural Requirements of the PSLRA | 9 |
| | B. The Delivery Investor Group Is the "Most Adequate Plaintiff" | 10 |
| | 1. The Published Notice Satisfies the PSLRA's Requirements and Movants' Motion Is Timely and Procedurally Complete | 10 |
| | 2. The Delivery Investor Group Has the Largest Known Financial Interest | 11 |
| | 3. The Delivery Investor Group Satisfies the Requirements of Rule 23 | 11 |
| | i. The Delivery Investor Group's Claims Are Typical of the Claims of All the Class Members | 12 |
| | ii. The Delivery Investor Group Will Adequately Represent the Class | 13 |
| III. | THE COURT SHOULD APPROVE THE DELIVERY INVESTOR GROUP'S CHOICE OF LEAD AND LIAISON COUNSEL | 14 |
| CONCLUSION | | 16 |

## TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Alley v. Chrysler Credit Corp.*,
   767 F.2d 138 (5th Cir. 1985)……………………………………………………………….8

*Daniels v. City of N.Y.*,
   198 F.R.D. 409 (S.D.N.Y. 2001)……………………………………………………12-13

*Ferrari v. Impath*,
   No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004)…………………….12

*Firefighter's Pension & Relief Fund of New Orleans v. Bulmahn*,
   No. 13-3935, 2013 U.S. Dist. LEXIS 115538 (E.D. La. Aug. 15, 2013)……………………...10

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010)……………………………………………………….12

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002)…………………………………………………….8, 10

*In re Heritage Bond Litig.*,
   MDL Case No. 02-ML-1475 DT, 2004 U.S. Dist. LEXIS 15386
   (C.D. Cal. July 12, 2004)…………………………………………………………………….13

*In re Lucent Techs. Sec. Litig.*,
   194 F.R.D. 137 (D.N.J. 2000)……………………………………………………………...14

*In re Nortel Networks Corp.*,
   No. 01-1855, 2002 U.S. Dist. LEXIS 1633 (S.D.N.Y. Feb. 4, 2002)……………………….14

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998)………………………………………………………...8

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998)…………………………………………………………...12

*In re Universal Access, Inc.*,
   209 F.R.D. 379 (E.D. Tex. 2002)………………………………………………………...13

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016)……………………………………………………...8

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997)…………………………………………………………...8

*Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004)………………………………………………………….12

*Sofran v. Labranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004)………………………………………………………….10

*Tarica v. McDermott Int'l, Inc.*,
   2000 U.S. Dist. LEXIS 5031 (E.D. La. 2000)………………………………………...9, 12, 13

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003)………………………………………………………….12

**Statutes**

15 U.S.C. § 78……………………………………………………………………… *passim*

**Rules**

Fed. R. Civ. P. 6………………………………………………………………………...11

Fed. R. Civ. P. 23………………………………………………………………...12, 13

Fed. R. Civ. P. 42(a)……………………………………………………………..8

**Other**

Wright & Miller, *Consolidation—Discretion of Court*,
    9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.)……………………………………………8

## **PRELIMINARY STATEMENT**

Plaintiff Walter Welch, Sean Barnard, and the Delivery Investor Group (defined below) (collectively, "Movants") respectfully submit this Memorandum of Law in support of their motion to:

1) Consolidate the related securities class actions filed against Waitr Holdings Inc. ("Waitr" or the "Company") and certain related Defendants (defined below);[1]

2) Appoint the Delivery Investor Group (sometimes referred to as the "DIG") – which is comprised of Movants Andrew Brown, William Moore, Daniel Sinor, and Thomas Colangelo – as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B);

3) Approve their selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel and Lundy, Lundy, Soileau & South, LLP ("Lundy Firm") as Liaison Counsel for the Class; and

4) Grant such other and further relief as the Court may deem just and proper.

As outlined in greater depth in the Joint Declaration submitted herewith, the Delivery Investor Group is comprised of four individual food delivery entrepreneurs and business professionals who have known one another personally and professionally since at least 2007. *See* Declaration of Melinda A. Nicholson in Support of Walter Welch, Sean Barnard, and the

---

[1] The related securities class actions include *Welch v. Meaux, et al.*, No. 2:19-cv-01260-TAD-KK (W.D. La.), filed on September 26, 2019, and *Bates v. Meaux, et al.*, No. 2:19-cv-01427-TAD-KK (W.D. La.), filed on November 4, 2019. The *Welch* class action is brought on behalf of shareholders who purchased, acquired, and/or otherwise held securities of Waitr from May 17, 2018 to August 8, 2019, inclusive (the "Class Period"), including, but not limited to, those who acquired Waitr shares in connection with its November 2018 Going Public Transaction with Landcadia Holdings, Inc., in connection with Waitr's January 17, 2019 acquisition of BiteSquad.com ("Bite Squad"), or in Waitr's May 2019 Secondary Offering. Dkt. No. 1. Capitalized terms not defined herein have the same meaning as ascribed to them in the *Welch* complaint.

Delivery Investor Group's Motion to Consolidate Related Actions, Appoint the Delivery Investor Group as Lead Plaintiff, and Approve Proposed Lead Plaintiff's Choice of Counsel ("Nicholson Decl."), Ex. A (Joint Declaration). As further outlined therein, each member of the Delivery Investor Group acquired their Waitr common stock during the Class Period in connection with the acquisition of Bite Squad by Waitr and suffered substantial losses in connection with those acquisitions. *Id.*; *see also id.,* Exs. B-F (DIG members' individual Certifications and Loss Charts).[2]

As outlined below, **the Delivery Investor Group has suffered approximately $14,764,673.56 in losses as a result of its transactions in Waitr stock during the Class Period.** To the best of its knowledge, the Delivery Investor Group has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff.[3] What is more, as further outlined in the Delivery Investor Group's certifications and Joint Declaration, its members fully understand their duties and responsibilities to the Class and are willing and able to oversee the vigorous prosecution of this action. *See* Nicholson Decl., Exs. A at ¶¶ 12-18 and B-F. Finally, the Delivery Investor Group satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and is therefore presumptively the "most

---

[2]    Mr. Welch is an individual investor who likewise acquired Waitr common stock during the Class Period (Landcadia common stock prior to the November 2018 Going Public Transaction) and who filed the initial September 26, 2019 Complaint in this action. Dkt. No. 1; Nicholson Decl., Exs. G-H (Welch Certification and Loss Chart). Mr. Barnard is likewise an individual investor who acquired Waitr common stock during the Class Period (in connection with the November 2018 Going Public Transaction). Nicholson Decl., Exs. I-J (Barnard Certification and Loss Chart).

Messrs. Welch and Barnard both join in the instant motion as co-movants in full support of the appointment of the Delivery Investor Group as Lead Plaintiff and KSF as Lead Counsel. Messrs. Welch and Barnard also remain willing and able to serve as Co-Lead Plaintiff(s) and/or Class Representative(s), should the Court deem it necessary to protect the interests of the Class.

[3]    Collectively, all Movants herein – the DIG and Messrs. Welch and Barnard – suffered approximately **$17,036,726.25** in losses as a result of their transactions in Waitr stock during the Class Period. Nicholson Decl., Exs. B-J.

adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Accordingly, Movants respectfully request that the Court (1) consolidate all related actions; (2) appoint the Delivery Investor Group as Lead Plaintiff; and (3) approve their choice of KSF as Lead Counsel and the Lundy Firm as Liaison Counsel for the Class.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[4]

Defendant Waitr Holdings Inc. (previously defined as "Waitr") is an online food ordering and delivery services company that was formed through a going public transaction by Waitr Inc. ("Old-Waitr") and Landcadia Holdings, Inc. ("Lancadia") completed on November 15, 2018, after which time its shares began publicly trading on the Nasdaq under the symbol "WTRH" (the "Going Public Transaction").

Defendant Christopher Meaux ("Meaux") is co-Founder of the Company and served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors during the Class Period. Defendant David Pringle ("Pringle") was the Company's Chief Financial Officer ("CFO") and Principal Financial Officer during the Class Period, until his departure in April 2019. Defendant Jeff Yurecko ("Yurecko") was CFO and Principal Financial Officer of the Company beginning in April 2019 after replacing Defendant Pringle.  Defendant Tilman Fertitta ("Fertitta") was a member of the Board of Directors of the Company during the Class Period and was also CEO and Co-Chairman of the Board of Directors of Landcadia from 2015 to November 2018.  Defendant Richard Handler ("Handler") was President and Co-Chairman of the Board of Directors of Landcadia during the Class Period, until Landcadia acquired Old-Waitr in November 2018.

Defendant Jefferies Financial Group, Inc. ("JFG") (together with its subsidiaries including Jefferies LLC hereinafter referred to as "Jefferies") is the parent of Jefferies LLC,

---

[4]     These facts are derived from the *Welch* complaint.

3

which collected millions of dollars in underwriting fees from the initial Landcadia offering, the Going Public Transaction, and also as a "Lead Underwriter" (collectively with RBC Capital Markets, LLC, the "Underwriters") of the Secondary Offering.[5]

Prior to the start of the Class Period, Landcadia was founded as a special purpose acquisition company/blank check company whose sole purpose was to effect a merger or similar business combination and to acquire the assets of another company. In May 2016, Lancadia completed an initial public offering, selling shares to the public and raising approximately $250 million. Under the terms of the offering, it was required to complete an acquisition within two years (or by June 1, 2018, at the latest) or otherwise be forced to redeem 100% of its public shares at a per-share price, payable in cash and including interest, which would also result in millions of dollars in deferred underwriting commissions being forfeited by Landcadia's underwriters, including Jefferies.

On May 16, 2018, only two weeks before the June 1, 2018 deadline, Landcadia suddenly announced that it had entered into an agreement and plan of merger with Old-Waitr; however, Lancadia was forced to obtain shareholder approval for an extension of time, from June 1, 2018 to December 14, 2018, in order to complete the acquisition.

On November 15, 2018, Landcadia and Old-Waitr announced the completion of the Going Public Transaction, pursuant to which Landcadia acquired Old-Waitr for $50 million in cash and stock valued at $278 million, for a total consideration of $308 million. At that time Landcadia changed its name to Waitr and on the following day shares continued trading on the Nasdaq under the symbol "WTRH."

---

[5]    Defendants Meaux, Pringle, Yurecko, Fertitta and Handler and are collectively referred to herein as the "Individual Defendants." Defendants Waitr and Jefferies and the Individual Defendants are collectively referred to as "Defendants."

On December 11, 2018, the Company announced that it had entered into an agreement to acquire Bite Squad, another third-party online restaurant delivery service, for aggregate total consideration of $321.3 million, consisting of a combination of approximately $202.1 million in cash and 10.6 million shares of Waitr's common stock, in addition to at least $42 million of debt to be incurred at the closing. At that time, Bite Squad had less than 900,000 active users and 11,000 restaurants in 350 cities across 20 states, which was not at all consistent with Waitr's contiguous expansion model.  Jefferies served as financial advisor to Waitr in connection with the acquisition.

On February 27, 2019, Waitr drivers filed a class action lawsuit against the Company in federal court alleging violations of the Fair Labor Standards Act and state law for failing to supplement their take-home pay up to the federally guaranteed minimum of $7.25 per hour when the Company's policy to not reimburse mileage expenses caused their net pay to fall below minimum wage. A second lawsuit on similar grounds was filed against the Company on March 8, 2019.

On April 30, 2019, another class action was filed against Waitr by a purported class of its restaurant partners/customers alleging that, "after announcing its acquisition by an investment fund, but shortly before its initial public offering," Waitr had breached its contract with the restaurants by unilaterally raising the per-order Service Transaction Fees from 10% to 15%, ostensibly revealing for the first time that Waitr had inflated its reported revenues prior to the Going Public Transaction by unilaterally breaking contracts and imposing higher rates on certain of its restaurant customers.

On May 16, 2019, after filing a Shelf Registration with the SEC the prior month in order to allow it to issue up to $300 million of mixed securities, Waitr announced the pricing of a

hastily organized Secondary Offering of 6,757,000 shares of its common stock at a price to the public of $7.40 per share (the "Secondary Offering"), resulting in gross proceeds of $50.0 million. In connection with the Secondary Offering, Defendants (including Jefferies as an underwriter) prepared and disseminated materially false and misleading Secondary Offering Filings that contained false statements of material facts and omitted to disclose material facts necessary to assure that statements contained therein were true, accurate and reliable at that time.

On August 8, 2019, after market close, the Company revealed abysmal financial and operational results for its fiscal 2019 second quarter ended June 30, 2019, including:

- The resignation of Defendant Meaux as CEO of the Company;

- Net loss for the second quarter of 2019 was $24.9 million, or $0.32 per diluted share, compared to a loss of $7.4 million, or $0.74 per diluted share, in the second quarter of 2018;

- Adjusted EBITDA for the second quarter of 2019 was a loss of $14.9 million compared to a loss of $2.2 million in the second quarter of 2018;

- Full year 2019 revenue guidance lowered to a range of $210 to $220 million due to "delays in the roll-out of our planned revenue initiatives, the additional time needed to integrate the Bite Squad merger, as well as current competitive dynamics . . . ."

In response to Waitr's shocking disclosures on August 8, 2019, the price of Waitr stock crashed from $3.76 per share on August 8 to an intraday low of $1.31 before closing the trading-day at $1.89 per share on August 9—a single-day decline of 50% and a decline of almost 90% from the Class Period high above $15.00, and a loss of almost $800 million of market capitalization, all in under 5 months.

As investors learned following the end of the Class Period, the statements made by Defendants during the Class Period (including, among others, those contained in or incorporated in the May 17, 2018 Proxy Statement and the November 19, 2018 Registration Statement issued in connection with the Going Public Transaction and the statements contained in or incorporated

6

in the Secondary Offering Filings) were materially false and misleading at that time they were made.

The first lawsuit raising these allegations against Defendants was filed in this District on September 26, 2019 by Movant Welch and undersigned counsel on behalf of shareholders who purchased, acquired, and/or otherwise held the securities of Waitr from May 17, 2018 to August 8, 2019, including, but not limited to, those who acquired Waitr shares in connection with its November 2018 Going Public Transaction with Landcadia, in connection with Waitr's January 17, 2019 acquisition of Bite Squad, or in Waitr's May 2019 Secondary Offering. *Welch v. Meaux, et al.*, No. 2:19-cv-01260-TAD-KK (W.D. La.). A **virtually identical** lawsuit, also on behalf of the same class and covering the same class period, but omitting claims under Section 12 of the Securities Act of 1933 (the "Securities Act") and Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), was filed in this District on November 4, 2019. *Bates v. Meaux, et al.*, No. 2:19-cv-01427-TAD-KK (W.D. La.).[6]

On September 27, 2019, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first Notice that a class action had been initiated against Defendants was published by undersigned counsel on *PR Newswire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from that day, or November 26, 2019. *See* Nicholson Decl., Ex. K. The DIG is a Class Member who has timely filed this motion within the 60-day period following publication of the September 27, 2019 Notice. *See id.*

---

[6]    But for the omission of the claims under Section 12 of the Securities Act and Section 14(a) of the Exchange Act, the *Bates* complaint is virtually identical in substance and form to the 114-page *Welch* complaint, with the vast majority of the changes being merely grammatical and stylistic edits.

## ARGUMENT

### I.   THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a), a court has "broad discretion in determining whether to consolidate a case pending before it." *Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 140 (5th Cir. 1985); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (same)(quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); Wright & Miller, *Consolidation—Discretion of Court*, 9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ("[D]istrict court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual.").

Courts have recognized that securities class actions are ideally suited for consolidation pursuant to Fed. R. Civ. P. 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *See, e.g., Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Id.*; *see also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002) (stating that consolidation "serves to promote an orderly progression of this very complex litigation"); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292-94 (E.D.N.Y. 1998) (same).

The two pending actions here make virtually identical allegations on behalf of an

8

identical class of shareholders against the same Defendants. In light of these legal principles and the numerous commonalities shared by the actions, consolidation is appropriate under Rule 42(a).

## II.   THE COURT SHOULD APPOINT THE DELIVERY INVESTOR GROUP AS LEAD PLAINTIFF

### A.   The Procedural Requirements of the PSLRA

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B). It provides that, within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i); s*ee generally Tarica v. McDermott Int'l, Inc*., No. 99-3831, 2000 U.S. Dist. LEXIS 5031, at *8 (E.D. La. Apr. 13, 2000).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. *See generally Tarica*, 2000 U.S. Dist. LEXIS 5031, at *11-12. Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

(aa)   has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B.        The Delivery Investor Group Is the "Most Adequate Plaintiff"

#### 1.        The Published Notice Satisfies the PSLRA's Requirements and Movants' Motion Is Timely and Procedurally Complete

Pursuant to the PSLRA, the process of appointment of lead plaintiff begins with the notice requirement. 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B)(i). The notice requirement consists of two parts: (1) the first plaintiff to file must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service; and (2) members of the putative class have sixty days from the date of publication to move the court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A-B).

Here, notice was published on *PR Newswire* on September 27, 2019. *See* Nicholson Decl., Ex. K.[7] The notice specified that applications for appointment as Lead Plaintiff were to be made no later than 60 days from that day, or November 26, 2019. *Id.* Thus, the Notice satisfied the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

In light of the fact that the original notice was published on September 27, 2019, the

---

[7]        Publication by a national press release firm like *PR Newswire* is an adequate means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. *See, e.g., Firefighter's Pension & Relief Fund of New Orleans v. Bulmahn*, No. 13-3935, 2013 U.S. Dist. LEXIS 115538, at *10, (E.D. La. Aug. 15, 2013) (noting publication via *Globe Newswire* sufficient); *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (considering publication in *PR Newswire* to be sufficient); *In re Enron*, 206 F.R.D. at 440 (noting *PR Newswire* to be a national business-oriented wire service).

deadline for application to be lead plaintiff is therefore November 26, 2019. *See* Nicholson Decl., Ex. K; FED. R. CIV. P. 6. Movants have therefore timely filed this motion prior to the expiration of the lead plaintiff filing deadline. Moreover, Movants – including proposed Lead Plaintiff, the DIG – have signed and submitted Certifications with this Motion. As reflected in the Certifications, the DIG certified its transaction history during the relevant period and confirmed its willingness and ability to serve as Lead Plaintiff. *See* Nicholson Decl., Exs. A (Joint Declaration) and B-F; *see also* Exs. G (Welch Certification) and I (Barnard Certification). Thus, the DIG has satisfied the certification requirement set forth in 15 U.S.C. §§ 78u-4(a)(2)(A). The PSLRA's procedural requirements have therefore been satisfied.

### 2. The Delivery Investor Group Has the Largest Known Financial Interest

During the Class Period, as evidenced by the its Certifications and accompanying Loss Charts, the DIG acquired Waitr common stock and incurred substantial losses on its transactions as a result of the materially false and misleading statements issued by the Defendants. *See* Nicholson Decl., Exs. B-F. **Specifically, the Delivery Investor Group has suffered approximately *$14,764,673.56* in losses as a result of its transactions in Waitr stock during the Class Period.**[8] *Id.* To the best of its knowledge, the DIG thus has the largest financial interest in the relief sought. Therefore, the DIG satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. The Delivery Investor Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), in addition to possessing the largest

---

[8]    Collectively, all Movants herein – the DIG and Messrs. Welch and Barnard – suffered approximately **$17,036,726.25** in losses as a result of their transactions in Waitr stock during the Class Period. Nicholson Decl., Exs. B-J.

financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Courts have consistently held that, at this stage, the Rule 23 considerations are limited to the questions of typicality and adequacy. *See Tarica,* 2000 U.S. Dist. LEXIS 5031, at *13 (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA) (citing *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)). As detailed below, the DIG satisfies both the typicality and adequacy requirements of Rule 23. *See also* Nicholson Decl., Ex. A.

### i.     The Delivery Investor Group's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *Tarica,* 2000 U.S. Dist. LEXIS 5031, at *13-14 (citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999)). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010) (citing *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001)); *Ferrari v. Impath*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004); *Daniels*

*v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also In re Heritage Bond Litig.*, MDL Case No. 02-ML-1475 DT, 2004 U.S. Dist. LEXIS 15386, at *25 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

In this case, the typicality requirement is met because the DIG's claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. The DIG and all the other Class members: (1) acquired Waitr securities during the Class Period; (2) acquired Waitr securities in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages by acquiring Waitr securities at artificially inflated prices and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Thus, the DIG's claims are typical of those of other Class Members since its claims and the claims of other Class Members resulted from the same illegal practices.

### ii.    The Delivery Investor Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Movant to the existence of any conflicts between the interests of the Movant, on the one hand, and the members of the class, on the other hand. The standard for adequacy of representation under Rule 23(a)(4) is met (1) by the absence of potential conflicts between the named plaintiff and the other class members; and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B); *In re Universal Access, Inc.*, 209 F.R.D. 379, 386 (E.D. Tex. 2002); *Tarica,* 2000

U.S. Dist. LEXIS 5031, at *13-14.

Here, the DIG is an adequate representative of the Class. As evidenced by the injuries suffered by the DIG, which acquired Waitr securities at prices that were artificially inflated by Defendants' materially false and misleading statements, the interests of the DIG are clearly aligned with the members of the Class, and there is no evidence of any antagonism between its interests and those of the other members of the Class. Furthermore, the DIG has retained competent, experienced, and highly qualified counsel who are able to conduct this complex litigation in a professional manner. *Infra* §III. Thus, the DIG *prima facie* satisfies the typicality and adequacy requirements of Rule 23 and should be appointed Lead Plaintiff.

### III.    THE COURT SHOULD APPROVE THE DELIVERY INVESTOR GROUP'S CHOICE OF LEAD AND LIAISON COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 155 (D.N.J. 2000) (citing Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N. 679, 685); *In re Nortel Networks Corp.*, No. 01-1855, 2002 U.S. Dist. LEXIS 1633, at *2 (S.D.N.Y. Feb. 4, 2002).

Here, the DIG has selected KSF to be Lead Counsel for the Class.  As reflected in its firm resume, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class. With lawyers in Louisiana, New York, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have

14

resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *See* Nicholson Decl., Ex. L (KSF Firm Resume).

Notably, KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions. *See* Nicholson Decl. Ex., L (citing *In Re Health Ins. Innovations*, No. 8:17-cv-2186 (M.D. Fla.) (denying in part defendants' motion to dismiss securities class action on June 28, 2019); *Shanawaz v. Intellipharmaceutics Int'l Inc., et al.*, No. 1:17-cv-5761 (S.D.N.Y.) (denying in part defendants' motion to dismiss securities class action on December 17, 2018); *Dougherty v. Esperion Therapeutics, Inc., et al.*, No. 17-1701 (6th Cir.) (reversing and remanding lower court's dismissal of securities class action on September 27, 2018)). Most recently, in the Southern District of New York, on June 22, 2018, KSF was found to have "made a substantial contribution to the class" in obtaining a **$3 billion securities settlement** from Brazil's state-controlled petrochemical company in connection with the largest corruption scandal in the history of Latin America, arising from defendants' alleged deliberate overpayments on various construction contracts in return for kickbacks. *See id.* (citing *In re Petrobras Sec. Litig.*, No. 1:14-cv-9662 (S.D.N.Y.)).

KSF also served as special counsel and court appointed co-class counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 3:02-cv-1152-M (N.D. Tex.), which settled for $100 million in 2017. KSF's co-counsel in that case was David Boies of Boies Schiller Flexner LLP, a nationally-renowned litigation and appellate law firm that litigated the *Bush v. Gore* matter before the United States Supreme Court, among others. Prior to settlement, the *Halliburton* case itself had twice been to the United States Supreme Court. In the first instance, plaintiffs won 9-0. In the second instance, the Halliburton defendants challenged the "fraud on the market theory," the fundamental theory on which all class action securities

litigation rests. Despite the Halliburton defendants' protestations, the Supreme Court sided with the plaintiffs and upheld that theory. As the aforementioned cases demonstrate, KSF has the requisite experience and knowledge in litigating complex shareholder cases.

The Delivery Investor Group's selection of Liaison Counsel, the Lundy Firm, likewise possesses a high degree of skill and professionalism, having been involved in numerous complex class action cases. *See* Nicholson Decl., Ex. M (Lundy Firm Resume).

Thus, the Court may be assured that, in granting this motion, the Class will continue to receive legal representation of the highest caliber.

## CONCLUSION

For all of the foregoing reasons, Movants respectfully requests that this Court: (1) consolidate the related actions; (2) appoint the Delivery Investor Group as Lead Plaintiff; (3) approve its selection of KSF as Lead Counsel and the Lundy Firm as Liaison Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: November 26, 2019                      Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/Melinda A. Nicholson*
Lewis S. Kahn (23805)
Melinda A. Nicholson (32911) (Trial Attorney)
Michael J. Palestina (31907)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: Lewis.Kahn@ksfcounsel.com
Email: Melinda.Nicholson@ksfcounsel.com
Email: Michael.Palestina@ksfcounsel.com

*Counsel for the Delivery Investor Group, Walter Welch, and Sean Barnard*

**LUNDY, LUNDY, SOILEAU & SOUTH, LLP**
Matthew E. Lundy (18988)
501 Broad Street
Lake Charles, LA 70601
Telephone: (337) 439-0707
Facsimile: (337) 439-1029
Email: mlundy@lundylawllp.com

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

*/s/ Melinda A. Nicholson*
Melinda A. Nicholson

17