# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| WALTER WELCH, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, <br><br> Defendants. | Case No. 2:19-cv-01260-TAD-KK |
| KELLY BATES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, <br><br> Defendants. | Case No. 2:19-cv-01427-TAD-KK |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF TUPAC DE LA CRUZ FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS**

{00354866;3 }

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 4

I.     DE LA CRUZ SHOULD BE APPOINTED LEAD PLAINTIFF ..................................... 4

         A.     De la Cruz is the eligible movant that has the largest financial interest in the relief sought by the Class ................................................................................................ 5

         B.     De la Cruz satisfies the requirements of Rule 23 .................................................... 6

II.    THE DIG IS INADEQUATE AND ATYPICAL WITHIN THE MEANING OF RULE 23 AND SUBJECT TO DISQUALIFYING UNIQUE DEFENSES ................................. 7

         A.     The circumstances of the DIG's acquisitions of Waitr stock render it atypical, inadequate and subject to unique defenses ............................................................ 7

         B.     The DIG's knowledge of Bite Squad's operations and food-delivery industry labor standards further renders them atypical and subject to unique defenses ..... 14

         C.     The DIG, Welch, and Barnard are a pseudo-group assembled by attorneys in contravention of the PSLRA's goals ....................................................................... 16

III.   NON-MOVANTS WELCH AND BARNARD ARE INELIGIBLE FOR APPOINTMENT AS LEAD PLAINTIFF ...................................................................... 20

CONCLUSION ........................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*,
  NO. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) .........................5

*In re Alcatel Alsthom Secs. Litig.*,
  1999 U.S. Dist. LEXIS 24278 (E.D. Tex. June 7, 1999) ..........................................................17

*APA Excelsior III L.P. v. Premiere Techs.*,
  476 F.3d 1261 (11th Cir. 2007) ................................................................................................12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ........................................................................................................ *passim*

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006)........................................................................................................7

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) ......................................................................................................7

*Brooks v. Lincoln Nat'l Life Ins. Co.*,
  5:03CV256, 2008 U.S. Dist. LEXIS 121483 (E.D. Tex. Feb. 12, 2008)..................................10

*Buettgen v. Harless*,
  263 F.R.D. 378 (N.D. Tex. 2009) .............................................................................................10

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
  16-CV-03495 (AT) (BCM), 2016 U.S. Dist. LEXIS 139215 (S.D.N.Y. Oct. 4,
  2016) ...........................................................................................................................................5

*In re Dynegy, Inc. Sec. Litig.*,
  NO. H-02-1571, 2002 U.S. Dist. LEXIS 27858 (S.D. Tex. Oct. 28, 2002) .............................10

*In re Enron Corp. Sec. Litig.*,
  206 F.R.D. 427 (S.D. Tex. 2002)...................................................................................10, 15, 20

*In re Firstplus Fin. Group, Inc. Sec. Litig.*,
  No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446 (N.D. Tex. Oct. 23,
  2002) .........................................................................................................................................14

*Grodko v. Cent. European Distrib. Corp.*,
  Nos. 12-5530, et al., 2012 U.S. Dist. LEXIS 178478 (D.N.J. Dec. 17, 2012) .......................13

*In re HealthSouth Corp. Secs. Litig*,
  261 F.R.D. 616 (N.D. Ala. 2009)..............................................................................................12

*Hill v. Illinois Central Railroad*,
    3:09-cv-01866 (W.D. La.) ...........................................................................................19

*Howard v. Liquidity Servs.*,
    322 F.R.D. 103 (D.D.C. 2017)....................................................................................11

*James v. City of Dallas, Tex.*,
    254 F.3d 551 (5th Cir. 2001) .......................................................................................6

*Johnson v. Recatto*,
    6:10-cv-01068 (W.D. La.) ...........................................................................................19

*In re Key Energy Servs. Sec. Litig.*,
    166 F. Supp. 3d 822 (S.D. Tex.) ................................................................................11

*Landry v. Price Waterhouse Chartered Accountants*,
    123 F.R.D. 474 (S.D.N.Y. 1989) ...............................................................................15

*Lax v. First Merchants Acceptance Corp.*,
    Case No. 97 C 2716, 1997 WL 461036 (N.D. Ill. 1997) .........................................1, 5

*In re Levi Strauss & Co. Sec. Litig.*,
    527 F. Supp. 2d 965 (N.D. Cal. 2007) .......................................................................12

*Makhlouf v. Tailored Brands, Inc.*,
    NO. H-16-0838, 2017 U.S. Dist. LEXIS 41872 (S.D. Tex. Mar. 23, 2017) .............5

*Marvin J. Netsky, Marks Bros. v. Capstead Mortg. Corp.*,
    No. 3:98-CV-1716-L, 2000 U.S. Dist. LEXIS 9941 (N.D. Tex. July 12, 2000) .....17

*Meyer v. Stone Energy Corp.*,
    6:05-cv-02109 (W.D. La.) ...........................................................................................19

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) .......................................................................................7

*In re Nanophase Techs.*,
    98 C 3450, 1999 U.S. Dist. LEXIS 16171 (N.D. Ill. Sept. 30, 1999).......................13

*In re Network Assocs. Secs. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......................................................................15

*Newman v. Eagle Bldg Techs.*,
    209 F.R.D. 499 (S.D. Fla. 2002).................................................................................16

*Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*,
    No. 4:17-CV-00449, 2017 U.S. Dist. LEXIS 140268 (E.D. Tex. Aug. 31, 2017) ...................................................................................................................17, 21

*Roberson v. Rest. Delivery Developers, LLC*,
    2017 U.S. Dist. LEXIS 150591 (M.D. Fla. Sept. 18, 2017) ......................................................15

*Roberson v. Rest. Delivery Developers, LLC*,
    No. 8:17-cv-769-T-333MAP (M.D. Fla.) ............................................................................15, 16

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    219 F.R.D. 343 (D. Md. 2003).................................................................................................10

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp*,
    CIV.A. 11-6247 (JBS), 2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug. 22,
    2012) ........................................................................................................................................13

*Stirman v. Exxon Corp.*,
    280 F.3d. 554 (5th Cir. 2002) .................................................................................................10

*In re Surebeam Corp. Secs. Litig.*,
    No. 03 CV 1721 JM (POR) 2003 U.S. Dist. LEXIS 25022 ....................................................15

*Tarica v. McDermott Int'l, Inc.*,
    2000 U.S. Dist. LEXIS 5031 (E.D. La. Apr. 13, 2000) ............................................................5

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999).....................................................................................21

*Tran v. XBiotech Inc.*,
    No. A-15-CA-01083-SS, 2016 U.S. Dist. LEXIS 22279 (W.D. Tex. Feb. 23,
    2016) .......................................................................................................................................4, 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008).......................................................................................5

*In re Waste Mgmt., Inc.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) ......................................................................................1

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................... *passim*

Fair Labor Standards Act .....................................................................................................3, 15, 16

Private Securities Litigation Reform Act of 1995 .....................................................................1

PSLRA ................................................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23.................................................................................................................. *passim*

{00354866;3 }                                                    iv

Movant de la Cruz[1] respectfully submits this memorandum of law: (i) in further support of his motion for consolidation of the Related Actions, appointment as Lead Plaintiff, and approval of his selections of Pomerantz as Lead Counsel and O'Bell Law as Liaison Counsel for the Class (Dkt. No. 11);[2] and (ii) in opposition to the competing motion of Andrew Brown, Thomas Colangelo, Daniel Sinor and William Moore (the "Delivery Investor Group" or "DIG"), ostensibly supported by non-movants William Welch ("Welch") and Sean Barnard ("Barnard") (Dkt. No. 13).[3]

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; *and* who satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Of the two competing motions before the Court, only de la Cruz satisfies these statutory criteria. *First*, de la Cruz incurred losses of over ***$856,000*** in connection with his purchases of Waitr securities as a result of the alleged fraud at issue in the Related Actions, and retained 140,000 shares at the end of the Class Period, more than any other competing movant eligible for appointment. De la Cruz thus has the greatest financial interest within the meaning of the PSLRA of any putative Class member eligible for appointment as Lead Plaintiff. *See*, *e.g.*, *In*

---

[1] All capitalized terms herein are defined in de la Cruz's moving brief, unless otherwise indicated. *See* Dkt. No. 11-1.

[2] Unless otherwise specified, all citations styled "Dkt. No. __" refer to the first-filed action *Welch v. Meaux et al.*, 2:19-cv-01260-TAD-KK.

[3] Four other movant or movant groups initially filed similar competing motions: (i) Chad Sarver and James Gillard (Dkt. No. 15); (ii) Barbara Brigidear (Dkt. No. 14); (iii) Jianwen Bu and William Thompson (Dkt. No. 16); and (iv) Theresa Coker and Harry Coker (Dkt. No. 12). Each of the foregoing movants have since filed notices of non-opposition to competing motions or endorsed de la Cruz's motion. *See* Dkt. Nos. 18, 27, 29-30.

{00354866;3 }                                                   1

*re Waste Mgmt., Inc.*, 128 F. Supp. 2d 401, 414 (S.D. Tex. 2000) (assessing financial interest in terms of financial losses and net shares purchased (*i.e.*, retained shares)).

One competing movant, the self-styled Delivery Investor Group, has alleged a greater loss than de la Cruz.  However, by improperly including losses incurred on shares that it did not acquire on the open market (which, as discussed herein, are ***not*** recoverable in this litigation), the DIG has significantly overstated its loss, which is in fact only $22,800—a mere fraction of the $856,000 loss incurred by de la Cruz.  Indeed, only two members of the DIG have incurred any recoverable losses at all.  Moreover, for the litany of reasons discussed herein, the Delivery Investor Group does not satisfy the adequacy or typicality requirements of Rule 23, and is likewise subject to unique defenses.  Accordingly, the Delivery Investor Group is disqualified from consideration as Lead Plaintiff irrespective of its financial interest.

***Second***, in addition to his significant financial interest in this litigation, de la Cruz satisfies the adequacy and typicality requirements of Rule 23, as set forth below.  By contrast, the Delivery Investor Group's motion is plagued by multiple deficiencies:

The Delivery Investor Group's members acquired all but a handful of their shares of Waitr stock involuntarily, and not on the open market, only as part of a share exchange after Waitr acquired another company, BiteSquad.com LLC ("Bite Squad"), to which the members of the Delivery Investor Group had previously sold their own businesses in October 2016—roughly a year and a half before the start of the Class Period.  The Delivery Investor Group, unlike the members of the Class, thus ***did not acquire its shares in reliance*** upon the Company's Class Period statements or those in the various offering documents.  This lack of reliance both renders the DIG highly atypical of the putative Class and constitutes a likely fatal unique defense, as it will almost certainly allow defendants to easily rebut the presumption of reliance established by *Basic Inc. v.*

*Levinson*, 485 U.S. 224 (1988), thereby defeating class certification with respect to claims arising under Section 10(b) of the Exchange Act. Nor do two of the DIG members have standing to pursue claims arising under Section 11 of the Securities Act, because they did not acquire any Waitr stock pursuant and/or traceable to the Registration Statement and Proxy/Prospectus issued in connection with Waitr's May 2019 Secondary Offering, whereas two of the group's members have at best only weak standing to pursue Section 11 claims. There is simply no reason to appoint a class representative, like the DIG, whose leadership will essentially doom this litigation from the outset.

Other atypical issues specific to the DIG subject the group to additional reliance-based unique defenses. The members of the Delivery Investor Group assert that they are "individual food delivery entrepreneurs and business professionals" whose businesses were acquired by Bite Squad. Dkt. No. 13-3 at 2-3. In addition, all four members of the DIG have been accused of violations of the Fair Labor Standards Act ("FLSA"). Here, Waitr is alleged to have concealed difficulties arising from the Bite Squad acquisition as well as FLSA violations. Given the near certainty that the DIG's members learned non-public information regarding Bite Squad in the process of selling their companies to Bite Squad, and considering their familiarity with labor law in the food delivery business, the Defendants are certain to argue that the group was privy to relevant information unknown to other Class members and that this information informed their investment decisions with respect to Waitr securities. Accordingly, the DIG is subject to these additional unique defenses of non-reliance upon Waitr's Class Period statements.

Finally, the Delivery Investor Group's highly unusual motion papers raise the specter of the very attorney-driven litigation that the PSLRA was enacted to prevent. The group's motion seeks appointment of the Delivery Investor Group, but is submitted on behalf of the DIG *and* two other investors, Welch and Barnard, who do *not* seek appointment as Lead Plaintiffs themselves

but are said to support the group's appointment.  Yet while the DIG's motion papers indicate that Welch and Barnard support their appointment, there is ***nothing*** in any of the Certifications (Dkt. Nos. 13-4 – 13-7, 13-9, 13-11) or the Joint Declaration of the DIG (Dkt. No. 13-3) submitted with the group's motion papers indicating that Welch, Barnard, and the DIG are even aware of one another's existence, much less that Welch and Barnard endorse the DIG's appointment as Lead Plaintiff.  In fact, the Certifications submitted on behalf of Welch and Barnard do not actually authorize their counsel to make ***any*** specific filings on their behalf, while irregularities on the signature blocks on the DIG's Joint Declaration further diminish the persuasiveness of the document as evidence of cohesiveness.  Finally, considering that the Delivery Investor Group's proposed Lead Counsel, Kahn Swick & Foti, LLC ("KSF"), maintains its principal offices in Louisiana, the involvement of a second firm, Lundy, Lundy, Soileau & South, LLP ("Lundy Law"), as proposed "Liaison Counsel" is puzzling, and further hints at undue involvement of counsel in orchestrating the group's motion.  In short, the DIG, Welch, and Barnard appear to be a motley assortment of unrelated investors with dubious intentions, hastily assembled by counsel into a pseudo-group in contravention of the PSLRA's intent.

For the reasons set forth herein, de la Cruz respectfully submits that his motion should be granted in its entirety, and that the competing motions should be denied.

## ARGUMENT

## I.    DE LA CRUZ SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest need only make a *prima facie* showing that they satisfy the requirements of Rule 23.  *Tran v. XBiotech Inc.*, No. A-15-CA-01083-SS, 2016 U.S. Dist. LEXIS

22279, at *5 (W.D. Tex. Feb. 23, 2016).  Once this presumption is triggered, it may be rebutted upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is de la Cruz.

### A.  De la Cruz is the eligible movant that has the largest financial interest in the relief sought by the Class

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts recognize that the amount of financial loss is the most significant factor to be considered.  *See*, *e.g.*, *Tarica v. McDermott Int'l, Inc.*, 2000 U.S. Dist. LEXIS 5031, at *12-*13 (E.D. La. Apr. 13, 2000) (assessing financial interest in terms of monetary loss); *Makhlouf v. Tailored Brands, Inc.*, NO. H-16-0838, 2017 U.S. Dist. LEXIS 41872, at *22-*23 (S.D. Tex. Mar. 23, 2017) (same); *Abouzied v. Applied Optoelectronics, Inc.*, NO. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801, at *8 (S.D. Tex. Jan. 22, 2018) (same).

Second to financial loss, courts frequently consider net shares purchased during the class period (*i.e.*, retained shares) as another measure of financial interest.  *See*, *e.g.*, *Lax v. First Merchants Acceptance Corp.*, Case No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. 1997) (considering net shares purchased (*i.e.*, retained shares) alongside net loss in assessing financial interest); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (same); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 16-CV-03495 (AT) (BCM), 2016 U.S. Dist. LEXIS 139215, at *11 (S.D.N.Y. Oct. 4, 2016) (same).

By either of the foregoing metrics, no movant eligible for appointment as Lead Plaintiff in the Action has a larger financial interest in the litigation than de la Cruz.  The following chart

summarizes de la Cruz's substantial financial interest compared to those of the DIG, Barnard, and Welch:

| Movant | Loss | Retained Shares |
|---|---|---|
| Tupac de la Cruz | $856,073 | 140,000 |
| ~~Sean Barnard~~ | ~~$2,254,500~~ | ~~211,965~~ |
| ~~The Delivery Investor Group~~ | ~~$22,800~~ | ~~1,950~~ <br> ~~200 option contracts~~ |
| *~~William Moore~~* | *~~$18,800~~* | *~~1,950~~* |
| *~~Andrew Brown~~* | *~~$4,000~~* | *~~200 option contracts~~* |
| *~~Daniel Sinor~~* | *~~$0~~* | *~~0~~* |
| *~~Thomas Colangelo~~* | *~~$0~~* | *~~0~~* |
| ~~Walter Welch~~ | ~~$16,781~~ | ~~2,095~~ |

De la Cruz suffered a loss of more than $856,000 in connection with the fraud alleged in the Related Actions. In addition, de la Cruz retained 140,000 shares at the end of the Class Period. As discussed *infra* at Section II, in addition to having only a *de minimis* financial interest in this litigation compared to de la Cruz—indeed, two of its members did not occur any recoverable loss at all—the DIG is atypical and inadequate within the meaning of Rule 23, as well as subject to crippling unique defenses, has at best questionable standing to pursue Securities Act claims, and is therefore disqualified from consideration irrespective of its financial interest. Barnard and Welch have conspicuously not sought appointment as Lead Plaintiff, but likewise fail to satisfy the requirements of Rule 23, as discussed *infra* at Section III, and thus would also be ineligible for appointment as Lead Plaintiff even if the Court were to consider them.

### B. De la Cruz satisfies the requirements of Rule 23

De la Cruz has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *Tran*, 2016 U.S. Dist. LEXIS 22279, at *5. First, de la Cruz's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims against the Defendants "have the same essential characteristics of those of the putative class." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001). Second, de la Cruz satisfies the adequacy

requirement of Rule 23(a)(4) because his submissions strongly demonstrate the "zeal and competence of [his] counsel and the willingness and ability of [de la Cruz] to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). *See also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999). De la Cruz has further demonstrated his adequacy by his submission of a Declaration attesting, *inter alia*, that he has discussed the filing of this motion with counsel and understands its significance, and that he understands the responsibilities of a lead plaintiff appointed pursuant to the PSLRA and stands ready to fulfill those responsibilities. *See* Dkt. No. 11-6.

To overcome the strong presumption entitling de la Cruz to appointment as Lead Plaintiff, the PSLRA requires **"*proof*"** that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

\* \* \* \*

Because de la Cruz has the largest financial interest in the relief sought by the Class and otherwise satisfies Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

## II.     THE DIG IS INADEQUATE AND ATYPICAL WITHIN THE MEANING OF RULE 23 AND SUBJECT TO DISQUALIFYING UNIQUE DEFENSES

### A.     The circumstances of the DIG's acquisitions of Waitr stock render it atypical, inadequate and subject to unique defenses

Unlike the majority of the members of the putative Class in this litigation, the DIG's members acquired virtually all of their Waitr securities in highly unusual circumstances that render the group atypical and inadequate within the meaning of Rule 23, and subject to unique defenses. As such, the PSLRA mandates denial of the group's motion. *See*, *e.g.*, *Beck v. Maximus, Inc.*, 457

{00354866;3 }                                        7

F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

The Complaints in the Related Actions defined the putative Class as investors "that purchased, acquired and/or otherwise held the securities of Waitr . . . from *May 17, 2018 to August 8, 2019* . . . including, but not limited to, those who acquired Waitr shares in connection with the Going Public Transaction, and those who acquired shares of the Company in the May 2019 Secondary Offering" (emphasis added). The members of the DIG, however, received *more than 99%* their Waitr shares only circuitously, as the result of an initial transaction that occurred nearly *18 months before the start of the Class Period*. On or around October 31, 2016, the group's members sold the assets and operations of ten food delivery companies in which they possessed overlapping ownership interests to Bite Squad. In connection with the acquisition, the DIG members received Bite Squad stock. Then, on January 17, 2019, Waitr purchased Bite Squad for $202.1 million in cash and 10.6 million shares of Waitr stock. As a result of Waitr's acquisition of Bite Squad, the DIG members' received a total of 1,465,567 shares of Waitr stock.

While the members of the putative Class in this litigation are clearly and simply defined in a single sentence, even a truncated explanation of the DIG's acquisition of Waitr stock requires a flow chart and a full paragraph. The DIG itself even found it necessary to accompany its motion with an explanatory 19-page Joint Declaration (Dkt. No. 13-3) to the same effect.

The only real transactional decision that the DIG's members affirmatively made in the chain of events that led to their acquisition of these Waitr securities occurred in October 2016, when they decided to sell their companies to Bite Squad, thereby acquiring Bite Squad stock. Bite Squad, in turn, then allowed itself to be acquired by Waitr in January 2019, a decision in which the DIG's members obviously had no involvement and which required no activity on their part, but resulted in their involuntarily receiving shares of Waitr stock along with all other Bite Squad shareholders. Investors, like the DIG, who made the transaction decision that resulted in their acquisition of the subject securities nearly 18 months before the start of the Class Period, plainly could *not* have purchased their securities in reliance on the false and/or misleading statements

alleged in the Complaints, nor pursuant to the Registration Statement in the Secondary Offering. Nor did they purchase these shares on the open market, like the majority of the Class members.

The appointment of such investors to pursue claims in securities class actions is thus highly problematic with respect to the typicality requirement of Rule 23, which requires that "the named plaintiff's claims have the same essential characteristics as those of the other members; they arise from the same event or course of conduct, and are based on the same legal theory." *Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009) (citing *Stirman v. Exxon Corp.*, 280 F.3d. 554, 562 (5th Cir. 2002)). The same issue mandates denial of the DIG's motion on the separate but related basis that it constitutes a unique defense to which the DIG is subject, and to which it would foreseeably be required to devote considerable time and resources, thereby limiting its ability to prosecute the Class's fraud claims. *See*, *e.g.*, *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) (declining to appoint lead plaintiff whose potential defenses and conflicts could endanger the interests of the rest of the class); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003) (denying lead plaintiff motion, finding it "difficult to see how [movant] . . . would be able to avoid devoting a large portion of its time and efforts to proving it is not subject to the unique defense").

The foregoing circumstances fatally undermine the DIG's motion because it will deprive the DIG of the *Basic* presumption of reliance, meaning that as a Class Representative, the DIG would be unable to "allege reliance on defendants' material misrepresentations or omissions" as necessary to plead violations of Section 10(b) of the Exchange Act. *In re Dynegy, Inc. Sec. Litig.*, NO. H-02-1571, 2002 U.S. Dist. LEXIS 27858, at *28-*29 (S.D. Tex. Oct. 28, 2002). It is by now axiomatic that in order to certify a class in a Section 10(b) case, a court "must find a class-wide presumption of reliance". *Brooks v. Lincoln Nat'l Life Ins. Co.*, 5:03CV256, 2008 U.S. Dist.

LEXIS 121483, at *84 (E.D. Tex. Feb. 12, 2008) (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)).

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that '[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

*Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017) (citations omitted). "The presumption can be rebutted by '*any showing that severs the link between the alleged misrepresentation and either the price received . . . or [the] decision to trade at a fair market price*[.]'" *In re Key Energy Servs. Sec. Litig.*, 166 F. Supp. 3d 822, 835-36 (S.D. Tex.) (quoting *Basic*, 485 U.S. at 248) (emphasis added).

> ***The DIG plainly cannot invoke the* Basic *presumption of reliance*. The Complaints in the Related Actions expressly allege that "a presumption of reliance applies," citing, *inter alia*, that Waitr's securities traded on the NASDAQ, that "Waitr regularly communicated with public investors via established market communication mechanisms", and that "the market for Waitr securities promptly digested current information regarding Waitr from all publicly available sources and reflected such information in Waitr's share price." *Welch* Complaint ¶¶ 205-206; *Bates* Complaint ¶¶ 204-205. Yet none of the foregoing applies to more than 99% of DIG's Waitr investments. The DIG did *not* purchase these Waitr shares on the NASDAQ. Waitr's public statements did *not* inform the DIG's investment decisions. In fact, the DIG did *not* make any *decision* to acquire these Waitr shares at all. Rather, its members received Waitr shares *involuntarily* when Waitr acquired Bite Squad. The only transactional decision that the DIG's

members made that ultimately led to their acquisition of Waiter securities was to sell their co-owned companies to Bite Squad in 2016—18 months before *any* of the false and misleading statements alleged in the Complaints were made.  DIG is thus unable to allege literally *any* of the facts necessary to invoke the *Basic* presumption of reliance.  As such, it is highly atypical, and cannot be appointed as Lead Plaintiff.

Nor does DIG have standing to pursue claims arising under Section 11 of the Securities Act, because they did not acquire any shares of Waitr Stock pursuant or traceable to the Registration Statement and Proxy/Prospectus issued in connection with the Company's May 2019 Secondary Offering.  *APA Excelsior III L.P. v. Premiere Techs.*, 476 F.3d 1261 (11th Cir. 2007) is instructive: There, the Eleventh Circuit affirmed that investors who purchased a company's securities through a private offering prior to the issuance of the relevant registration statement lacked standing to pursue Section 11 claims.  Specifically, the court held that "[p]laintiffs . . . by virtue of their binding commitment decision, effectively 'purchased' their Premiere stock months before the registration statement was filed.  It follows therefrom that *they cannot have purchased pursuant to the registration statement*."  *Id.* at 1276 (emphasis added).  Further addressing the timing of the investors' acquisition of the stock, the court found as follows:

> It is true that Plaintiffs in one sense "acquired" their stock only after consummation of the merger and after the registration statement was filed.  Regardless of when they may have physically acquired the stock, however, Plaintiffs made their investment decision . . . months before that time.

*Id.* at 1276 n.6.  *See also In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 978 (N.D. Cal. 2007) ("Because the unregistered bondholders had already invested in Levi bonds through the Rule 144A offerings, *they were not presented with the decision of whether or not to purchase* Levi bonds pursuant to the registration statement.") (emphasis added); *In re HealthSouth Corp. Secs. Litig*, 261 F.R.D. 616, 647 (N.D. Ala. 2009) ("*recogniz[ing] the obvious: a registration statement*

***cannot be the basis for an investment decision where an investor made its investment decision before the registration statement had been filed***.") (emphasis added); *In re Nanophase Techs.*, 98 C 3450, 1999 U.S. Dist. LEXIS 16171, at \*7-\*8, \*17 (N.D. Ill. Sept. 30, 1999) (distinguishing between investors "who purchased Nanophase's common stock during, or traceable to, the initial public offering" and those "who held Nanophase preferred stock that was then converted into common stock," and finding that the inclusion of both in the same class "would jeopardize the typicality of the class").  Accordingly, the two members of the DIG who made no open market purchases of Waitr securities would have no standing to pursue Section 11 claims, while the other two members would have at best only weak standing to do so.

"There is no requirement at this early stage to 'prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial.'"  *Grodko v. Cent. European Distrib. Corp.*, Nos. 12-5530 *et al.*, 2012 U.S. Dist. LEXIS 178478, at \*10 (D.N.J. Dec. 17, 2012) (quoting *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp*, CIV.A. 11-6247 (JBS), 2012 U.S. Dist. LEXIS 118693, at \*26-\*27 (D.N.J. Aug. 22, 2012)).  Defendants will obviously raise the foregoing issues in opposing class certification, and in the absolute best-case scenario, the DIG would be required to devote significant time and resources to litigating questions specific to its own transactions, at the expense of vigorously pursuing fraud claims on behalf of the Class.  "[T]he Court cannot prejudice the class with the time and expense that will probably ensue from litigating the unique" defenses to which DIG is subject." *Id.* at \*26.  More realistically, the DIG will simply fail to secure a class certification order, and defrauded Waitr investors will be deprived of an opportunity to recover their losses.  There is no reason to saddle the investor Class in this action with a Lead Plaintiff so obviously subject to such fatal deficiencies.

**B.    The DIG's knowledge of Bite Squad's operations and food-delivery industry labor standards further renders them atypical and subject to unique defenses**

Separate and apart from the issues arising from the nature of their acquisitions of Waitr stock, the DIG group is atypical and subject to additional non-reliance defenses due to the group's knowledge of facts unknown to other investors.

First, as discussed above, the members of the DIG sold their ten co-owned companies to Bite Squad in 2016. As experienced businesspersons making a significant business decision, they clearly would have performed all due diligence in considering Bite Squad's proposed acquisition, which must have included a review of non-public information concerning Bite Squad's business and operations. Yet one of the core allegations in this litigation is that Waitr and the other Defendants concealed from the investing public significant difficulties stemming from Waitr's acquisition and subsequent integration of the operations of Bite Squad. *See Welch* Complaint ¶¶ 10, 92; *Bates* Complaint ¶¶ 10, 92. The high likelihood that the members of the DIG, unlike other Waitr investors, were privy to inside information regarding Bite Squad's operations renders them highly atypical of the putative Class in this action. Most significantly, it raises questions as to whether their investment decisions (to the extent that they can even be said to have made any investment decisions regarding Waitr, as discussed *supra at* Section II.A) truly were in reliance upon the Defendants' false and misleading statements, or whether the DIG's members considered also their own inside knowledge of Bite Squad's business and operations. Again, given the risk to the Class that Defendants would be able to sever the link between the alleged misrepresentations and the investment decisions, thereby depriving the Class of the *Basic* presumption of reliance, courts generally decline to appoint lead plaintiffs with inside knowledge relevant to the fraud at issue. *See*, *e.g.*, *In re Firstplus Fin. Group, Inc. Sec. Litig.*, No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446, at *15 (N.D. Tex. Oct. 23, 2002) (finding that movant with insider knowledge

{00354866;3 }                                      14

"faces unique defenses that render him atypical of other class members" and denying his motion); *Enron*, 206 F.R.D. at 456 (citing *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("whether these defenses will be successful is of no matter . . . Each of these Plaintiffs would be required to devote considerable time to rebut the claim that their purchases were based not on the integrity of the market, but on non-public information that they received . . . Clearly, this situation would prejudice absent class members.")).

Second, the four members of the DIG—Messrs. Brown, Colangelo, Sinor, and Moore—were named defendants in a putative class action alleging FSLA violations in connection with one of their companies (*Roberson v. Rest. Delivery Developers, LLC*, No. 8:17-cv-769-T-333MAP (M.D. Fla.) (the "RDD Class Action"). Per the allegations in the RDD Class Action:

> [Plaintiff] Roberson worked as a driver for an entity doing business as Doorstep Delivery, using his own car to ferry food from restaurants to hungry people at their homes. Although, among other things, he wore a uniform and worked during set shifts, Doorstep Delivery classified Roberson as an independent contractor—an incorrect classification, Roberson says. He claims that other Doorstep Delivery drivers have also been wrongly classified as independent contractors and would be interested in joining his proposed FLSA collective action seeking overtime and minimum wages.

*Roberson v. Rest. Delivery Developers, LLC*, 2017 U.S. Dist. LEXIS 150591, at *1-*2 (M.D. Fla. Sept. 18, 2017). After conditionally certifying the class under a "lenient" standard imposed by the FSLA, the Court granted defendants' motion to decertify the class and dismissed most of the claims brought by opt-in plaintiffs. In dismissing the claims, the court only considered whether the plaintiffs were similarly situated, and did not adjudicate the merits.[4]

---

[4] In addition to exposing the DIG to unique reliance issues, the allegations against the DIG in the RDD Class Action raise questions as to the fitness of the DIG's members to act as fiduciaries for the putative Class in this litigation. "[O]n more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR) 2003 U.S. Dist. LEXIS 25022, at *21-*22. *See also In re Network Assocs. Secs. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (finding lead plaintiff movant inadequate due

The allegations against the DIG in the RDD Class Action are strikingly similar to Waitr's own alleged FLSA violations.  As the Complaints in the Related Actions allege:

> [I]t now has been estimated that Waitr may also owe drivers as much as $800 million in withheld mileage reimbursement payments that acted as illegal wage kickbacks to the Company, and which resulted in Waitr drivers earning less than minimum wage of $7.25 per hour[.]
>
> * * * * *
>
> At the time Waitr began trading publicly, it was not true that the Company was at or near profitability because Defendants had artificially bolstered profits and revenues by: . . . failing to properly reimburse thousands of drivers for driving expenses such that their earnings were not the high rate of $15.00 per hour as represented, but below minimum wage and as low as $2.00 per hour as reported by one former driver who sued the Company for Fair Labor Standards Act ("FLSA") violations[.]

*Welch* Complaint ¶¶ 10, 92; *Bates* Complaint ¶¶ 10, 92.

Unlike the majority of the Class members, the members of the DIG are thus well acquainted with labor standards in, and the application of the FLSA to, the food-delivery industry.  As such, they are far less likely than other Class members to have taken Waitr's misrepresentations with respect to these subjects at face value, particularly given the fact that they were accused of violating those same provisions at their own companies.  If, following fact discovery, the Defendants are able to demonstrate as much, they will easily succeed in severing the link between the alleged misrepresentations and the DIG's investment decisions, thereby depriving the Class of the *Basic* presumption of reliance.

### C.   The DIG, Welch, and Barnard are a pseudo-group assembled by attorneys in contravention of the PSLRA's goals

The bizarre configuration of putative Class members included in the DIG's motion papers, coupled with various irregularities in the sworn statements submitted on behalf of the DIG, Welch,

---

to unrelated fraud investigation); *Newman v. Eagle Bldg Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (lead plaintiff movant inadequate where concerns existed with respect to his ability to serve as a fiduciary due to unrelated prior conduct).

and Barnard, raise several red flags suggesting that movants DIG and non-movants Welch and Barnard were assembled by counsel into a pseudo-group, in contravention of the PSLRA's goals.

Courts generally exercise significant caution and decline to appoint investors whose attorneys appear to be unduly directing the litigation. The PSLRA was passed, in part, to curb attorney-driven litigation and "to empower investors so that they, not their lawyers, control private securities litigation by allowing the court to ensure the transfer of primary control of private securities litigation from lawyers to investors." *Marvin J. Netsky, Marks Bros. v. Capstead Mortg. Corp.*, No. 3:98-CV-1716-L, 2000 U.S. Dist. LEXIS 9941, at *27-*28 (N.D. Tex. July 12, 2000). "Appointing a group that was put together for the sole purpose of creating the largest interest raises concern because it is possible the lawyers will have a greater interest than the actual plaintiffs." *Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2017 U.S. Dist. LEXIS 140268, at *23-*24 (E.D. Tex. Aug. 31, 2017) (citing *In re Alcatel Alsthom Secs. Litig.*, 1999 U.S. Dist. LEXIS 24278, at *11-*12 (E.D. Tex. June 7, 1999)).

Here, there is ample evidence that the DIG's attorneys, not the DIG, have orchestrated the pseudo-group's motion and odd configuration of investors. The motion papers assert that Welch and Barnard support the appointment of the DIG as Lead Plaintiff. Yet there is no indication that the DIG, Welch and Barnard are even aware of one another's existence, let alone that Welch and Barnard endorse the DIG's appointment as Lead Plaintiff, that the purportedly tight-knit DIG is prepared to serve jointly with these two evident strangers as Co-Lead Plaintiffs, or that Welch or Barnard themselves are willing to serve as Co-Lead Plaintiffs with the DIG or as named additional plaintiffs. The DIG has submitted a 19-page Joint Declaration explaining in detail, *inter alia*, how the group's members know each other and why they chose to seek appointment jointly as a group. Conspicuously absent from the Joint Declaration is any mention of Welch or Barnard. Welch and

{00354866;3 }                                        17

Barnard, meanwhile, did not submit *any* comparable declaration, either jointly or individually. The only sworn statements in their names are the Certifications submitted with the DIG's motion papers. Dkt. Nos. 13-9, 13-11. Neither Certification mentions the DIG, much less endorses its motion, nor do Welch's and Barnard's Certifications mention one another. In fact, Welch and Barnard's Certifications do not actually expressly authorize their counsel to make any specific filing on their behalves—either a complaint or a lead plaintiff motion, as is conventional—merely stating that the signatory is "willing" to serve as a representative party. Dkt. No. 13-9 ¶ 3; Dkt. No. 13-11 ¶ 3.[5] Welch's Certification is dated "9/4" and appears to be a duplicate of the Certification that was filed with his initial Complaint. *See* Dkt. Nos. 1-2, 13-9. The fact that Welch did not execute a new Certification in connection with the DIG's motion—filed two months later—further suggests that he has not endorsed the DIG's motion and may not even be aware of it. Barnard, for his part, never even filed an initial Complaint against Waitr, which begs the question: Why is Barnard even included in the DIG's motion? If Welch and Barnard are not even seeking appointment as Lead Plaintiffs, it is puzzling why any filing whatsoever has been made on their behalves.

The DIG's motion is further undermined by irregularities in the DIG's Joint Declaration. The signature blocks on the DIG's Joint Declaration are formatted: "Signed: _____, at _____, _____." In the final two blanks, two movants (Sinor and Colangelo) wrote "Tampa, Florida"; another movant (Brown) wrote an entire street address; and another movant (Moore) wrote "4:06 PM CST, 11/20/19". This inconsistency may be minor, yet it suggests that these sworn statements were inattentively prepared merely as an exercise in *pro forma* box-checking in

---

[5] By contrast, de la Cruz's Certification *expressly* "authorize[s] the filing of a motion on [de la Cruz's] behalf for appointment as lead plaintiff." Dkt. No. 11-5 at ¶ 2.

the course of the group's slapdash assembly, and that neither the movants nor their counsel could be bothered to prepare uniform signature blocks.  This undermines the DIG's adequacy rather than demonstrating it.

Finally, the unexplained involvement of Lundy Law as "Liaison Counsel" is another red flag that the DIG's attorneys, rather than the DIG, are directing this litigation.  De la Cruz's motion brief devotes a paragraph to explaining why Liaison Counsel would benefit the Class and why O'Bell Law specifically was selected to serve as such.  Unlike Pomerantz, O'Bell Law has an office in Louisiana, and its attorneys have extensive familiarity with the Local Civil Rules and practice norms of this Judicial District.  Likewise, O'Bell Law specializes in securities matters, among other practice areas.  Accordingly, de la Cruz's decision to retain Liaison Counsel to assist his chosen Lead Counsel in prosecuting this action in this Judicial District is sensible and explicable.  By contrast, the DIG's retention of Liaison Counsel is mystifying.  The group's proposed Lead Counsel, KSF, maintains its principal offices in Louisiana.  A review of the firm's website indicates that a number of its attorneys are licensed to practice in the Western District of Louisiana.  Indeed, three of them appear on the signature block, and KSF itself, not its Liaison Counsel, filed the DIG's motion papers.  An electronic review of Western District of Louisiana dockets indicates that KSF has previously litigated in this Judicial District without Liaison Counsel.  *See Johnson v. Recatto*, 6:10-cv-01068 (W.D. La.); *Hill v. Illinois Central Railroad*, 3:09-cv-01866 (W.D. La.); *Meyer v. Stone Energy Corp.*, 6:05-cv-02109 (W.D. La.).  Yet the DIG's motion brief contains only one sentence describing Lundy Law, asserting that the firm "possesses a high degree of skill and professionalism, having been involved in numerous class action cases" but providing no explanation whatsoever for its seemingly superfluous involvement in this litigation. Dkt. No. 13-1 at 16.  Coupled with the aforementioned indications that the DIG's

{00354866;3 }                                   19

attorneys, rather than the DIG, are directing this litigation, de la Cruz respectfully submits that the involvement of another firm in this litigation in an unspecified capacity raises additional concerns as to the DIG's ability to supervise its counsel.

### III.   NON-MOVANTS WELCH AND BARNARD ARE INELIGIBLE FOR APPOINTMENT AS LEAD PLAINTIFF

As an initial matter, non-movants Welch and Barnard do not seek appointment as Lead Plaintiffs. Rather, the DIG's motion brief merely contains an unusual footnote to the effect that they purportedly "remain willing and able to serve as Co-Lead Plaintiff(s) and/or Class Representative(s), should the Court deem it necessary to protect the interests of the Class." Dkt. No. 13-1 at 2 n.2. Assuming, *arguendo*, that the Court would consider Welch and Barnard as potential Lead Plaintiffs, they are in any event ineligible for appointment because they do not satisfy the statutory criteria. As discussed above, the PSLRA clearly states "that the most adequate plaintiff [*i.e.*, the presumptive lead plaintiff] . . . is the person or group of persons that has either filed the complaint or made a motion . . . . has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23". 15 U.S.C. § 78u-4(a)(3)(B). While Welch did file an initial complaint, he incurred a loss of only $16,781 and retained only 2,095 shares at the end of the Class Period—by either metric, significantly less than de la Cruz. Accordingly, Welch does not possess the largest financial interest in this litigation and thus does not satisfy the second of the statutory criteria. Barnard, for his part, neither filed a complaint nor a motion seeking appointment as lead plaintiff—again, he and Welch strangely filed a motion seeking not their own appointment, but the appointment of the apparently unrelated DIG. Barnard thus does not even satisfy the first of the statutory criteria, and his financial interest in this litigation is irrelevant. Any after-the-fact attempt by Barnard to restyle his submission as a motion would be *per se* untimely under the PSLRA, and cannot be considered by the Court. *See*, *e.g.*, *Enron*,

206 F.R.D. at 439-40 ("The statute is unequivocal and imposes precise time requirements; therefore all motions for appointment as Lead Plaintiff **must** be filed within sixty days of the published notice." (citing *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999)); *Adeptus Health*, 2017 U.S. Dist. LEXIS 140268, at *15-*16 (denying lead plaintiff motion filed after the statutory deadline as untimely). Finally, as discussed above, neither Welch nor Barnard satisfies the adequacy requirement of Rule 23. There is no indication that the two individuals know one another, and the nature of their involvement—likely without their knowledge—in the bizarre configuration of investors assembled in the DIG's motion raises serious questions as to their ability to supervise their chosen counsel. In sum, the PSLRA precludes the appointment of Welch and Barnard as Lead Plaintiffs, either individually or jointly.

## CONCLUSION

For the foregoing reasons, de la Cruz respectfully requests that the Court grant his motion in its entirety and deny the competing motion of the DIG.

Dated: December 17, 2019

Respectfully submitted,

O'BELL LAW FIRM, LLC

/s/ Eric J. O'Bell
Eric J. O'Bell (La. Bar. #26693)
3500 North Hullen Street
Metairie, LA 70002
Telephone: (504) 456-8677
Facsimile: (504) 456-8653
Email: ejo@obelllawfirm.com

*Counsel for Lead Plaintiff Movant*
*Tupac de la Cruz and Proposed*
*Liaison Counsel for the Class*

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice application forthcoming*)
J. Alexander Hood II
(*pro hac vice application forthcoming*)

600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice application forthcoming*)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Counsel for Lead Plaintiff Movant*
*Tupac de la Cruz and Proposed*
*Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above pleading was served on counsel of record via the

Court's CM/ECF notification system on December 17, 2019.

/s/ Eric J. O'Bell

{00354866;3 }

22