**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| WALTER WELCH, Individually and on Behalf of all Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, )<br><br>Defendants. ) | Civil Action No. 2:19−CV−01260<br><br>JUDGE TERRY A. DOUGHTY<br><br>MAGISTRATE JUDGE KATHLEEN KAY<br><br>CLASS ACTION |
| KELLY BATES, Individually and on Behalf of all Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, )<br><br>Defendants. ) | Civil Action No. 2:19−CV−01427<br><br>JUDGE TERRY A. DOUGHTY<br><br>MAGISTRATE JUDGE KATHLEEN KAY<br><br>CLASS ACTION |

**WALTER WELCH, SEAN BARNARD, AND THE DELIVERY INVESTOR
GROUP'S OMNIBUS MEMORANDUM IN OPPOSITION TO
ALL OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    ARGUMENT........................................................................................................4

    A.  THE PSLRA'S THREE-STEP LEAD PLAINTIFF PROCESS .................................................4

    B.  THE DELIVERY INVESTOR GROUP SHOULD BE APPOINTED
    LEAD PLAINTIFF ..............................................................................................7

    C.  THE REMAINING MOVANTS' MOTIONS SHOULD BE DENIED …...................................10

        1.  Tupac de la Cruz, Ms. Brigidear, and The Cokers....................................................10

        2.  The Bu-Thompson Group......................................................................................10

III.    CONCLUSION ...................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001).................................................................................... 11

*Chahal v. Credit Suisse Grp. AG*,
No. 18-02268, 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)................................. 2

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997)............................................................................ 9

*Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*,
306 F.3d 726 (9th Cir. 2002)............................................................................. *passim*

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................. *passim*

*In re OCA Sec. & Derivative Litig.*,
No. 05-2165, 2005 U.S. Dist. LEXIS 49978  (E.D. La. Nov. 18, 2005) .................................... 4

*In re Oxford Health Plans, Inc., Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998)................................................................................. 5

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
No. 15-02404, 2015 U.S. Dist. LEXIS 163811 (S.D. Tex. Dec. 7, 2015) ................................. 4

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y 2001) ....................................................................... 11

*Mullins v. AZZ, Inc.*,
No. 18-025, 2018 U.S. Dist. LEXIS 222090 (N.D. Tex. Aug. 9, 2018) ............................. 4, 7, 9

*Newby v. Enron Corp. (In re Enron Corp., Sec. Litig.)*,
206 F.R.D. 427 (S.D. Tex. 2002) ..................................................................... 4, 9, 11

*Newegg Inc. v. Ezra Sutton, P.A.*,
15-01395, 2016 U.S. Dist. LEXIS 124981 (C.D. Cal Sept. 13, 2016)…………………….....3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Dynegy, Inc.*
*(In re Dynegy, Inc. Sec. Litig.)*,
No. 02-1571, 2002 U.S. Dist. LEXIS 27858 (S.D. Tex. Oct. 28, 2002)................................. 4, 6

*Rooney v. EZCORP, Inc.*,
330 F.R.D. 439 (W.D. Tex. 2019) ........................................................................... 4

*Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ....................................................................................... 5, 9

*Tarica v. McDermott Int'l, Inc.*,
   No. 99-3831, 2000 U.S. Dist. LEXIS 5031 (E.D. La. Apr. 13, 2000) ........................... 2, 4, 8, 10

*Thompson v. Shaw Grp., Inc.*,
   No. 04-1685, 2004 U.S. Dist. LEXIS 25641 (E.D. La Dec. 13, 2004) .......................... 2, 4, 8, 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..................................................................................... 11

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................................................. 6

**Statutes**

15 U.S.C. § 78……………………………………………………………………………… *passim*

**Rules**

Fed. R. Civ. P. 23………………………………………………………………………….. *passim*

The Delivery Investor Group (the "DIG") – which has the largest financial interest in this case and is the presumptive lead plaintiff – together with Plaintiff Walter Welch and Sean Barnard (collectively with the DIG, "Movants"), respectfully submit this Omnibus Memorandum of Law in further support of Movants' Motion to Appoint the Delivery Investor Group as Lead Plaintiff and in opposition to all other motions.[1]

## I.     INTRODUCTION

Six motions for appointment as lead plaintiff were initially filed in the above-captioned actions, of which five remain pending. In order of claimed loss, the pending motions are as follows: (1) the Delivery Investor Group, with the support of Plaintiff Welch and Sean Barnard (Dkt. No. 13); [2] (2) Tupac de la Cruz (Dkt. No. 11); (3) Barbara Brigidear (Dkt. No. 14); (4) Jianwen Bu and William Thompson (the "Bu-Thompson Group") (Dkt. No. 16), and (5) Theresa and Harry Coker (Dkt. No. 12).[3] In light of the fact that the Delivery Investor Group's loss is *more than 17 times* the claimed loss of the nearest movant (Mr. de la Cruz), and *more than 10 times* the claimed losses of all the remaining movants *combined*, Movants' motion to appoint the Delivery Investor Group as lead plaintiff should be granted and all other motions should be denied.[4]

---

[1]     All capitalized terms not defined herein have the same meaning as ascribed to them in Movants' opening memorandum. *See* Dkt. No 13-1. Dkt. references herein refer to filings in the first-filed above-captioned action, *Welch v. Meaux, et al.*, 19−cv−01260.

[2]     The Delivery Investor Group is comprised of four individual food delivery entrepreneurs and business professionals who have known one another personally and professionally since at least 2007. *See* Dkt No. 13-3 (Joint Declaration of the DIG). Mr. Welch is an individual Waitr investor who filed the initial September 26, 2019 Complaint in this action, and Mr. Barnard is likewise an individual investor who acquired Waitr common stock during the Class Period. Dkt. Nos. 1, 13-9, and 13-11. Messrs. Welch and Barnard both fully support the appointment of the Delivery Investor Group as Lead Plaintiff and KSF as Lead Counsel and remain willing and able to serve as Co-Lead Plaintiff(s) and/or Class Representative(s) should the Court deem it necessary to protect the interests of the Class.

[3]     On December 3, 2019, James Gillard and Chad Sarver withdrew their lead plaintiff motion. Dkt. No. 18.

[4]     All movants agree that consolidation of the two above-captioned, related cases is

1

The requirements for selecting a lead plaintiff enunciated in the Private Securities Litigation Reform Act of 1995 ("PSLRA") are "straightforward." *Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 732 (9th Cir. 2002). The Court must appoint as lead plaintiff the member(s) of the purported Class with the "largest financial interest in the relief sought by the class" that otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Cavanaugh*, 306 F.3d at 730, 732 (same); *Thompson v. Shaw Grp., Inc.*, No. 04-1685, 2004 U.S. Dist. LEXIS 25641, at *13 (E.D. La Dec. 13, 2004) ("Under the 'rebuttable presumption' established pursuant to the PSLRA, the Court will select the Lead Plaintiff based on the following criteria: (1) a plaintiff must have filed the complaint or a motion for appointment in response to published notice; (2) the plaintiff with the 'largest financial interest in the relief sought by the class'; *and* (3) a plaintiff that otherwise satisfies the requirements of [Rule 23](a).") (italics in original); *Tarica v. McDermott Int'l, Inc.*, No. 99-3831, 2000 U.S. Dist. LEXIS 5031, at *12-13 (E.D. La. Apr. 13, 2000) (finding group of four plaintiffs with highest financial loss to be most adequate as Lead Plaintiff). Importantly, courts interpreting the PSLRA have routinely concluded that the amount of a plaintiff's financial interest – *i.e.* the loss sustained due to the defendants' fraud or malfeasance – in the litigation is the "*defining criterion in the selection process*." *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *8, *13-14 (citing *Cavanaugh* and *Tarica*).[5] While the PSLRA does not define "financial interest," courts "generally find the [net loss suffered] to be the most compelling" criterion in making such a determination. *Chahal v. Credit Suisse Grp. AG*, No. 18-02268, 2018 U.S. Dist. LEXIS 104185, at *5-6 (S.D.N.Y. June 21, 2018).

---

appropriate. Moreover, counsel for all Defendants has confirmed with Movants' counsel that all Defendants consent to the proposed consolidation and take no position on the lead plaintiff motions.

[5]      Unless otherwise noted, all emphasis is added and all citations are omitted.

With more than $14 million in losses, the Delivery Investor Group has suffered *by far* the greatest loss of any movant. Its losses are *more than 17 times* the claimed loss of the nearest movant and *more than 10 times* the claimed losses of all the remaining movants *combined*. What is more, the Delivery Investor Group's claims are identical, non-competing, and non-conflicting with the claims of the other Class members, the Delivery Investor Group has no conflicts with the other Class members, and the Delivery Investor Group has retained competent and experienced counsel. *See* Dkt. No. 13-1 at 11-16; Dkt. No. 13-3 (DIG Joint Declaration); Dkt. No. 13-14 (KSF Firm Resume).  Indeed, the Delivery Investor Group's chosen counsel, KSF, is a firm located in Louisiana, whose partners include the former Attorney General of the Louisiana, and who filed the initiating complaint in this matter on behalf of the Delivery Investor Group's Co-Movant, Walter Welch.  Dkt. No. 1; Dkt. No. 13-14 (KSF Firm Resume).  KSF's fulsome, 114-page lawsuit was the result of many weeks of research and further supports the conclusion that the Delivery Investor Group has retained clearly competent and capable counsel.[6]

Accordingly, because the Delivery Investor Group has the largest financial interest in the relief sought by the class and otherwise satisfies the *prima facie* typicality and adequacy requirements of Rule 23, the Delivery Investor Group should be appointed lead plaintiff and the remaining movants' motions should be denied.

---

[6]    In contrast, counsel retained by competing movant Mr. de la Cruz filed a lawsuit on November 4, 2019 against Defendants that copies, nearly verbatim, the lawsuit filed by Movants' counsel on September 26, 2019 on behalf of Plaintiff Welch. But for the omission of claims under Section 12 of the Securities Act of 1933 and Section 14(a) of the Securities Exchange Act of 1934 and minor superficial changes, that complaint is virtually identical in substance and form to the complaint filed by Movants' counsel; indeed, it even has virtually the same opening paragraph – which *claims* that the complaint is based on investigation of counsel – and identical footnotes. *Compare Welch v. Meaux, et al.,* No. 19-cv-01260-TAD-KK (W.D. La.), Dkt. No. 1 *with Bates v. Meaux, et al.*, No. 19-cv-01427-TAD-KK (W.D. La.), Dkt No. 1.  Courts have been critical of such misappropriation of work product.  *See, e.g., Newegg Inc. v. Ezra Sutton, P.A.*, No. 15-01395, 2016 U.S. Dist. LEXIS 124981, at *5 (C.D. Cal Sept. 13, 2016) (noting that "legal briefs can be the subject of copyright infringement").

II.      **ARGUMENT**

A.      THE PSLRA'S THREE-STEP LEAD PLAINTIFF PROCESS

Two leading Circuit Courts have directly addressed the procedural standards applicable to the PSLRA lead plaintiff process – the Ninth Circuit, in *Herrgott v. United States Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729-31 (9th Cir. 2002), and the Third Circuit, in *In re Cendant Corp. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001). District courts in this Circuit routinely rely on both of these cases for guidance.[7] After extensive analyses, both courts concluded that this statutory framework sets out a mandatory, strict, and sequential three-step process:

First, the Court must confirm that proper notice has been disseminated pursuant to the PSLRA. *Cavanaugh*, 306 F.3d 726, 729-31; *accord* 15 U.S.C. §§ 78u-4(a)(3)(A)(i); *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *8.

Second, to identify the "most adequate plaintiff," the PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class … and otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u- 4(a)(3)(B)(iii)(I). During this step, the Court must "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30. The Court "must then focus its attention

---

7       *See, e.g.*, *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 447 (W.D. Tex. 2019) (citing *Cavanaugh*); *Mullins v. AZZ, Inc.*, No. 18-025, 2018 U.S. Dist. LEXIS 222090, at *3, *8 (N.D. Tex. Aug. 9, 2018) (citing *Cavanaugh* and *Cendant*); *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *14 (citing *Cavanaugh*); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. 15-02404, 2015 U.S. Dist. LEXIS 163811, at *16 (S.D. Tex. Dec. 7, 2015) (citing *Cavanaugh*); *In re OCA Sec. & Derivative Litig.*, No. 05-2165, 2005 U.S. Dist. LEXIS 49978, at *23 (E.D. La. Nov. 18, 2005) (citing *Cendant*); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Dynegy, Inc. (In re Dynegy, Inc. Sec. Litig.)*, No. 02-1571, 2002 U.S. Dist. LEXIS 27858, at *6-7, *9 (S.D. Tex. Oct. 28, 2002) (citing *Cendant*); *Newby v. Enron Corp. (In re Enron Corp., Sec. Litig.)*, 206 F.R.D. 427, 442 (S.D. Tex. 2002) (citing *Cendant*).

on *that* plaintiff and determine, *based on the information he has provided in his pleadings and declarations*, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730.[8]

Third, the Court may then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730; *accord Cendant*, 264 F.3d at 262 ("[T]he court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption."). Importantly, though, the PSLRA's presumption may be rebutted "***only upon proof***" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Only if, as a result of this three-step process, the presumptive lead plaintiff does not meet the typicality or adequacy requirement, can the Court then proceed to analyze the plaintiff with the next lower stake. *Cavanaugh*, 306 F.3d at 729-730. Importantly, though, in coming to this conclusion, the *Cavanaugh* and *Cendant* courts outlined three critical guidelines:

First, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate – a lower showing than the *proof* required of competing movants in the adversarial step three. *Cendant*, 264 F.3d at 264 ("[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements *need not be extensive*." Rather, "the court's initial inquiry should be confined to

---

8    In connection with lead plaintiff appointments, courts have consistently held that the Rule 23 considerations are limited to an evaluation of only typicality and adequacy. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (typicality and adequacy are the only relevant prerequisites to lead plaintiff selection); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same).

determining whether such movants have stated a *prima facie case* of typicality and adequacy.").[9]

Second, the Court's *prima facie* determinations of typicality and adequacy must be "based on the information [the movant] has provided *in his pleadings and declarations*," and rebuttal evidence introduced by competing movants should specifically not be considered during this second step presumption analysis. *Cavanaugh*, 306 F.3d at 730.[10] "At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's *complaint and sworn certification; there is no adversary process to test the substance of those claims.*" *Id.* Rather, it is "[a]t the third stage [that] the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id.*[11]

Finally, the lead plaintiff determination does not depend on the Court's judgment of which party will be the best lead plaintiff for the Class, but rather which movant fulfills the statutory requirements. "[T]he statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case …. That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence …. [H]e is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a

---

[9]   *Accord Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)).

[10]   *Accord Cendant*, 264 F.3d at 264 ("In conducting the initial [presumption] inquiry … the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted.").

[11]   *Accord Cendant*, 264 F.3d at 263-64 (The "threshold determination" of typicality and adequacy "should be a product of the court's independent judgment, and [] arguments by members of the purported plaintiff class as to why it does not should be considered only in the context of assessing whether the presumption has been rebutted."); *Pirelli*, 229 F.R.D. at 414-15 (finding no "support [for] the notion that courts have required movants 'to provide adequate information about themselves' in addition to and apart from the PSLRA's own requirements ….").

better job." *Cavanaugh*, 306 F.3d at 732.[12]

Applying these governing standards, the Delivery Investor Group is the presumptive "most adequate plaintiff" – and thus its motion should be granted and all other competing motions denied – because it: (A) has the largest known financial interest in the relief sought and (B) "otherwise satisfies" the minimal, *prima facie* requirements of Rule 23.

**B.      THE DELIVERY INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

The Delivery Investor Group suffered **$14,764,673.56** in losses as a result of its transactions in Waitr common stock during the Class Period, May 17, 2018 to August 8, 2019, inclusive. *See* Dkt. Nos. 13-4-13-8 (DIG Certifications and Loss Chart). Its losses easily represent the largest financial interest of any remaining applicant seeking to be appointed lead plaintiff:

| MOVANT(S) | CLAIMED LOSSES |
|---|---|
| The Delivery Investor Group (the "DIG") | $         14,764,673.56 |
| Tupac de la Cruz | $              856,073.00 |
| Barbara Brigidear | $              400,536.21 |
| The Bu-Thompson Group | $              104,979.17 |
| Theresa and Harry Coker | $                44,319.37 |

***Indeed, each individual member of the Delivery Investor Group suffered losses that are greater than the combined claimed losses of all other remaining movants:***[13]

---

[12]      *Accord Cendant*, 264 F.3d at 268 ("[T]he question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff …. [T]he inquiry is not a relative one."); *Mullins*, 2018 U.S. Dist. LEXIS 222090, at *3 ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.") (citing *Cavanaugh*, 306 F.3d at 732).

[13]      Furthermore, the Delivery Investor Group's Co-Movant Sean Barnard – who supports the appointment of the DIG as Lead Plaintiff and is willing and able to serve as Co-Lead Plaintiff and/or Class Representative – individually suffered losses that are *greater than the combined claimed losses of all over movants other than the DIG members: $2,254,500.11*. *See* Dkt. Nos. 13-11-13-12 (Barnard Certification and Loss Chart).

| MOVANT(S) | CLAIMED LOSSES |
|---|---|
| *Daniel Sinor (the Delivery Investor Group)* | $    4,418,318.09 |
| *Thomas Colangelo (the Delivery Investor Group)* | $    3,936,194.71 |
| *William Moore (the Delivery Investor Group)* | $    3,259,407.77 |
| *Andrew Brown (the Delivery Investor Group)* | $    3,150,752.98 |
| Tupac de la Cruz | $    856,073.00 |
| Barbara Brigidear | $    400,536.21 |
| The Bu-Thompson Group | $    104,979.17 |
| Theresa and Harry Coker | $    44,319.37 |

These substantial losses are outcome determinative. *See Thompson*, 2004 U.S. Dist. LEXIS 25641, at *16 ("The Court adopts the persuasive authority of the *Cavanaugh* and [*Tarica*] rulings that the financial stake is the determinative factor unless the presumptive lead plaintiff runs afoul of the requirements under Fed. R. Civ. P. 23(a)."); *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *12-13 (finding group of four plaintiffs with largest financial loss as most adequate lead plaintiff).

In addition to possessing the "largest financial interest in the relief sought by the class," the Delivery Investor Group also easily "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and adequacy is met when "the representative parties will fairly and adequately protect the interests of the class." *See* FED. R. CIV. PRO. 23(a)(3), (4). "[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Tarica,* 2000 U.S. Dist. LEXIS 5031, at *13-14 (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)). Similarly, adequacy is satisfied when the proposed lead plaintiff's interests are aligned with the Class and it has obtained qualified and experienced counsel. *Id.* at *14-15. As noted above, at this stage, a movant need only make a *prima facie* showing that it is otherwise typical and adequate, that *prima facie* determination should be based on the information the movant has provided in his pleadings and declarations only, and

8

rebuttal evidence introduced by competing movants should specifically not be considered. *Supra* §II.A; *see also In re Enron*, 206 F.R.D. at 441 (inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the inquiry at the class certification stage); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) ("[A] wide-ranging analysis under Rule 23 is not appropriate" as "Congress clearly did not intend to burden prospective Lead Plaintiffs by requiring extensive evidentiary proof of typicality or adequacy.").

Here, as set forth in Movants' opening papers, the Delivery Investor Group's claims are identical, non-competing, and non-conflicting with the claims of the other Class members, the Delivery Investor Group has no conflicts with the other Class members, and the Delivery Investor Group has retained competent and experienced counsel, such that the Delivery Investor Group *prima facie* satisfies both the typicality and adequacy requirements of Rule 23. *See* Dkt. No. 13-1 at 11-16; Dkt. No. 13-3 (DIG Joint Declaration); Dkt. No. 13-8 (DIG Loss Chart); Dkt. No. 13-14 (KSF Firm Resume). The Delivery Investor Group is, therefore, the presumptive lead plaintiff.

With that presumption triggered, another movant must adduce "*exacting proof*" that the Delivery Investor Group would not be able to fairly or adequately protect the interests of the Class or to adequately represent the Class due to its being subject to unique defenses. *Mullins*, 2018 U.S. Dist. LEXIS 222090, at *6; *Sczesny Trust*, 223 F.R.D. at 324-25. This is a high burden that cannot and will not be met here.

In sum, the Delivery Investor Group, and each of its individual members, has suffered – indisputably and by a significant margin – the largest loss of any movants and thus satisfies the minimal, *prima facie* typicality and adequacy requirements of Rule 23 applicable at this stage, and the remaining movants cannot carry their burden of **proving** that the Delivery Investor Group is inadequate or atypical. Movants' motion to appoint the Delivery Investor Group as lead plaintiff should thus be granted.

### C.   THE REMAINING MOVANTS' MOTIONS SHOULD BE DENIED

The motions of all other remaining movants should correspondingly be denied.

### 1.   Tupac de la Cruz, Ms. Brigidear, and The Cokers

Mr. de la Cruz claims a loss of $856,073.00 (Dkt. No. 11-4), which falls almost *$14 million short* of that suffered by the Delivery Investor Group.  Dkt. No. 13-8 (DIG Loss Chart).  Mr. de la Cruz's losses are also approximately *$2 million less* than the losses suffered by any one of the members of the Delivery Investor Group (to say nothing of all 4) (*see id.*) and *$1.4 million less* than the losses suffered by Movant Sean Barnard, who supports appointment of the Delivery Investor Group as Lead Plaintiff. *See* Dkt. No. 13-12 (Barnard Loss Chart).  Ms. Brigidear claims losses of only $400,536.21, which also falls well short of the losses claimed by the Delivery Investor Group. *See* Dkt. No. 14-5.[14] Likewise, the Cokers, claiming losses of $44,319.37, have suffered a mere fraction of the losses claimed by the Delivery Investor Group. *See* Dkt. No. 12-5. As these movants' individual losses are simply infinitesimal in comparison to the $14.76 million loss suffered by the Delivery Investor Group, for this reason alone their motions should be denied. *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *16 ("financial stake is the determinative factor"); *see also Tarica*, 2000 U.S. Dist. LEXIS 5031, at *12-13 (group with largest financial loss appointed lead plaintiff).

### 2.   The Bu-Thompson Group

The Bu-Thompson Group collectively claims a loss of only $104,979.17.  *See* Dkt. No. 16-5 at 2. As an initial matter, though, Messrs. Bu and Thompson, who comprise the group, appear to be entirely *unrelated* to each other. Indeed, it would appear that Mr. Bu is represented by one law

---

[14]    One of Ms. Brigidear's reported transactions also appears to fall outside the price range for which Waitr common stock traded on that day. Specifically, Ms. Brigidear reported that on March 14, 2019, she sold 500 shares at a price of $14.96 per share (Dkt No. 14-5 (Brigidear Loss Chart)); however, the reported high trading price that day was $14.77 per share.

firm and that Mr. Thompson is separately represented by a second, unrelated law firm, and that the two moved jointly for the sole purpose of artificially manufacturing a larger (but still not the largest) loss. *See* Dkt. No. 16-1 at 9 (requesting appointment of two firms, Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A.); *compare* Dkt. 16-4 at 2 (Mr. Bu's Certification) *with* Dkt. 16-4 at 4 (Mr. Thompson's Certification, in a completely different form, identifying The Rosen Law Firm P.A. as counsel). These kinds of artificial groups of *unrelated* individuals are almost universally rejected by the courts. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001) (acknowledging that requiring a pre-litigation relationship based on more than their losing investment satisfies the terms of the PSLRA); *In re Enron*, 206 F.R.D. at 442 ("[T]o satisfy the terms and effectuate the underlying policy of the PSLRA[,] … unrestricted aggregation of *unrelated* plaintiffs by manipulating lawyers should not be permitted. Instead, where a movant seeks appointment of a group of Lead Plaintiffs, that group must be restricted to a few cohesive parties and the movant must bear the burden of demonstrating that the group not only has the largest financial interest in the outcome of the litigation, but also a *pre-litigation relationship* based on more than the losing investments at issue in the securities fraud class action.").[15] And, even if this were not such a disfavored group, the Bu-Thompson Group collectively claims a loss of only $104,979.17, and thus does not possess the largest financial interest. Accordingly, their motion, too, should be denied.

---

[15]    *See also, e.g., In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y 2001) (rejecting putative group because it lacked an "independent existence" and appeared to be no more than "an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff'"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 393 (S.D.N.Y. 2008) (rejecting proposed group that "fail[ed] to provide the Court with any evidence that its members have had any prior pertinent relationships or cooperative efforts, or that they [would] act collectively and separately from their lawyers").

11

## II.    CONCLUSION

The Delivery Investor Group's approximately $14.7 million in losses dwarf – by orders of magnitude – those of every other movant. The magnitude of that loss is determinative. And, having suffered such a significant loss, no movant has a greater interest in pursuing a recovery for the Class than the Delivery Investor Group, and no competing movant has or can rebut – with proof – the adequacy or typicality of these Movants. For these reasons and those in Movants' opening memorandum (Dkt. No. 13-1), the Delivery Investor Group respectfully requests that this Court: (1) consolidate the related above-captioned actions; (2) appoint the Delivery Investor Group as Lead Plaintiff in this consolidated action; (3) approve the Delivery Investor Group's selection of KSF as Lead Counsel for the Class; and (4) deny the remaining movants' motions.

DATED: December 17, 2019                      Respectfully submitted,

                                              **KAHN SWICK & FOTI, LLC**

                                               */s/ Melinda A. Nicholson*
                                              Lewis S. Kahn (23895)
                                              Melinda A. Nicholson (32911) (TA)
                                              Michael J. Palestina (31907)
                                              1100 Poydras Street, Suite 3200
                                              New Orleans, LA 70163
                                              Telephone: (504) 455-1400
                                              Facsimile: (504) 455-1498
                                              Email: Melinda.Nicholson@ksfcounsel.com
                                              Email: Lewis.Kahn@ksfcounsel.com
                                              Email: Michael.Palestina@ksfcounsel.com

                                              *Counsel for the Delivery Investor Group, Walter
                                              Welch, and Sean Barnard*

                                              **LUNDY, LUNDY, SOILEAU &
                                              SOUTH, LLP**
                                              Matthew E. Lundy (18988)
                                              501 Broad Street
                                              Lake Charles, LA 70601
                                              Telephone: (337) 439-0707

Facsimile: (337) 439-1029
Email: mlundy@lundylawllp.com

*Liaison Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 17, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

/s/ Melinda A. Nicholson
Melinda A. Nicholson

14