# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | |
|---|---|
| WALTER WELCH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC,<br><br>Defendants. | Case No.  2:19-cv-01260-TAD-KK |
| KELLY BATES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC,<br><br>Defendants. | Case No.  2:19-cv-01427-TAD-KK |

**REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF TUPAC DE LA CRUZ FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    I.    DE LA CRUZ IS THE "MOST ADEQUATE PLAINTIFF" WITHIN THE
        MEANING OF THE PSLRA ................................................................................. 3

        A.    De la Cruz has the largest financial interest in the relief sought by the
                Class .................................................................................................................. 3

        B.    De la Cruz satisfies the requirements of Rule 23 ....................................... 3

    II.    THE PRESUMPTION IN FAVOR OF DE LA CRUZ HAS NOT BEEN AND
        CANNOT BE REBUTTED .................................................................................... 4

    III.    THE PSLRA MANDATES DENIAL OF THE DIG'S MOTION ON MULTIPLE
        BASES .................................................................................................................. 4

        A.    The DIG does not have the largest financial interest in the relief sought by
                the Class ............................................................................................................ 4

        B.    The DIG is inadequate and atypical within the meaning of Rule 23 and
                subject to unique defenses ............................................................................. 5

    IV.    WELCH AND BARNARD ARE INELIGIBLE FOR APPOINTMENT AS
        LEAD PLAINTIFFS AND THEIR PURPORTED ENDORSEMENT OF THE
        DIG'S MOTION IS A LEGAL NULLITY ........................................................... 8

CONCLUSION ..................................................................................................................... 9

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*APA Excelsior III L.P. v. Premiere Techs.*,
476 F.3d 1261 (11th Cir. 2007) ......................................................................................6

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................................6, 8

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ..........................................................................................4

*In re Waste Mgmt., Inc.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ............................................................................3

*James v. City of Dallas, Tex.*,
254 F.3d 551 (5th Cir. 2001) ..........................................................................................3

## Statutes

PSLRA ...................................................................................................................... *passim*

## Rules

Fed. R. Civ. P. 23....................................................................................................... *passim*

Movant de la Cruz[1] respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 11); and (ii) in opposition to the competing motion of the DIG (Dkt. No. 13).

## PRELIMINARY STATEMENT

Two movants seek appointment as Lead Plaintiff and approval of Lead Counsel in the Related Actions: (i) de la Cruz; and (ii) the DIG, ostensibly but in any event meaninglessly endorsed by non-movants Welch and Barnard. As set forth at length in de la Cruz's opposition brief, de la Cruz is the presumptive Lead Plaintiff in this litigation.

***First***, de la Cruz possesses the greatest financial interest in this litigation within the meaning of the PSLRA, having incurred a loss of approximately $856,000 in connection with his Class Period purchases of Waitr securities. The DIG, by contrast, has massively overstated its loss by including over $14.7 million in unrecoverable losses incurred as a result of transactional decisions made well before the alleged fraud commenced.

***Second***, de la Cruz has made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23. The DIG, meanwhile, is atypical and inadequate for a litany of reasons, and thus subject to multiple unique defenses. In brief:

- The DIG's members acquired more than 99% of their shares involuntarily and not on the open market as a result of Waitr's acquisition of Bite Squad, and thus are atypical and subject to a likely fatal non-reliance defense with respect to Section 10(b) claims, while only two of its members have nominal standing to pursue Section 11 claims;

- The DIG's members are additionally atypical and subject to non-reliance defenses because they were likely privy to non-public information regarding the operations of Bite Squad and were accused of committing the same labor law violations alleged against Waitr; and

---

[1] All capitalized terms herein are defined in de la Cruz's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 11-1, 31.

1

- Considering that the DIG's motion is bizarrely endorsed by two non-movants—Welch and Barnard—with no apparent relation to or knowledge of the DIG or one another, and involves a second Louisiana-based firm in an undisclosed capacity, the motion has every indication of being exactly the type of attorney-driven gamesmanship that the PSLRA was enacted to prevent.

As such, the PSLRA precludes the DIG's appointment irrespective of its financial interest in this litigation—which, again, is *de minimis* compared to that of de la Cruz.

The DIG's opposition brief (Dkt. No. 32) addresses literally none of the deficiencies plaguing its motion, and is in fact a self-defeating study in contradictions. It describes the step-by-step statutory lead plaintiff inquiry set forth in the PSLRA, then effectively asserts that its massively overstated loss is the only factor the Court should consider. It repeatedly tells the Court to consider only the sworn statements of the DIG, Welch, and Barnard and to disregard arguments by other movants, even though the glaring omissions and irregularities in these statements actually undermine the DIG's motion. The DIG acknowledges that the circumstances by which it acquired Waitr securities are sufficiently unusual to require a detailed 19-page long explanatory Joint Declaration, then conclusorily and erroneously asserts, without legal analysis, that the DIG's "claims are identical, non-competing, and non-conflicting with the claims of other Class members." Dkt. No. 32 at 9. And it castigates another movant for supposedly engaging in attorney-driven gamesmanship, even as its own pseudo-grouping of DIG, Welch, and Barnard stands out as a particularly egregious example of this precise phenomenon.

By failing to address these myriad defects, the DIG asks the Court to look past them, but the Defendants will not be so accommodating at the class certification state of this action. Rather, the Defendants are certain to raise these issues aggressively in an effort to defeat this class action at the outset. Recognizing the danger to the Class in appointing the DIG as Lead Plaintiff, five concerned class members who previously sought appointment as Lead Plaintiff themselves

(Brigidear, Bu, Thompson, and the Cokers) have taken the extraordinary step of filing submissions urging the Court not to entrust leadership of this litigation to the DIG.  *See* Dkt. Nos. 27, 29-30.

Accordingly, for the reasons set forth herein and in his moving and opposition briefs (Dkt. Nos. 11-1, 31), de la Cruz respectfully requests that the Court grant his motion in its entirety and deny the competing motion of the DIG.

ARGUMENT

I.    DE LA CRUZ IS THE "MOST ADEQUATE PLAINTIFF" WITHIN THE MEANING OF THE PSLRA

A.    De la Cruz has the largest financial interest in the relief sought by the Class

De la Cruz, having incurred a recoverable loss of more than $856,000 in connection with his Class Period purchases of Waitr securities and retaining 140,000 shares of Waitr stock at the end of the Class Period, has the greatest financial interest in this litigation.  *In re Waste Mgmt., Inc.*, 128 F. Supp. 2d 401, 414 (S.D. Tex. 2000) (assessing financial interest in terms of financial losses and net shares purchased (*i.e.*, retained shares)).

No movant has incurred a larger financial interest in this action than de la Cruz.  Although the only competing movant, the DIG, alleges a loss of approximately $14.8 million, as discussed below, this figure is massively overstated and the DIG is in any event ineligible for appointment because it is inadequate and atypical within the meaning of Rule 23 and subject to unique defenses.

B.    De la Cruz satisfies the requirements of Rule 23

As set forth in his moving and opposition briefs (Dkt. Nos. 11-1, 31), in addition to possessing the largest financial interest in the relief sought by the Class, de la Cruz has also made a *prima facie* showing sufficient to satisfy the typicality and adequacy requirements of Rule 23. De la Cruz satisfies the typicality requirement because his claims against the Defendants "have the same essential characteristics of those of the putative class."  *James v. City of Dallas, Tex.*, 254

3

F.3d 551, 571 (5th Cir. 2001).  De la Cruz satisfies the adequacy requirement because his submissions to the Court demonstrate the "zeal and competence of [his] counsel and the willingness and ability of [de la Cruz] to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

\* \* \* \* \*

Possessing the largest financial interest in this litigation and otherwise satisfying the requirement of Rule 23, de la Cruz is the presumptive "most adequate plaintiff" of the class.

## II.   THE PRESUMPTION IN FAVOR OF DE LA CRUZ HAS NOT BEEN AND CANNOT BE REBUTTED

The presumption in favor of de la Cruz's adequacy can only be rebutted by proof that he is somehow atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The DIG, the only competing movant, has not even argued that de la Cruz is atypical or inadequate, let alone adduced proof to that effect.  Accordingly, the presumption in favor of de la Cruz remains unrebutted.

## III.   THE PSLRA MANDATES DENIAL OF THE DIG'S MOTION ON MULTIPLE BASES

### A.   The DIG does not have the largest financial interest in the relief sought by the Class

The DIG has a recoverable loss of only $22,800 in connection with the fraud alleged in this litigation—less than 3% of de la Cruz's $856,073 loss.  Although the DIG alleged a significantly larger loss of nearly $14.8 million, this figure is *massively* inflated because the DIG included losses that are not recoverable in this action because they were not incurred in connection with the alleged fraud.  Specifically, the DIG's members sold their food delivery businesses to Bite Squad in October 2016—some 18 months before the start of the Class Period—and acquired Bite Squad stock as a result.  Those shares converted to Waitr stock following Waitr's acquisition of Bite

Squad in January 2019. The DIG's members had no option to opt out of the conversion or otherwise refuse the Waitr stock transferred to them, and therefore their acquisition of Waitr securities was involuntary. Accordingly, none of those securities could have been acquired in reliance upon the false and/or misleading statements at issue, nor pursuant and/or traceable to the documents associated with the May 2019 Secondary Offering. These losses are therefore not recoverable in this litigation. Excluding these non-recoverable losses, which constitute well over 99% of the DIG's total losses, leaves the group with losses of only $22,800, incurred by Messrs. Brown and Moore, the only two group members to have made any open-market purchases of Waitr stock during the Class Period.

Lacking the largest financial interest in the litigation, the DIG does not satisfy the first of the statutory criteria for appointment as Lead Plaintiff. As such, the PSLRA mandates denial of his motion on this basis alone.

**B.     The DIG is inadequate and atypical within the meaning of Rule 23 and subject to unique defenses**

Even assuming, *arguendo*, that the significant losses claimed by the DIG were actually recoverable in this litigation, and that the DIG thus did possess the largest financial interest in this litigation, the PSLRA would still mandate denial of its motion. While the DIG characterizes its alleged loss as the "defining criterion" in the lead plaintiff appointment process (Dkt. No. 32 at 2), financial interest is merely the starting point in the statutory inquiry. The "most adequate plaintiff" of the class must also satisfy the adequacy and typicality requirements of Rule 23, and cannot be subject to any unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The DIG falls well short on all counts for various reasons.

*First*, the unusual circumstances of the DIG's acquisition of its Waitr stock renders it highly atypical of the Class it seeks to represent and subject to unique defenses. Unlike most Class

members, the DIG acquired more than 99% of its Waitr shares circuitously and involuntarily: The DIG's members sold their companies to Bite Squad in 2016—roughly a year and a half before the start of the Class Period, thereby receiving Bite Squad stock. Then, in January 2019, Waitr in turn acquired Bite Squad, as a result of which acquisition the DIG and other Bite Squad shareholders received Waitr stock. Aside from a few *de minimis* purchases by two of its members, the DIG thus ***did not acquire its shares in reliance*** upon the Company's Class Period statements or those in the various offering documents. Consequently, the Defendants will likely be able to easily rebut the presumption of reliance established by *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), thereby defeating class certification with respect to claims arising under Section 10(b) of the Exchange Act. Nor is the DIG able to establish standing for claims arising under Section 11 of the Securities Act. Two of its four members did not even acquire any Waitr stock pursuant and/or traceable to the Registration Statement and Proxy/Prospectus issued in connection with Waitr's May 2019 Secondary Offering for the simple reason that they did not acquire Waitr stock in the open market during the Class Period. In analogous circumstances, the court in *APA Excelsior III L.P. v. Premiere Techs.*, 476 F.3d 1261 (11th Cir. 2007) affirmed that investors who purchased a company's securities through a private offering prior to the issuance of the relevant registration statement lacked standing to pursue Section 11 claims. *Id.* at 127 ("Plaintiffs . . . by virtue of their binding commitment decision, effectively 'purchased' their Premiere stock months before the registration statement was filed. It follows therefrom that ***they cannot have purchased pursuant to the registration statement***.") (emphasis added). The group's other two members, who acquired only 4,045 shares in total on the open market (compared to the 1.47 million shares the group acquired involuntarily by virtue of the Bite Squad acquisition), at best have only weak standing to pursue Section 11 claims.

6

Stunningly, the DIG's opposition brief makes no effort to address these likely fatal issues or address the foreseeable concerns of other Class members. The DIG clearly acknowledges that the circumstances surrounding its acquisitions of Waitr stock are highly unusual. Indeed, the group considered it necessary to submit a 19-page Joint Declaration simply to explain how it acquired Waitr securities. De la Cruz respectfully submits that truly typical Class members would have no need to provide such a lengthy and detailed explanation. In striking contrast to this detailed factual explanation, the DIG's opposition brief is bereft of any *legal* explanation as to why such unusual acquisitions are not atypical or otherwise problematic. Rather, the DIG simply conclusorily asserts that its "claims are identical, non-competing, and non-conflicting with the claims of the other Class members" and that other "movants cannot carry their burden of *proving* that the Delivery Investor Group is inadequate or atypical." Dkt. No. 32 at 9 (emphasis in original). Tellingly, the DIG cites *no legal authority whatsoever* in support of either of these propositions, despite having had 21 days since its initial motion and a 25-page limit within which to do so.

*Second*, the DIG is further atypical and subject to unique non-reliance defenses due to factual issues specific to the group. The DIG's members were almost certainly made privy to non-public information regarding Bite Squad in the course of selling their companies to Bite Squad. In addition, the DIG's members likely have extensive familiarity with labor law in the food delivery business, having been named defendants in a putative class action alleging FLSA violations. Indeed, given that the DIG's members sold their delivery businesses to Bite Squad, there is the possibility that they in fact committed some of the FLSA violations complained about in the in this Action. Indeed, core allegations against the Defendants in this litigation involve concealment of difficulties arising from Waitr's acquisition of Bite Squad, as well as FLSA violations by Waitr. If discovery reveals that the DIG's members' insider information regarding Bite Squad's

operations and specialized knowledge concerning FLSA in the food delivery business informed their investment decisions regarding Waitr securities (again, assuming *arguendo* that the DIG's members truly made any such decisions), then Defendants will almost certainly be able to sever the link between the alleged misrepresentations and the investment decisions, thereby depriving the Class of the *Basic* presumption of reliance.

*Third*, there is every indication that the DIG's motion is tainted by exactly the type of attorney-driven gamesmanship that the PSLRA was passed to prevent. The DIG is clearly aware of this important statutory purpose, as its opposition brief accuses another movant group (Bu and Thompson, motion since withdrawn) of impermissibly engaging in "unrestricted aggregation of unrelated plaintiffs by manipulating lawyers." Dkt. No. 32 at 11. This description is ironic, as it perfectly applies to the DIG's own motion. There is the unusual configuration of investors—the four members of the DIG, plus non-movants Welch, and Barnard—involved in the DIG's motion. Who is Welch? Who is Barnard? Do they know one another? Do they know the DIG? Are they aware of the DIG's motion? Have they actually endorsed the DIG's motion? Is the DIG aware of Welch and Barnard? Has the purportedly close-knit DIG agreed to serve jointly as Class Representatives with apparent strangers Welch and Barnard? There is also the unexplained involvement of Lundy Law as "Liaison" Counsel. Why does a Louisiana-based firm whose attorneys are admitted to practice in this Judicial District need a Liaison Counsel? What is Lundy Law's actual role in this litigation? That the foregoing questions remain unanswered after two rounds of briefing suggests that the answers would *not* support the DIG's lead plaintiff motion.

## IV.  WELCH AND BARNARD ARE INELIGIBLE FOR APPOINTMENT AS LEAD PLAINTIFFS AND THEIR PURPORTED ENDORSEMENT OF THE DIG'S MOTION IS A LEGAL NULLITY

Finally, de la Cruz reiterates that non-movants Welch and Barnard are ineligible for appointment as Lead Plaintiffs. First, they have not sought appointment as such—rather, they only

8

purport to endorse the DIG's appointment (and as discussed *supra*, it is doubtful whether Welch and Barnard are even aware of the DIG's motion, much less support it). Moreover, the PSLRA provides a detailed process to guide the Court in its selection of a Lead Plaintiff, no provision of which contemplates third-party endorsements. Welch and Barnard's ostensible support, even were it genuine, is thus entirely meaningless. Again, the fact that the DIG has still submitted nothing to clarify the precise nature of Welch and Barnard's involvement in this litigation is striking.

Second, even assuming *arguendo* that the Court were to consider Welch and Barnard as potential Lead Plaintiffs, Welch and Barnard do not satisfy the statutory criteria as they did not make timely motions within 60 days of the notice of pendency of the first-filed of the related actions, as required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Nor are they adequate within the meaning of Rule 23, because their inclusion in the DIG's pseudo-group, apparently without their knowledge, raises serious questions as to their ability to supervise their counsel.

## CONCLUSION

For the foregoing reasons, and for those set forth in his moving and opposition briefs (Dkt. Nos. 11-2, 31), de la Cruz respectfully requests that the Court grant his motion in its entirety and deny the competing motion of the DIG.

Dated: December 27, 2019

Respectfully submitted,

O'BELL LAW FIRM, LLC

/s/ Eric J. O'Bell
Eric J. O'Bell (La. Bar. #26693)
3500 North Hullen Street
Metairie, LA 70002
Telephone: (504) 456-8677
Facsimile: (504) 456-8653
Email: ejo@obelllawfirm.com

*Counsel for Lead Plaintiff Movant*
*Tupac de la Cruz and Proposed*
*Liaison Counsel for the Class*

9

POMERANTZ LLP
Jeremy A. Lieberman
(*admitted pro hac vice*)
J. Alexander Hood II
(*pro hac vice application forthcoming*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice application forthcoming*)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Counsel for Lead Plaintiff Movant*
*Tupac de la Cruz and Proposed*
*Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and forgoing Reply Memorandum was served on all counsel of record via the Court's CM/ECF notification system on December 27, 2019.

/s/ Eric J. O'Bell

10