**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| WALTER WELCH, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br><br> CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, <br><br> Defendants. | Civil Action No. 2:19−CV−01260 <br><br> JUDGE TERRY A. DOUGHTY <br><br> MAGISTRATE JUDGE KATHLEEN KAY <br><br> CLASS ACTION |
| KELLY BATES, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, <br><br> Defendants. | Civil Action No. 2:19−CV−01427 <br><br> JUDGE TERRY A. DOUGHTY <br><br> MAGISTRATE JUDGE KATHLEEN KAY <br><br> CLASS ACTION |

**WALTER WELCH, SEAN BARNARD, AND THE DELIVERY INVESTOR GROUP'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT THE DELIVERY INVESTOR GROUP AS LEAD PLAINTIFF AND APPROVE PROPOSED LEAD <u>PLAINTIFF'S CHOICE OF COUNSEL</u>**

## I.   __INTRODUCTION__[1]

The PSLRA's three-step process demands the appointment of the DIG. It possesses (by far) the largest financial interest and easily satisfies the minimum, *prima facie* adequacy and typicality requirements, such that it is the statutorily-mandated presumptive lead plaintiff. *Infra* §II. And the speculation and arguments that Mr. de la Cruz and his new allies (whose counsel have no doubt been promised work and fees for their loyalty) put forth do not even approach the *proof* of inadequacy or atypicality statutorily required to rebut that presumption. *Infra* §III.[2]

Moreover, Mr. de la Cruz fundamentally misunderstands this action and the Class he seeks to represent. As outlined in the 114-page Complaint that KSF initially filed (and Mr. de la Cruz's counsel copied), the Class is comprised of shareholders who acquired shares: (1) on the open market, when Landcadia was a standalone company; (2) in the *private* acquisition of Old Waitr by Landcadia; (3) in the *private* acquisition of Bite Squad by New Waitr; (4) in Waitr's Secondary Offering; and (5) on the open market, in between these transactions. *See* Dkt. No. 1. Importantly, the shares acquired in the two private transactions constitute ***almost half*** *of **all** outstanding Waitr stock and **three-quarters** of the stock issued during the Class Period.* Supplemental Declaration of Melinda A. Nicholson ("Supp. Nicholson Decl.") ¶¶2-4.

Mr. de la Cruz would abandon these shareholders – ***at least half of the Class*** – just so he and his counsel can lead this litigation. *See* Dkt. No. 31 at 2 (falsely alleging that losses incurred on shares acquired in private transactions "are not recoverable"). His failure to seek to protect the interests of *all* Class members renders him fundamentally unfit to be lead plaintiff. That is not what the Complaint alleges nor how the PSLRA works, and *all* shareholders deserve to recover.

---

[1]    Dkt. references refer to filings in *Welch v. Meaux*, No. 19-01260; capitalized terms have the same meaning as in Movants' prior filings. Dkt. Nos. 13-1 and 32. Unless noted, all emphasis is added and all citations are omitted.
[2]    Three movants filed notices in support of Mr. de la Cruz (the "de la Cruz Group"). Dkt. Nos. 27, 29, and 30. Before arguing against the DIG, Mr. de la Cruz's counsel sought to be co-lead with the DIG, which was rejected.

## II.    THE DIG IS THE PRESUMPTIVE LEAD PLAINTIFF

As outlined in Movants' Opposition, the PSLRA mandates a strict three-step process, consisting of notice (which no movant contests), the determination of the presumptive lead plaintiff, and the consideration of evidence to rebut that presumption. Dkt. No. 32 at 4-9. Notably, to be afforded the initial presumption in favor of being appointed lead plaintiff, a movant need only make a *prima facie*, "not demanding" showing of typicality and adequacy based on the information the movant provided in his pleadings and declarations **only** (and rebuttal evidence from competing movants should specifically not be considered). *Id.*

The DIG easily makes this *prima facie* showing. It indisputably has the largest financial interest; even the de la Cruz Group admits this. *See* Dkt. Nos. 32 at 7-8, 27 at 1, and 30 at 2.[3] And, as previously outlined, the DIG's clams are identical, non-competing, and non-conflicting with the claims of the Class, its interests are aligned with the Class, there is no evidence of any antagonism, and it has retained competent and experienced counsel. *See* Dkt. No. 13-1 at 11-14 and 32 at 8-9. Indeed, in light of the facts that the members of the DIG acquired their shares both in a private transaction (when Bite Squad was acquired by Waitr) **and** on the open market (*see* Dkt. Nos. 13-3–13-8), they represent *at least* 70 million of the 76 million shares of Waitr stock outstanding at the end of the Class Period (leaving only 6 million acquired in the Secondary Offering). *See* Supp. Nicholson Decl. ¶¶2-4. The DIG is thus a quintessentially typical and adequate representative and therefore entitled to the statutory lead plaintiff presumption.[4]

---

[3]    Mr. de la Cruz's allegation that he had the most "retained" shares of any movant (Dkt. No 31 at 1) is verifiably false. *Compare* Dkt. No 13-8 *with* 11-4 at 1. Regardless, retained shares are irrelevant in calculating losses. *Bodri v. GoPro, Inc.*, No. 16-232, 2016 U.S. Dist. LEXIS 57559, at *11 (N.D. Cal. Apr. 28, 2016).

[4]    While Mr. de la Cruz admits that two DIG members may be able to represent the May 16, 2019 Secondary Offering/Section 11 claims (Dkt. No. 31 at 3), he does not appear to have purchased in the Offering (Dkt. No. 11-5 at 3) and does not claim to represent Section 11 claims. Dkt. No. 31 at 12-13. Ultimately, though, this is unimportant, because, as outlined below, a lead plaintiff need not have standing to sue on all claims. *Infra* §III.B.

### III.    THE DE LA CRUZ GROUP CANNOT REBUT THIS PRESUMPTION

With the presumption triggered in favor of the DIG, the Court may now consider any rebuttal "evidence." Dkt. No. 32 at 4-7. To rebut the presumption, a competing movant must adduce "*exacting proof*" that the DIG cannot fairly and adequately protect the Class. *Mullins v. AZZ, Inc.*, 2018 U.S. Dist. LEXIS 222090, at *6 (N.D. Tex. Aug. 9, 2018); *Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004). This is a very high burden, which is not met here.[5]

### A.    When the DIG Acquired Its Stock Is a Verifiable Fact

The de la Cruz Group first argues (without "proof") that the DIG members actually "acquired" their Waitr stock before the Class Period, when they sold their companies to Bite Squad. Dkt. No. 31 at 7-9. This is false. As outlined in their Declarations, the DIG members sold the assets of their companies to Bite Squad and received Bite Squad stock in October 2016. Dkt. No. 13-3 at 2-14. When Bite Squad was acquired on January 17, 2019 – *in the middle of the Class Period* – the members of the DIG received Waitr stock in exchange for their Bite Squad stock. *Id.* No member of the DIG held Waitr stock prior to this time and this is the moment that they "acquired" Waitr stock. *Id.*; Supp. Nicholson Decl., Ex. 3 (DIG Supp. Decl.) ¶5; *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 467 (1969) (shareholders of acquired corporation purchased shares in acquiring corporation for Rule 10b-5 purposes by exchanging their shares pursuant to merger). ***Waitr's own SEC filings confirm this fact.*[6]** Finally, the Class is defined as any shareholder who

---

[5]    *See In re Cendant Corp. Litig.*, 264 F.3d 201, 270 (3rd Cir. 2001) ("Allegations of impropriety are not proof of wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety."); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547 (N.D. Tex. 1997) ("speculative assertions are insufficient to rebut the presumption"); *Murphy v. JBS S.A.*, No. 17-3084, 2017 U.S. Dist. LEXIS 166262, at *14-15 (E.D.N.Y. Oct. 6, 2017) (same).

[6]    *Compare* Supp. Nicholson Decl., Ex. 4 (12/7/18 S-3) at 41-46 (Waitr security holders does not include DIG) *with* Ex. 5 (2/12/19 S-3/A) at 43-48 (updated list made in light of Bite Squad acquisition now lists DIG); *see also id.*, Ex. 1 at F-37 (outlining January 17, 2019 share issuance for Bite Squad acquisition); *id.*, Ex. 6 §§2.4, 3.4(b) (old Bite Squad stock cancelled and converted into right to receive Waitr stock when acquisition closed).

"purchased, acquired and/or ***otherwise held*** the securities of Waitr" during the Class Period, and the DIG indisputably held during the Class Period. Dkt. No. 1 ¶49.[7]

**B.    Private Acquisitions Do Not Defeat the Lead Plaintiff Presumption – <u>Especially Not Where 75% of the Stock Was Acquired in the Same Way</u>**

The de la Cruz Group next argues that the DIG is atypical or inadequate because their acquisition of Waitr common stock as part of a private transaction somehow defeats the presumption of reliance to which they are entitled. Dkt. No. 31 at 7-13. This argument fails.

<u>First</u>, it is well-established that a lead plaintiff is not atypical or subject to unique defenses merely as a result of a private acquisition. For example, in *In re Verisign, Inc. Securities Litigation*, No. 02-2270, 2005 U.S. Dist. LEXIS 10438, at *20-24 (N.D. Cal. Jan. 13, 2005), Defendants argued (just as the de la Cruz Group does) that plaintiffs who had acquired their shares during a merger, rather than on the open market, were atypical. The court rejected this argument for two reasons: (1) the merger-related filings were "issued during the Class Period and contain[ed] the exact same allegedly false and misleading statements as those actionable by the open market purchasers"; and (2) the proposed class consisted of "persons and entities that purchased *or otherwise acquired*" stock and plaintiffs "otherwise acquired" their shares in the merger. *Id.* (emphasis in original); *see also Infra* §III.C. Here, too, the filings regarding the Old Waitr and Bite Squad acquisitions contained the same false and misleading statements as those actionable by open market purchasers. Dkt. No. 1 ¶¶71-196. Moreover, the Class here is even more broadly defined and includes shareholders who "purchased, acquired ***and/or otherwise held*** the securities of Waitr" during the Class Period (*id.* ¶49), which again plainly includes the DIG.

---

[7]    Notably, when Mr. de la Cruz's counsel copied Mr. Welch's complaint, they left the same Class definition. *Compare* Dkt. No. 1 ¶49, *with Bates v. Meaux*, 19-1427, Dkt. No. 1 ¶49.

Second, the DIG did rely, *as a matter of fact*, on Waitr's statements and stock price. To rebut the presumption that the DIG acquired Waitr stock "in reliance on market information," the new de la Cruz Group bears the burden of *proving* that the DIG "actually relied" on non-public info or did not rely at all. *Kalodner v. Michaels Stores*, 172 F.R.D. 200, 209 (N.D. Tex. 1997) (citing *Fine v. Am. Solar King Corp.*, 919 F.2d 290, 298-99 (5th Cir. 1990)); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). But the de la Cruz Group has provided *no proof whatsoever*, only speculation, arguing (without citation) that "Waitrs's public statements did not inform the DIG's investment decisions." Dkt. No. 31 at 11. This speculation is contradicted by the DIG members' sworn declarations, in which they attested under oath and penalty of perjury that:

- When they learned about the pending acquisition of Bite Squad, they researched Waitr, reviewed its statements, and researched and compared its stock price to the merger terms;

- Based on this market research and diligence, they came to believe, based on Waitr's statements, that it was poised for growth and value increase, which was supported by the fact that Waitrs' stock price increased while the acquisition was pending; and

- They chose not to seek to sell their Bite Squad stock and to instead accept Waitr common stock based on what they had learned from Waitr's statements and on its stock price.

Dkt. No. 13-3 (Joint Decl.) ¶5; Supp. Nicholson Decl., Ex. 3 (Supp. Decl.) ¶¶2-3. This evidence is sufficient to dispose of this speculative reliance argument. *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquairie Infrastructure Corp.*, No. 18-3608, 2019 U.S. Dist. LEXIS 14860, at *19 (S.D.N.Y. Jan. 30, 2019) (competing movants' failure to proffer proof that presumptive lead plaintiff relied on something other than public market and information, coupled with declaration to contrary, fatal); *Gluck*, 976 F. Supp. at 547 ("marked difference" between "affirmatively demonstrating" inadequacy and "claiming" movant "might be" subject to future arguments).

Third, it is well-settled that "the lead plaintiff in a securities class action need not have standing to sue on all causes of action raised in the underlying class complaint." *Fishbury, Ltd. v.*

5

*Connetics Corp.*, No. 06-11496, 2006 U.S. Dist. LEXIS 90696, at *12 (S.D.N.Y. Dec. 14, 2006); *see also Averdick v. Hutchinson Tech., Inc.*, No. 05-2095, 2006 U.S. Dist. LEXIS 47445, at *18 (D. Minn. Feb. 9. 2006) (same); *Stein v. Match Grp., Inc.*, No. 16-549, 2016 U.S. Dist. LEXIS 74995, at *21 (N.D. Tex., June 9, 2016) (same). Rather, courts have consistently held that the plaintiff with the largest financial interest must be appointed lead plaintiff and can adequately represent the class, even if it does not possess every claim that the class may have, as long as its claims are based on the same underlying facts and wrongdoing – which they are here. *See, e.g.*, *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("[B]ecause the PSLRA mandates that courts must choose a party who has … the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.").[8]

Fourth, DIG members Brown and Moore *acquired **and sold** Waitr stock and options **on the open market** during the Class Period* independent of and after the Bite Squad acquisition. Dkt. No 13-3 at 4-9. ***As Mr. de la Cruz himself acknowledged, the Basic presumption applies to any "'investor who buys or sells* stock at the price set by the market,'"** thus single-handedly vitiating his reliance argument. Dkt. No. 31 at 11. And just these two members of the DIG have $6.4 million in total losses – 4.5 times the entire de la Cruz Group *combined*. Dkt. No. 13-8 at 2. *See Freudenberg v. E*Trade Fin. Corp.*, No. 07-8538, 2008 U.S. Dist. LEXIS 62767, at *13

---

[8] To the extent they ever arise, issues like this are dealt with at class certification. "If certain class claims cannot be advanced because of standing or class-certification issues, this deficiency can be corrected by the designation of other members of the purported class as named plaintiffs or class representatives." *Fishbury*, 2006 U.S. Dist. LEXIS 90696, at *13; *see also Schueneman v. Arena Pharms., Inc.*, No. 10-1959, 2011 U.S. Dist. LEXIS 87373, at *18 (S.D. Cal. Aug. 8, 2011) ("Being a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims."). Indeed, it is for this reason that Messrs. Welch (who acquired open market Landcadia shares) and Barnard (who acquired stock in the Landcadia acquisition of Old Waitr) moved in conjunction with the DIG and remain willing to serve as class representatives, should the Court deem it necessary. Dkt. No. 13-1 at 2 n.2. The de la Cruz Group's concerns regarding Section 11 standing are thus without merit (and confusing, as Mr. de la Cruz does not have standing to raise Section 11 claims). *Supra* n.4.

(S.D.N.Y. July 16, 2008) (appointment of group as lead plaintiff further supported by fact that single member's losses alone would qualify it as the party with the largest financial interest).

Finally, but perhaps most important, ***reliance is only an element of two of the six claims raised in the Complaint, and almost half of all outstanding Waitr stock and three-quarters of the stock issued during the Class Period was acquired in private acquisitions, the claims for which do not require reliance***.[9] Accordingly, having acquired much of their stock in a private transaction *and* having also acquired *and* sold stock and options in the open market, thereby representing *at least* 70 million of the 76 million shares outstanding, the DIG is the quintessential representative of the putative Class. By contrast, if the new de la Cruz Group's faulty reasoning were to be followed, it would be Mr. de la Cruz who is atypical, as open market buyers make up barely half of the shares outstanding (and even less of the Class), and inadequate, **_as he is willing to abandon all private acquirers, thereby rendering himself inadequate to represent them._**

## C.     The DIG Had No "Inside Knowledge"

Unable to adduce "proof" sufficient to rebut the presumption in favor of the DIG, the new de la Cruz Group next relies on fabricated speculation. For example, they speculate (without proof) that the DIG members must have had "inside knowledge" regarding Bite Squad/Waitr and/or fair labor standards that caused them not to rely on Defendants' public statements.[10] But to rebut the presumption that the DIG acquired Waitr stock "in reliance on market information," they would have to "show[ ] that [the DIG] actually relied on information that was not disclosed

---

[9]     *See* Dkt. No. 1 ¶¶208-51; Dkt. No. 31 at 10-11 (acknowledging reliance limited to §10(b) claims); *In re Plains All Am. Pipeline, L.P.*, 245 F. Supp. 3d 870, 889, 894 (S.D. Tex. 2017) (§§10(b) and 20(a) require reliance; §§11, 12, and 15 do not); *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 230 (5th Cir. 1994) (§14(a) does not). In keeping with their intent to abandon half the Class, the new de la Cruz Group *entirely ignores* the other four claims raised and, in the complaint Mr. de la Cruz's counsel copied, they abandoned the Section 12 and 14(a) claims. *Bates v. Meaux*, 19-1427, Dkt. No. 1 ¶¶207-34.

[10]     *See*, *e.g.*, Dkt. No. 31 at 14 (speculating that DIG "would have" performed due diligence, which "must have" included non-public information, resulting in "high likelihood" that DIG received inside information); *id.* at 16 (speculating that DIG is "well acquainted" with labor standards).

to the market." *Kalodner*, 172 F.R.D. at 209 (N.D. Tex. 1997). This they cannot do.

As the DIG members attested under oath, they possessed no inside information regarding either Bite Squad or Waitr and had no interactions or involvement in Bite Squad's management or its acquisition by Waitr. Dkt. No. 13-3 (Joint Decl.) ¶5; Supp. Nicholson Decl., Ex. 3 (Supp. Decl.) ¶¶2-3. They likewise had no special (much less non-public) knowledge of fair labor standards and certainly never questioned any of Waitr's statements about its labor law compliance based on any such alleged (non-existent) knowledge; rather, they employed a third party compliance company to address such issues, their attorneys dealt with the *Roberson* matter, and they considered that matter a nuisance suit. Supp. Nicholson Decl., Ex. 3 (Supp. Decl.) ¶8.[11] This evidence is again sufficient, on its own, to dispose of the de la Cruz Group's baseless "inside knowledge" argument. *See Macquairie*, 2019 U.S. Dist. LEXIS 14860, at *19 (competing movants' failure to proffer proof that presumptive lead plaintiff received non-public information, coupled with declaration that no such information was communicated, was fatal to his claim); *In re Alcatel Alsthom Secs. Litig.*, MDL No. 1263, 1999 U.S. Dist. LEXIS 24278, at *23 (E.D. Tex. June 7, 1999) (rejecting argument that lead plaintiff was atypical based on speculation that it had acquired inside information); *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 686 (N.D. Ga. 1999) ("Defendants have made no showing that [presumptive lead plaintiff],

---

[11] The *Roberson* matter, which involved independent contractors, was also markedly different from the labor class action against Waitr, which involves employed drivers seeking overtime. The de la Cruz Group's argument that the *Roberson* case renders the DIG inadequate because it "raise[s] questions as to [DIG's] fitness" is likewise baseless. There was not even a finding of wrongdoing in that nuisance suit. Supp. Nicholson Decl., Ex. 3 (Supp. Decl.) ¶8*; Cendant*, 264 F.3d at 270 ("Allegations of impropriety are not proof of wrongdoing."); *Bodri*, 2016 U.S. Dist. LEXIS 57559, at *17-18 (requiring "confirmed examples of dishonesty, such as a criminal conviction for fraud" to challenge lead plaintiff presumption); *Aguayo v. U.S. Bank*, No. 08-2139, 2015 U.S. Dist. LEXIS 193170, at *16 (S.D. Cal. Jan. 15, 2015) (same). Unsurprisingly, the cases cited by Mr. de la Cruz are inapposite, as they involve serious charges and/or convictions of fraud or securities laws violations. *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (plaintiff cited for violating SEC and NASD rules, license suspended); *In re Surebeam Corp. Secs. Litig.*, No. 03-1721, 2003 U.S. Dist. LEXIS 25022, at *21-22 (S.D. Cal. Jan. 5, 2004) (movant subject to sixty complaints to securities regulators, NASD membership terminated); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (movant under investigation for criminal fraud).

8

in acquiring his shares through a private transaction, relied on information not available to the market."); *Hallet v. Li & Fung, Ltd.*, No. 95-8917, 1997 U.S. Dist. LEXIS 15509, at \*7-8 (S.D.N.Y. Oct. 6, 1997) (unique defenses argument "groundless" where plaintiff denied receipt of non-public information and defendants failed to present any contrary evidence).[12]

### D.      The DIG Is Not Lawyer-Driven

Finally, the de la Cruz Group alleges – again without "proof" – that Messrs. Welch and Barnard's support of the DIG's lead plaintiff application means that the DIG is a "lawyer-driven group." Dkt. No. 31 at 16-20. Yet again, this is false, as the DIG attested that they have known each other since at least 2007 and thus are plainly a pre-existing group. Dkt. No. 13-3 ¶2.[13] The support of Messrs. Welch and Barnard – who are *not* seeking to be appointed lead plaintiffs as a group with the DIG – is hardly a mystery: in light of the fact that it is a Louisiana securities firm that filed the initial complaint and issued the statutorily-required notice, KSF was contacted by numerous class members. Ultimately, though, the PSLRA mandates that the person or group with the largest financial interest be appointed lead plaintiff. Although they were both aware that their losses were not the largest, having filed the initial complaint in this matter and having lost more than $2.2 million (more than the de la Cruz Group *combined*), Messrs. Welch and Barnard, respectively, felt strongly about remaining involved, chose to support the DIG (which has the largest financial interest), were well aware of the instant motion, and remain willing to serve now

---

[12]      The cases cited by Mr. de la Cruz are again inapposite. In *In re Firstplus Financial Group, Inc., Securities Litig.*, No. 98-2551, 2002 U.S. Dist. LEXIS 20446, at \*6, \*15-16 (N.D. Tex. Oct. 23, 2002), the proposed representative was a corporate insider, sat on the board of the acquired company for eighteen years, met with the acquirers' agents, participated in due diligence, reviewed financials, oversaw the acquired company's interactions with the acquirer, and continued as a director of the acquirer. Likewise, in *Newby v. Enron Corp. (In re Enron Corp. Securities Litigation)*, 206 F.R.D. 427, 456 (S.D. Tex. 2002), the court disqualified as lead plaintiff an entity whose investment advisor was Enron's largest institutional shareholder and served on the Enron Board during the class period. None of these facts are applicable to *any* DIG member. Supp. Nicholson Decl., Ex. 3 (Supp. Decl.) ¶¶2-3.

[13]      Mr. de la Cruz conversely complains that the DIG's signatures were not overseen *enough* by lawyers. Dkt. No. 31 at 18-19. He cannot have it both ways, and the DIG's signature differences are irrelevant and trivial.

or at the class certification stage *should* the Court feel as though it is necessary (it is not). Supp. Nicholson Decl., Exs. 7-8 (Declarations of Messrs. Welch and Barnard).[14]

The de la Cruz Group also takes umbrage with the fact that the DIG's counsel (KSF) retained a local counsel (Lundy Law Firm). Dkt. No. 31 at 19. But *every other movant* did the same (and for good reason, as all courts have local rules best navigated by experienced local counsel). At any rate, Mr. de la Cruz is apparently unfamiliar with the distance between New Orleans and Lake Charles, and the DIG's decision to retain competent local counsel who can be instantly responsive to the Court (the only Movants to do so – Mr. de la Cruz's "local" counsel is located some three hours from the Court) cannot be held against them.[15]

## IV.   **CONCLUSION**

The DIG is the prototypical and adequate lead plaintiff, and the de la Cruz Group's speculation and arguments are not even close to the "exacting proof" required to rebut the presumption in the DIG's favor. Rather, the de la Cruz Group's apparent willingness to jettison half of the Class is disqualifying. The purpose of the PSLRA is to ensure that the litigant with the greatest financial interest in the litigation directs it. With *17 times* the claimed loss of Mr. de la Cruz and *more than 10 times* the claimed losses of the entire de la Cruz Group *combined*, the DIG is the statutorily-mandated and common-sense choice to direct this litigation.[16]

---

[14] This is, notably, the same position that the remaining members of the new de la Cruz Group have taken in support of Mr. de la Cruz. *See* Dkt. Nos. 29 at 1 (supporting de la Cruz, but willing to serve if needed) and 27 at 3 (same). Messrs. Welch and Barnard also both authorized all relevant filings when they signed their PSLRA certifications – the language of which is mandated by statute. 15 U.S.C. §78u-4(a)(2)(A). And the fact that Mr. Barnard did not affirmatively request to be a lead plaintiff does not disqualify him from being appointed, should the Court deem it best, as the PSLRA provides for the appointment of anyone who moves. 15 U.S.C. §78u-4(a)(3)(A)(i).

[15] To the extent the de la Cruz Group is suggesting (again without proof) that Mr. Lundy is involved because he first represented a Movant, they are again wrong. KSF was individually retained by all three Movants and then retained the Lundy Law Firm as local. Supp. Nicholson Decl., Exs. 3 ¶12, 7 ¶4, and 8 ¶4.

[16] Should the Court have any further questions or concerns, the DIG is ready to address them, and the PSLRA allows (indeed, directs) courts to seek such information. *Cendant*, 264 F.3d at 262, 264 (court should "seek[] further information if it deems the original submissions to be an inadequate basis for an informed decision").

DATED: December 27, 2019

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ Melinda A. Nicholson*
Lewis S. Kahn (23895)
Melinda A. Nicholson (32911) (TA)
Michael J. Palestina (31907)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: Melinda.Nicholson@ksfcounsel.com
Email: Lewis.Kahn@ksfcounsel.com
Email: Michael.Palestina@ksfcounsel.com

*Counsel for the Delivery Investor Group, Walter Welch, and Sean Barnard*

**LUNDY, LUNDY, SOILEAU & SOUTH, LLP**
Matthew E. Lundy (18988)
501 Broad Street
Lake Charles, LA 70601
Telephone: (337) 439-0707
Facsimile: (337) 439-1029
Email: mlundy@lundylawllp.com

*Liaison Counsel*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

_/s/ Melinda A. Nicholson_
Melinda A. Nicholson