UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **WALTER WELCH** | **:** | **CIVIL ACTION NO. 19-1260** |
| **VERSUS** | **:** | **JUDGE DOUGHTY** |
| **CHRISTOPHER MEAUX, ET AL** | **:** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the court are six Motions to Consolidate, Appoint Lead Plaintiff, and Approve Selection of Lead Counsel. Docs. 11, 12, 13, 14, 15, 16. Movers are all investors who suffered losses as a result of transactions involving Waitr Holdings, Inc. ("Waitr") stock during the Class Period defined in the lawsuit. Briefly, the lawsuit alleges that Waitr and its officers and directors violated Sections 11, 12 and 15 of the 1933 Securities Act of 1933 and Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934. Doc. 1.

For the reasons that follow the Motion to Consolidate, Appoint Lead Plaintiff, and Approve Selection of Lead Counsel filed by the Delivery Investor Group ("DIG") [doc. 13] is GRANTED, and all other motions are DENIED.

**I.**
**BACKGROUND**

This lawsuit, *Welch v. Meaux, et al.,* was filed on September 26, 2019, on behalf of shareholders who "purchased, acquired and/or otherwise held the securities of Waitr (the "Class") from **May 17, 2018 to August 8, 2019** (… the "Class Period"), including, but not limited to, those who acquired Waitr shares in connection with the Going Public Transaction, and those who acquired

shares of the company in the May 2019 Secondary Offering." (emphasis original) Doc. 1, p. 20, ¶ 49. On November 4, 2019, a second lawsuit was filed, *Bates v. Meaux, et al.,* No. 2:19-cv-1427 (W.D. La.), on behalf of the same class and covering the same class period. The second lawsuit is nearly identical to the first except that it does not assert claims under Section 12 of the Securities Act of 1933 or Section 14(a) of the Securities Exchange Act of 1934.

After the first lawsuit was filed a notice was published pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i) advising members of the proposed class of their right to move the court to serve as lead plaintiff no later than 60 days from that date, or November 26, 2019. Doc. 13, att. 13, pp. 2-4. On November 26, 2019 the six pending motions were filed by various class members.[1]

All movants and all defendants agree[2] that the *Welch v. Meaux* and *Bates v. Meaux* cases should be consolidated. According to the Private Securities Litigation Reform Act ("PSLRA"), which governs private securities fraud lawsuits, the court must first make the determination of whether the cases should be consolidated before reaching the issues of who is most adequate to serve as lead plaintiff and lead counsel. 15 U.S.C.A. § 78u-4(a)(3)(B)(ii). We will, therefore, address the issue of consolidation first and then turn to the remaining issues.

## II.
### LAW AND ANALYSIS

*A. Motion to Consolidate*

Under Federal Rule 42 (a), consolidation is appropriate when "actions before the court involve a common question of law or fact." District courts have wide discretion in determining whether to consolidate a case pending before it. *Mills v. Beech Aircraft Corp., Inc.,* 886 F.2d 758, 762 (5th

---

[1] An identical motion on behalf of DIG was also filed in the *Bates v. Meaux* case. *See* doc. 6, *Bates v. Meaux, et al.,* No. 2:19-cv-1427 (W.D. La.).
[2] DIG's memorandum indicates that its counsel contacted all counsel for defendants who confirmed that they consent to consolidation. Doc. 32, pp. 5-6, n. 4.

Cir.1989). Courts have found that class action shareholder suits are suited for consolidation in order to coordinate discovery, avoid duplication and minimize expenditures. *See, e.g., Primavera v. Askin,* 173 F.R.D. 115, 129 (S.D.N.Y. June 9, 1997). *See also Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. March 7, 2001)("In securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.")(internal quotations and citations omitted).

Here, these two cases name the same defendants and involve common factual and legal issues. They are each brought by investors who purchased, acquired, or held Waitr shares from May 17, 2018 to August 8, 2019. We find that consolidation would conserve judicial resources and reduce the time and cost of handing the cases separately. Accordingly, we find consolidation should be granted.

### B. *Motion for Lead Plaintiff*

The PSLRA imposes certain requirements and limitations on private class actions alleging securities fraud. Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1806 (3d ed.). The PSLRA was passed to "provide uniform standards for class actions and other suits alleging fraud in the securities market." *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 107 (2nd Cir.2001).

The PSLRA governs the appointment of the lead plaintiff in a securities fraud class action suit. It provides that:

> [T]he court … shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members.

15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

  Six motions for appointment as lead plaintiff were filed in this matter.[3] After the motions were filed three of the movers, perhaps realizing that they did not have the "largest financial interest in the relief sought by the class," filed memoranda wherein they expressed no opposition to de la Cruz's motion to be appointed lead plaintiff. *See* docs. 27, 29, 30. One mover simply conceded that he did not possess the qualifications to be appointed lead plaintiff. *See* doc. 18. Consequently, of the six motions initially filed, only two, de la Cruz and DIG[4], still seek the appointment as lead plaintiff.

  In order to gain the presumption of most adequate or lead plaintiff as defined by the PSLRA and as noted above, a mover must show (1) that their motion in response to the published notice of the suit was timely filed; (2) that it has the largest financial interest in the relief sought by the class; and (3) that it otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)((I).

**(1)** *Timely Filing*

  The motion for appointment as lead plaintiff by any member of the purported class must be made within 60 days after the publication of the notice of suit as required by 15 U.S.C. § 78u-4(a)(3)(A). It is not contested, and we consequently find that both de la Cruz and DIG timely filed their motion and thus meet the first prong of the presumption.

---

[3] Tupac de la Cruz ("de la Cruz") alleges losses of $856,073. Doc. 11, att. 4. Theresa and Harry Coker allege losses of $44,319.37. Doc. 12, att. 5. DIG alleges loses of $14,764,673.56. Doc. 13, att. 8. Barbara Brigidear alleges losses of $400,536.21. Doc. 14, att. 5. Chad Sarver and James Gillard allege losses of $86,423. Doc. 15, att. 5. Jianwen Bu and William Thompson allege losses of $104,979.17. Doc.16, att. 5.

[4] DIG is comprised of four individuals (Andrew Brown, William Moore, Daniel Sinor, and Thomas Colangelo) who were the owners and operators of several food delivery companies. Doc. 13, att. 3, p. 3, ¶ 2. They have known one another personally and professionally and have invested together since 2007. *Id.*

### (2) *Largest Financial Interest*

The PSLRA does not specify how a court should decide which plaintiff has the "largest financial interest" in the relief sought. Courts have looked to (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Buettgen v. Harless,* 263 F.R.D. 378, 380 (N.D.Tex. Nov. 9, 2009)(citing *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 440 (S.D.Tex.2002); *In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998); *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 546 (N.D.Tex.1997). Of these four factors, courts place the greatest emphasis on the financial loss suffered by the plaintiffs. *In re Fuwei Films Sec. Litig.,* 247 F.R.D. 432, 436 (S.D.N.Y Jan. 24, 2008)("This court, like many others, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.")(internal quotations and citations omitted); *In re Bally Total Fitness Sec. Litig.,* 2005 WL 627960, *4 (N.D. Ill. Mar. 15, 2005)("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period."); *Thompson v. The Shaw Group, Inc.,* 2004 WL 2988503, *2 (E.D.La Dec. 14, 2004)("The chief criterion for selection of Lead Plaintiff is the financial interest each plaintiff has in the litigation (*i.e.* loss sustained due to the defendant's alleged fraud).)

Both de la Cruz and DIG claim to have the largest financial interest in the relief sought by the class. If we look at the amount of losses claimed by each mover DIG clearly has the greatest loss. DIG claims a loss of $14,764,673.56 [doc. 13, att. 8.], while de La Cruz's losses are $856,073 [doc. 11, att. 4].

De la Cruz argues, however, that DIG's losses are only $22,800 because it has improperly included losses on shares it acquired as part of an exchange after Waitr acquired a company owned by DIG. De la Cruz maintains that shares that were not acquired on the open market are not

recoverable in this litigation. Doc. 31, p. 8.  In response, DIG points out that while members of DIG did acquire their shares of Waitr on the open market and in a private transaction, the definition of the class includes those who "purchased, acquired and/or otherwise held the securities of Waitr (the "Class") from May 17, 2018 to August 8, 2019." *See* doc. 1, p. 20, ¶ 49.  Thus, DIG concludes that all of its losses are recoverable in the lawsuit.  Doc. 34, p. 3.

We agree with DIG.  The proposed class defined in the complaint includes anyone that acquired Waitr shares during the class period.  It is not limited to only those that purchased shares on the open market.  Accordingly we find that DIG has the largest financial interest in the relief sought by the class and now turn to whether or not it otherwise meets the requirements of Rule 23.

**(3)** *Typicality and Adequacy*

In addition to having the largest financial interest, DIG must also make a showing of typicality and adequacy under Federal Rule of Civil Procedure 23(a) in order to be entitled to a presumption that it is the most adequate plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)((1)(cc).  At this stage of the proceedings, we only consider "briefly the adequacy and typicality of the proposed lead plaintiffs, as all the requirements of Rule 23 will be examined in greater detail at the class certification hearing." *Holley v. Kitty Hawk, Inc.,* 200 F.D.R. 275, 281 (N.D. Tex. March 6, 2001).

Under Rule 23(a)(3) typicality is whether the named plaintiff's claims have the same essential characteristics as those of the other class members; they arise from the same event or course of conduct and are based on the same legal theory.  *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir.2002) (citing *James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir.2001)).  Factual differences will not defeat typicality as there is no requirement the claims be identical.  *Stirman,* 280 F.3d at 562.  The "adequacy" requirement under Rule 23(a)(4) is met by "(1) the absence of potential conflict between the named plaintiffs and other class members and (2) the class representatives' choice of counsel []

is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Universal Access, Inc.,* 209 F.R.D. 379, 386 (E.D. Tex. Aug. 8, 2002).

We find that the typicality requirement is met here because DIG's claims are nearly identical to all other members of the class. Briefly, it alleges that it acquired Waitr shares during the class period in reliance on false or misleading statements issued by Waitr and suffered damages as a result. *See generally* doc. 1. We cannot point to any differences among the class members that would substantially alter the proof required for DIG's claims versus other members. Thus, for the purpose of appointing a lead plaintiff, the claims of the DIG are typical of those of the purported class members.

We likewise conclude that DIG meets the adequacy requirements. Each member of DIG has a substantial sum at stake and there is no evidence of potential conflicts between it and other class members. Moreover, DIG has demonstrated its commitment to protect the interest of the class by agreeing to "work together to provide fair and adequate representation and obtain the largest recovery for the class." Doc. 13, att. 3, p. 16, ¶ 15. DIG has also shown that its members are willing and able to monitor and control the progress of this litigation and act as fiduciaries to prosecute the "action on behalf of, not only it members, but the many other investors whose interests are at stake." *Id.* at ¶ 17.

Further upon review of the resumes submitted by the law firms of Kahn, Swick & Foti, L.L.C. and Lundy, Lundy, Soileau & South, L.L.P. we find that DIG has chosen competent counsel. Doc. 13, atts. 14, 15. Thus, for the purpose of appointing a lead plaintiff, the proposed lead plaintiff group DIG is an adequate representative of the class.

Accordingly, we find that DIG satisfies all requirements under the PSLRA and find that it is entitled to the presumption that it is the most adequate plaintiff.

*C. Rebuttal Evidence*

Once the presumption of most adequate plaintiff is triggered, we must consider any rebuttal evidence presented by any other member of the class. Here, de la Cruz advances several arguments to suggest that DIG is atypical and inadequate to be the lead plaintiff. Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), the presumption of most adequate plaintiff can by rebutted by "proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –"

    (aa)  will not fairly and adequately protect the interests of the class; or

    (bb)  is subject to unique defenses that render such a plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)((II). In order to rebut the presumption, de la Cruz must adduce "exacting proof" and "[c]onclusory assertions and mere speculation will not suffice." *Mullins v. AZZ, Inc.*, 2018 WL 7504312, at *2 (N.D. Tex. Aug. 9, 2018)(citing *Murphy v. JBS S.A.*, 2017 WL 4480751, *4 (E.D.N.Y. Oct. 6, 2017)).

First, de la Cruz alleges that DIG received their shares of Waitr as a result of a transaction that occurred before the start of the class period (May 17, 2018 to August 8, 2019) defined in the lawsuit. Doc. 31, pp. 14-16. He maintains that DIG actually "acquired" their Waitr stock in October of 2016 when DIG members sold their food delivery companies to Bite Squad. According to de la Cruz, when Bite Squad was acquired by Waitr on January 17, 2019, DIG, through no involvement or activity on the part of its members, involuntarily received Waitr stock. Thus, he maintains that DIG does not meet the typicality requirement of Rule 23 because its claims are not the same as the other potential members.

In response, DIG submitted an affidavit of its members who attest to the fact that none of its members owned any Waitr stock until Waitr acquired Bite Squad on January 17, 2019. Doc. 34, att. 4, p. 4, ¶ 5. DIG members learned of the Bite Squad acquisition through a press release on December

12, 2018. *Id.* Upon learning this information, DIG members researched Waitr and relied upon Waitr's public filings and the integrity of its stock price and made a decision to accept Waitr stock in exchange for their shares of Bite Squad stock. *Id.* According to their affidavit, when they learned of the Waitr acquisition, DIG members could have either sold their Bite Squad stock or accepted Waitr stock and, based on the information they had learned about Waitr through their research, decided to accept the Waitr stock which they received when the acquisition closed on January 17, 2019.

Based on the information provided by DIG, we find that de la Cruz's assertion is without merit. DIG acquired Waitr stock on January 17, 2019 – in the middle of the class period.

Next, de la Cruz argues that DIG did not rely on Waitr's material misrepresentations or omissions, a requirement of Section 10(b) of the Exchange Act, in the acquisition of its stock. Doc. 31, pp. 16-18. De la Cruz asserts that DIG "involuntarily" received Waitr stock without any reliance on any publicly available sources. This, according to de la Cruz, subjects DIG to a unique defense which makes it incapable of adequately representing the class. Again, an affidavit submitted by DIG members invalidates this assertion. According to DIG members, "we made our investment decisions [to acquire Waitr stock] based on what we believed to be the truthfulness of Waitr's representations in its SEC filings and the integrity of the price of Waitr stock as traded on the NASCAQ market system as reflecting all available material information regarding the status of Waitr's business." Doc. 13, att. 3, p. 4, ¶ 5. De la Cruz does not rebut this assertion and we find his argument without merit.

De la Cruz also asserts that DIG is subject to a unique defense because it does not have standing to pursue the Section 11 Securities Act claims against Waitr because they did not acquire any shares of Waitr stock "pursuant or traceable to the Registration Statement and Proxy/Prospectus issued in connection with the Company's May 2019 Secondary Offering." Doc. 31, p. 18. He maintains that since the majority of DIG members' stock was issued in a private transaction rather

than on the open market DIG lacks standing to pursue the Section 11 claims of the class. In response, DIG points out that it is well settled that "the lead plaintiff in a securities class action need not have standing to sue on all causes of action raised in the underlying class complaint." *Fishbury, Ltd. V. Connetics Corp,* 2006 WL 3711566, * 4 (S.D. N.Y. Dec. 14, 2006); *Hevesi v. Citigroup Inc.,* 366 F.3d 70, 82 (2d Cir.2004)("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.... [I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."). Moreover, DIG notes, and de la Cruz concedes, that two members of DIG, Brown and Moore, acquired and sold Waitr stock on the open market during the class period independent of and after the Bite Squad acquisition. Doc. 13, att. 3, pp. 6-10. Based on the law cited and the fact that DIG members did purchase stock on the open market, we find that de la Cruz's assertion is meritless.

Another allegation de la Cruz makes against DIG is that its members possessed non-public or inside information regarding Bite Squad's business operations and Waitr's subsequent acquisition and integration of the operations of Bite Squad. Doc. 31, pp. 20-21. De la Cruz suggests that since the main allegation in this lawsuit is that Waitr concealed from or misrepresented to the investing public material information, DIG members would be atypical to the class who did not possess any such inside information and again subject to a non-reliance defense. We find this allegation unsupported. DIG members attested under oath that "[i]n connection with the January 17, 2019 acquisition of Bite Squad by Waitr, the undersigned were **not** involved in negotiating the transaction and were **not** provided with any non-public information related to the business of Waitr or the acquisition of Bite Squad by Waitr."(emphasis original). Doc. 13, att. 3, p. 4 ¶ 5. De la Cruz does not provide any evidence to rebut this declaration.

In a somewhat related argument de la Cruz asserts that DIG members were named defendants in a lawsuit filed by a driver of one of their companies which alleged violations of the Fair Labor Standards Act, a lawsuit similar to one filed against Waitr by its drivers. Doc. 31, pp. 21-22. He maintains that "[u]nlike the majority of the Class members, the members of the DIG are thus well acquainted with labor standards in, and the application of the FLSA to, the food-delivery industry." *Id.* at 22. Since DIG members are well acquainted with the FLSA, de la Cruz maintains that they were less likely to have relied on Waitr's misrepresentations. Again, we find this allegation unsupported and refuted by an affidavit filed by DIG members wherein they attest to the fact that they have no "special (much less non-public) knowledge of labor standards." Doc. 34, att. 4, pp. 5, ¶ 8. DIG members state that in connection with the lawsuit, "our counsel dealt with the matter and, as lay people, we developed no special/non-public information as a result of that process." *Id.*

Finally, de la Cruz alleges that the DIG group should not be appointed lead plaintiff because it was assembled by counsel in contravention of the PSLRA's goals. Doc. 31, pp. 22-23. He points out that the PSLRA was passed to curb attorney-driven litigation and "to empower investors so that they, not their lawyers, control private securities litigation by allowing the court to ensure the transfer of primary control of private securities litigation from lawyers to investors." *Netsky v. Capstead Mortg. Corp.,* 2000 WL 964935, *6 (N.D. Tex. July 12, 2000). De la Cruz alleges that DIG's attorneys, not DIG, "orchestrated the pseudo-group's motion and odd configuration of investors." Doc. 31, p. 23.

In response DIG denies that it is a lawyer-driven group. In their affidavit DIG members testify that they "have known one another personally and professionally since at least 2007 and thus well before this case started. We contacted and retained our counsel, [Kahn, Swick & Foti, LLC ], after they filed the initial suit in this matter and we learned of the lawsuit." Doc. 34, att. 4, p. 6, ¶ 10.

Where the motion for appointment seeks to appoint more than one lead plaintiff, "that group must be restricted to a few cohesive parties and the movant must bear the burden of demonstrating that the group not only has the largest interest in the outcome of the litigation, but also a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. Feb. 15, 2002)(citing *In Re Waste Management, Inc. Sec. Litig.*, 128 F. Supp.2d 401, 412–13 (S.D. Tex. May 8, 2000)). *See also In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D.Ohio Aug. 25, 1999)("[T]he context and structure of the PSLRA evince an intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common *other than* the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys."). Here, we find that a pre-litigation relationship existed between DIG members, as the unrefuted affidavit explains, the members "invested together [] and operated food delivery businesses together for almost a decade." Doc. 13, att. 3, p. 3, ¶ 2. Thus, we find that this argument by de la Cruz also lacks merit.

De la Cruz has failed to rebut the presumption that DIG is the most adequate plaintiff; his assertions against DIG are conclusory and unsupported by any "exacting proof" and are wholly refuted by DIG testimony. Accordingly, we grant DIG's motion to be appointed lead plaintiff in this litigation and now turn to the last issue before the court, selection of lead counsel.

### D. *Lead Counsel*

Pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v), a lead plaintiff shall, subject to court approval, "select and retain counsel to represent the class." The court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." *In re Waste Management, Inc. Sec. Litig.,* 128 F. Supp.2d 401, 411 (S.D. Tex. May 8, 2000)(citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa)).

DIG has selected the law firm of Kahn, Swick & Foti, L.L.C. to serve as lead counsel and Lundy, Lundy, Soileau & South, L.L.P. as liaison counsel for the class. Doc. 13, att. 3, p. 17, ¶18. No other mover has made a showing that DIG's proposed counsel will be unable or unwilling to protect the interests of the class. Based on the firm resume submitted by Kahn, Swick & Foti [doc. 13, att. 14] the court finds that DIG's choice of lead counsel have substantial experience in the prosecution of class actions and, more specifically, PSLRA class actions, have the resources necessary to efficiently conduct this litigation, and are adequate representatives of this proposed class. The court also finds, based on the firm resume submitted by Lundy, Lundy, Soileau & South [doc. 13, att. 15] that their choice of liaison counsel is well-qualified to act as local counsel in this case in this court. Therefore, we will not disturb DIG's selection of counsel.

### III.
#### CONCLUSION

For the foregoing reasons, the court finds that DIG's motion [doc. 13] should be **GRANTED** and all other motions [docs. 11, 12, 14, 15, 16] should be **DENIED**. Accordingly, the Court **ORDERS** the following:

1. The cases styled *Welch v. Meaux, et al,* No. 19-cv-1260 and *Bates v. Meaux, et al,* No. 19-cv-1427 are hereby consolidated for all purposes with all pleadings to be filed under and all proceedings to go forward under docket number 19-cv-1260, *Welch v. Meaux, et al*. The court also notes that pursuant to the PSLRA, the court has consolidated these cases prior to appointment of any person(s) as lead plaintiff;

2. The Delivery Investment Group is hereby appointed lead plaintiff in this matter; and

3. Kahn, Swick & Foti, L.L.C. is hereby appointed and approved as lead counsel and Lundy, Lundy, Soileau & South, L.L.P. is appointed and approved as liaison counsel.

THUS DONE AND SIGNED in Chambers this 17th day of August, 2020.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE