# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | |
|---|---|
| WALTER WELCH, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. 2:19-cv-01260-TAD-KK <br><br> JUDGE: Terry A. Doughty <br><br> MAGISTRATE JUDGE: Kathleen Kay |

## MEMORANDUM IN SUPPORT OF DEFENDANTS CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, AND WAITR HOLDINGS, INC. F/K/A LANDCADIA HOLDINGS, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................4

    I.     WAITR AND ITS BUSINESS MODEL............................................................4

    II.    LANDCADIA AND ITS ACQUISITION OF WAITR .......................................4

    III.   WAITR'S POST-MERGER OPERATIONS ......................................................5

    IV.   WAITR'S SECONDARY OFFERING AND SUBSEQUENT EVENTS.............6

    V.    PLAINTIFFS COMMENCE THIS LITIGATION ...............................................7

LEGAL STANDARD..........................................................................................................8

ARGUMENT......................................................................................................................8

    I.     PLAINTIFFS' SECTION 10(B) AND RULE 10B-5 CLAIM (Count II) FAILS BECAUSE THE COMPLAINT DOES NOT PLEAD FALSITY OR SCIENTER WITH PARTICULARITY............................................................9

        A.    Plaintiffs Fail to Plead Any Actionable Material Misstatement or Omission. .......................................................................................9

            1.    Plaintiffs Have Not Identified Any False Statement or Material Omission..........................................................................10

            2.    Expressions of Forward-Looking Projections Are Not Actionable. ......................................................................................12

            3.    Statements of Corporate Optimism and Puffery Are Not Actionable. ......................................................................................13

        B.    Plaintiffs Fail To Plead Scienter with Respect to Each Section 10(b) Defendant. ..........................................................................15

    II.    PLAINTIFFS' SECTION 20(A) CLAIM (COUNT III) ALSO FAILS................19

    III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 14(A) (COUNT I)...................................................................................................19

        A.    The Amended Complaint Fails To Adequately Allege Any False or Misleading Statements Contained in Solicitation Materials.....................20

            1.    Plaintiffs Fail Adequately To Allege Falsity. ...............................21

2.  Forward-Looking Statements and Puffery Are Not Actionable. ................................................................22

3.  Cautionary Language Warned of the Very Risks that Befell Waitr. ............................................................23

B.  Plaintiffs Fail To Plead the Requisite State of Mind. ...............................24

1.  Scienter is Required to Plead a Viable Section 14(a) Claim. ........24

2.  Even if Scienter Is Not Required, Plaintiffs Fail To Plead Negligence. .................................................................26

C.  Investors Who Did Not Hold Landcadia Shares at the Time of the Waitr Acquisition Vote Have No Standing To Bring a Section 14(a) Claim. ....................................................................29

CONCLUSION....................................................................................................30

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
38 F.3d 211 (5th Cir. 1994) ...........................................................................................30

*ABC Arbitrage v. Tchuruk*,
291 F.3d 336 (5th Cir. 2002) .......................................................................................8, 9

*Adams v. Standard Knitting Mills, Inc.*,
623 F.2d 422 (6th Cir. 1980), *cert. denied*, 449 U.S. 1067 (1980)..............................25, 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................27

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010)..........................................................................20, 27

*Beck v. Dobrowski*,
559 F.3d 680 (7th Cir. 2009) ..........................................................................................25

*Bond Opportunity Fund v. Unilab Corp.*,
No. 99-CV-11074, 2003 U.S. Dist. LEXIS 7838 (S.D.N.Y. May 9, 2003),
*aff'd*, 87 F. App'x 772 (2d Cir. 2004)..........................................................................20, 28

*Burt v. Maasberg*,
No. ELH-12-0464, 2013 U.S. Dist. LEXIS 46732 (D. Md. Mar. 31, 2013) .........................20

*In re Capstead Mortg. Corp. Sec. Litig.*,
258 F. Supp. 2d 533 (N.D. Tex. 2003) ........................................................................10, 13

*Chiaretti v. Orthodontic Ctrs. Of Am., Inc.*,
No. 03-1027, 2004 U.S. Dist. LEXIS 33913 (E.D. La. Apr. 6, 2004)..................................16

*Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*,
480 F.2d 341 (2d Cir. 1973), *cert. denied*, 414 U.S. 910 (1973)........................................26

*Coates v. Heartland Wireless Communications, Inc.*,
55 F. Supp. 2d 628 (N.D. Tex. 1999) ..............................................................................18

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
504 F. Supp. 2d 151 (N.D. Tex. 2007) ............................................................................12

*In re Dell Inc., Secs. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008)..............................................................................16

iii

*In re Digital Island Sec. Litig.*,
  357 F.3d 322 (3d Cir. 2004)...........................................................................................26

*Eizenga v. Stewart Enters.*,
  124 F. Supp. 2d 967 (E.D. La. 2000) ............................................................................18

*In re Enron Corp. Sec.*,
  235 F. Supp. 2d 549 (S.D. Tex. 2002) ..........................................................................19

*In re Exxon Mobil Corp. Securities Litigation*,
  500 F.3d 189 (3d Cir. 2007)..........................................................................................25

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
  53 F. Supp. 3d 882 (E.D. La. 2014)..............................................................................23

*In re Fossil, Inc.*,
  713 F. Supp. 2d 644 (N.D. Tex. 2010) ..........................................................................20

*Gerstle v. Gamble-Skogmo, Inc.*,
  478 F.2d 1281 (2d Cir. 1973)........................................................................................25

*Glazer Capital Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ........................................................................................18

*Gould v. Am. Haw. Steamship Co.*,
  351 F. Supp. 853 (D. Del. 1972)...................................................................................29

*Guidry v. Bank of LaPlace*,
  954 F.2d 278 (5th Cir. 1992) ..........................................................................................8

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ........................................................................................22

*Hohenstein v. Behringer Harvard Reit I, Inc.*,
  No. 3:12-CV-3772-G, 2014 U.S. Dist. LEXIS 40759 (N.D. Tex. Mar. 27,
  2014) ....................................................................................................................20, 21, 22

*Hollywood Casino Corp. v. Simmons*,
  No. 3:02-CV-0325-M, 2002 U.S. Dist. LEXIS 13182 (N.D. Tex. July 18,
  2002) ..............................................................................................................................20

*Hulliung v. Bolen*,
  548 F. Supp. 2d 336 (N.D. Tex. 2008) ..........................................................................20

*Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ........................................................................................19

iv

*Krieger v. Atheros Commc'ns, Inc.*,
   No. 11-CV-00640-LHK, 2012 U.S. Dist. LEXIS 74214 (N.D. Cal. May 29,
   2012) ...........................................................................................................................29

*Little Gem Life Skis., LLC v. Orphan Med., Inc.*,
   537 F.3d 913 (8th Cir. 2008) .....................................................................................29

*Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*,
   No. 4:13-CV-2393, 2015 U.S. Dist. LEXIS 31468 (S.D. Tex. Mar. 13, 2015).......................12

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).............................................................................................9, 10

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .....................................................................20

*Microcapital Fund LP v. Conn's Inc.*,
   No. 4:18-CV-1020, 2019 U.S. Dist. LEXIS 127748 (S.D. Tex. July 24, 2019).......................14

*Millcreek Assocs., L.P. v. Bear, Stearns & Co.*,
   205 F. Supp. 2d 664 (W.D. Tex. 2002)........................................................................12

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970).........................................................................................19, 20

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) .....................................................................................15

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) .....................................................................................18

*Newby v. Lay (In re Enron Corp. Sec., Derivative & ERISA Litig.)*,
   258 F. Supp. 2d 576 (S.D. Tex. 2003) ........................................................................10

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
   No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270 (N.D. Cal. Oct. 16,
   2018), *aff'd*, 806 F. App'x 603 (9th Cir. 2020) ..................................................................27

*Patel v. Holiday Hosp. Franchising, Inc.*,
   172 F. Supp. 2d 821 (N.D. Tex. 2001) ..........................................................................8

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
   777 F. App'x 726 (5th Cir. 2019) ...............................................................................23

*Ret. Sys. of Haw. v. Whole Foods Mkt., Inc.*,
   905 F.3d 892 (5th Cir. 2018) .....................................................................................14

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ..................................................................................................14, 17

*Rosenzweig v. Azurix Corp. (In re Azurix Corp. Sec. Litig.)*,
    198 F. Supp. 2d 862 (S.D. Tex. 2002) ....................................................................................13, 17

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) ...........................................................................................................24

*Salit v. Stanley Works*,
    802 F. Supp. 728 (D. Conn. 1992) .................................................................................................29

*SEC v. Ginsburg*,
    362 F.3d 1292 (11th Cir. 2004) .....................................................................................................26

*SEC v. Shanahan*,
    646 F.3d 536 (8th Cir. 2011) .........................................................................................................29

*Shidler v. All American Life & Financial Corp.*,
    775 F.2d 917 (8th Cir. 1985) .........................................................................................................25

*Shushany v. Allwaste, Inc.*,
    992 F.2d 517 (5th Cir. 1993) .........................................................................................................12

*Smallwood v. Pearl Brewing Co.*,
    489 F.2d 579 (5th Cir. 1974) ...................................................................................................25, 26

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
    365 F.3d 353 (5th Cir. 2004) ................................................................................................ *passim*

*Tarica v. McDermott Int'l*,
    No. 99-3831, 2000 U.S. Dist. LEXIS 14144 (E.D. La. Sep. 19, 2000) .....................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................................................................15

*Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*,
    273 F. Supp. 3d 650 (N.D. Tex. 2017) ..........................................................................................14

*TSC Industries, Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976).......................................................................................................................25

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ...................................................................................................15, 18

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991).................................................................................................................21, 25

vi

*United States ex rel. Williams v. Bell Helicopter Textron Inc.*,
417 F.3d 450 (5th Cir. 2005) ..................................................................................................8

*Williams v. WMX Technologies, Inc.*,
112 F.3d 175 (5th Cir. 1997), *cert. denied* 522 U.S. 966 (1997).........................................8

**Statutes**

15 U.S.C. § 78u-4(b)(2) ........................................................................................................20

15 U.S.C. § 78u-5(i)(1) .........................................................................................................12

15 U.S.C. § 78u-5(c)(1) .........................................................................................................12

Private Securities Litigation Reform Act......................................................................... *passim*

Securities Exchange Act of 1934 .......................................................................................7, 8, 9

Securities Exchange Act of 1934 § 10(b) ......................................................................... *passim*

Securities Exchange Act of 1934 § 14(a) .......................................................................... *passim*

Securities Exchange Act of 1934 § 14(e) .........................................................................25, 26

Securities Exchange Act of 1934 § 20(a) .........................................................................1, 3, 19

**Other Authorities**

17 C.F.R. § 240.10b-5............................................................................................... *passim*

Federal Rule of Civil Procedure 9(b)............................................................................... *passim*

Federal Rules of Civil Procedure Rule 8(b).........................................................................27

**INTRODUCTION**

This is precisely the sort of litigation the Private Securities Litigation Reform Act ("PSLRA") was designed to eliminate:  Plaintiffs are disappointed investors in Waitr Holdings, Inc. ("Waitr" or the "Company"), a competitor in the online food delivery industry, who base their federal securities law claims on nothing more than the Company falling short of optimistic visions of success.  Whether they were among the original investors in Landcadia Holdings, Inc. ("Landcadia")—a special purpose acquisition company ("SPAC") formed to search for emerging companies to acquire—or whether they purchased Waitr stock in the public market after the SPAC acquired Waitr, Plaintiffs knowingly invested in a start-up company with all the attendant challenges such companies face.  That the founders, officers, and backers of the Company were enthusiastic about Waitr's prospects—having chosen to invest their own capital in it—is neither surprising nor a violation of federal securities laws.

The Amended Complaint essentially combines two separate cases, largely concerning two separate groups of investors, under one caption:  (1) claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") brought by one set of Plaintiffs against Waitr, its founders, and Mr. Fertitta (collectively, the "Section 10(b) Defendants"); and (2) claims brought by a different set of Plaintiffs under Section 14(a) of the Exchange Act against Waitr, its founders, Mr. Fertitta, Richard Handler (a director of Landcadia), Jefferies LLC (or "JLLC," an advisor to Landcadia) and Jefferies Financial Group, Inc. (or "JFG," an original investor in and sponsor of Landcadia) (collectively, the "Section 14(a) Defendants"). Both sets of claims fail for multiple, independent reasons.

Most significantly, Plaintiffs utterly fail to allege any actionable misrepresentation or omission in support of *any* of their claims.  This requires dismissal of the whole case, and the Court therefore need not even consider the numerous other specific pleading deficiencies with

1

respect to each distinct claim.  Despite its nearly one-hundred pages of repetitive, conclusory, and vague statements about the Company's performance, the Amended Complaint makes no particularized allegations of fact supporting Plaintiffs' claims that the purported misstatements were false when made, much less that any opinions offered were not truly held.  Plaintiffs also assert claims based on expressions of corporate optimism and sales puffery, but Fifth Circuit law is clear that generalized positive statements do not constitute material, actionable misrepresentations under the federal securities laws.  In other words, the Amended Complaint is long on unsupported legal conclusions but short on pleading facts that establish any actionable misrepresentation or omission.

Plaintiffs' Section 10(b) claim fails for the additional reason that Federal Rule of Civil Procedure 9(b) and the PSLRA both require far more particularization of an alleged fraud than the Amended Complaint provides.  To plead a 10(b) claim, the Amended Complaint must allege specific facts showing that challenged statements were false and misleading *when they were made*.  The Amended Complaint fails to do so.

The Court should also dismiss the Section 10(b) claim for yet another reason:  it fails to meet the PSLRA's scienter pleading requirement.  First, Plaintiffs' impermissibly attempt to "group plead" scienter, attributing purported knowledge or involvement to the Section 10(b) Defendants as a whole without specifically alleging each *individual's* basis for knowledge or intent.  Moreover, Plaintiffs' sparse allegations do not support any inference—let alone the requisite *strong* inference—that, in making the purportedly misleading statements, any Defendant acted recklessly or with intent to defraud investors.  Courts have made clear that the PSLRA's scienter requirement is not met by merely alleging—as Plaintiffs do—that Defendants were officers and directors who controlled Waitr's operations and therefore must have acted with

scienter because the Company failed to perform as expected.  Indeed, the far more cogent reading of the situation—and the truth—is that Section 10(b) Defendants believed what they said about Waitr's prospects, used their best efforts to achieve success, and accurately disclosed material facts regarding the specifics of the Company's financial performance (even in the face of roadblocks, such as lawsuits filed against the Company), but their business efforts simply fell short in the face of serious competition.

Plaintiffs' Section 20(a) "control person" claim fails for all the same reasons, because control person liability cannot exist where the controlled entity itself (*i.e.*, Waitr) is not liable.  In addition, the Section 20(a) claim fails because the Amended Complaint lacks the individualized and non-conclusory allegations of control required to adequately plead such a claim in the first place.

Plaintiffs' Section 14(a) claim fails for four independent reasons.  *First*, Plaintiffs fail to allege any actionable misstatement or omission in connection with a proxy solicitation, instead pointing to non-actionable statements of opinion that Plaintiffs do not and cannot allege were not truly held by the speakers, expressions of corporate optimism, and forward-looking statements accompanied by cautionary language.  *Second*, although Plaintiffs purport to disavow any allegation of scienter with respect to their Section 14(a) claims, Defendants respectfully submit that the Court should follow the Sixth Circuit (given the absence of Fifth Circuit authority) and dismiss Count I for Plaintiffs' acknowledged failure to plead scienter.  *Third*, even if the Court finds that negligence is the requisite state of mind under Section 14(a), Plaintiffs still fail to plead any facts—much less the particularized facts required by the PSLRA—sufficient to show that each specific Defendant acted negligently or even owed a duty with respect to any specific alleged misstatement.  *Fourth*, and finally, to the extent Plaintiffs purport to assert Section 14(a)

3

claims on behalf of Landcadia shareholders who did not hold shares at the time of the vote on the Waitr acquisition, those claims must be dismissed for lack of standing.

## BACKGROUND

### I.    WAITR AND ITS BUSINESS MODEL

Mr. Meaux founded Waitr as an online and mobile-based food ordering and delivery platform in 2015, with the application debuting in Lafayette, Louisiana in mid-2015. AC ¶¶ 15-16, 82-83. Waitr was different from other food-delivery applications in several key respects: it focused on under-served markets with smaller population bases (*id.* ¶ 81), incentivized smaller businesses to use its services by offering a lower "take rate" of 15%, as opposed to the 20-30% charged by competitors (*id.* ¶ 100),[1] and made its delivery drivers W-2 employees, as opposed to independent contractors (*id.* ¶¶ 31, 114). The Waitr application scaled slowly throughout 2016, but experienced significant growth—a 390% increase in orders—in 2017. *Id.* ¶¶ 16, 83. Waitr's sales were likewise projected to double in 2018. *Id.*

### II.    LANDCADIA AND ITS ACQUISITION OF WAITR

Landcadia was founded as a SPAC and raised approximately $250 million through its initial public offering in 2016 to acquire a yet-to-be-identified company. AC ¶¶ 17, 84. Mr. Fertitta and Mr. Handler served as co-chairmen of the Landcadia board of directors. *Id.* ¶¶ 10-11, 80. JFG, along with Fertitta Entertainment, Inc. (which is not a defendant), were initial investors in and sponsors of Landcadia. Declaration of James Langdon (attached hereto as Exhibit A), Ex. 1 ("Proxy Statement") at F-5. Landcadia's purpose was to effectuate an acquisition or similar business combination by June 1, 2018, with a disclosed intention of

---

[1]    A "take rate" is the percentage of an order retained by food-delivery applications.

4

focusing on opportunities in the dining, hospitality, entertainment, and gaming industries. Amended Complaint ("AC") ¶¶ 17-18, 84-85.

On May 17, 2018, Landcadia announced its agreement, subject to holder approval, to acquire Waitr for $308 million. *Id.* ¶¶ 19, 29, 86.  JLLC acted as a financial and capital markets advisor in connection with the acquisition, providing limited advisory services to Landcadia related to the acquisition. *See id.* ¶¶ 53, 107, 158, 175; Proxy Statement at 120.  Following this announcement, Landcadia filed a proxy statement seeking approval of the acquisition from Landcadia shareholders and made a series of related disclosures about Waitr. *See* Proxy Statement at 159-219.  The Landcadia shareholders voted overwhelming in favor of the transaction, which closed on November 15, 2018 (the "Waitr Acquisition").  Landcadia changed its name to "Waitr Holdings, Inc."  AC ¶ 96.  Messrs. Meaux and Fertitta became directors of the new company and, the following day, shares continued trading on the NASDAQ under the symbol "WTRH."  *Id.*  Mr. Handler did not join the Waitr board.  Proxy Statement at 206.

The Section 10(b) Defendants were optimistic about Waitr's future performance, and some regularly said so.[2]  In accordance with the securities laws, Waitr regularly filed disclosures regarding its financial performance and any public comments made by its executives.  AC ¶¶ 100, 102, 104.

## III.    WAITR'S POST-MERGER OPERATIONS

On December 11, 2019, Waitr announced its acquisition of Bite Squad, another online restaurant delivery service based in Minnesota, for a combined $321.3 million in consideration. AC ¶ 106.  Bite Squad was a conglomeration of 17 restaurant-delivery companies across the

---

[2]    Other Defendants were less outspoken.  For instance, Plaintiffs do not allege that Mr. Handler—who is named as a Section 14(a) Defendant—made any statements at all.

country, with a presence in 350 cities across 20 states. *Id.* ¶ 107. The press release announcing the acquisition noted that the Bite Squad "mission, business model, and growth profile share many similarities to Waitr," such that the acquisition would "drive additional growth . . . ." *Id.* ¶ 108. The press release described the strategic rationale for the acquisition: to expand Waitr's scale and footprint by acquiring a company with a shared strategy to establish market leadership so the combined companies could leverage strengths and realize cost synergies. *Id.* ¶ 109.

After consummation of the Bite Squad merger on January 17, 2019, Waitr announced fourth quarter and fiscal year 2018 financial results on February 11, 2019. *Id.* ¶ 200. At the same time, Waitr announced Mr. Pringle's retirement as Chief Financial Officer to "spend more time with his family" and that Mr. Yurecko would step into the role. *Id.* On March 7, 2019, Waitr disclosed further details about the financial performance of both Waitr and Bite Squad in fiscal year 2018. *Id.* ¶¶ 111-12. On May 8, 2020, Waitr continued disclosing its financial results and referenced its ongoing efforts to "integrate Bite Squad and make strategic infrastructure investments that will strengthen our foundation and allow us to grow aggressively and efficiently into 2020 and beyond." *Id.* ¶ 121; *see also id.* ¶¶ 123, 124.

## IV.    WAITR'S SECONDARY OFFERING AND SUBSEQUENT EVENTS

On April 4, 2019, Waitr filed a Secondary Offering Registration Statement (the "Secondary Offering") with the SEC, authorizing Waitr to sell securities up to an aggregate price offering of $300 million. AC ¶ 136. On May 16, 2019 and May 17, 2019, Waitr filed its preliminary and final prospectus supplements to the Secondary Offering. *Id.* Under the final prospectus, Waitr registered 6,757,000 shares of Waitr common stock at $7.40 per share for sale to the public. *Id.* In a Form 4 filed with the SEC on May 21, 2019, Mr. Meaux reported purchasing $1 million in Secondary Offering shares. *Id.* ¶ 222.

6

On April 30, 2019, a class action was filed against Waitr in this Court, alleging that Waitr breached its contracts with certain restaurant customers. *Id.* ¶¶ 47, 147-49. On July 5, 2019, Waitr announced a price increase that raised commissions from 15% to 25% for restaurants generating less than $20,000 in delivery per month. AC ¶¶ 49, 150-52. On August 6, 2019, Waitr announced that it would be working with third-party developer Mobo Systems, Inc. d/b/a Olo ("Olo") on software development. *Id.* ¶¶ 26, 51, 93, 156-57. On August 7, 2019, Waitr issued a press release disclosing that Mr. Meaux would resign as CEO, integration of Bite Squad was not proceeding according to plan, Waitr would lay off personnel, and that the Company's net losses were higher than anticipated. *Id.* ¶¶ 53, 158-59.

## V.    PLAINTIFFS COMMENCE THIS LITIGATION

Shortly after the August 2019 announcement, Waitr shareholders brought two putative class actions. After consolidation, the Amended Complaint was filed on October 16, 2020. Dkt. 37. As reflected in Appendix A ("App'x A"), attached to the Declaration of James Langdon, Plaintiffs identify approximately 32 alleged misrepresentations and/or omissions in the 99-page Amended Complaint by citing to and excerpting from lengthy press releases, SEC filings, and conference call transcripts. Plaintiffs Welch, Brown, Moore, Sinor, and Colangelo assert claims against Defendants Waitr, Meaux, Pringle, Yurecko, and Fertitta for supposed violations of Section 10(b) and Rule 10b-5 of the Exchange Act, challenging approximately 24 supposed misstatements made between November 16, 2018 and May 10, 2019. Plaintiffs Welch and Barnard assert claims against Defendants Waitr, Meaux, Fertitta, Pringle, JFG, JLLC, and Handler for alleged violations of Section 14(a) of the Exchange Act based on eight alleged misrepresentations made between May 16, 2018 and November 8, 2018.

7

## LEGAL STANDARD

A plaintiff must plead specific facts—not mere conclusory allegations—to survive a Rule 12(b)(6) motion. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The PSLRA also requires that plaintiffs who bring securities class actions under the Exchange Act, as Plaintiffs purport to do here: "(1) specify [] each statement alleged to have been misleading . . . ; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representation; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading . . . ." *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002); *see also Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 362-63 (5th Cir. 2004).

Securities fraud claims are also held to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires plaintiffs to plead the circumstances constituting fraud or mistake with particularity. Fed. R. Civ. P. 9(b). "To plead fraud with particularity, a plaintiff must, at a minimum, include the time, place, and contents of the false representations, as well as identify the speaker who made the misrepresentation and what that person obtained thereby." *Patel v. Holiday Hosp. Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993)); *see also Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997), *cert. denied* 522 U.S. 966 (1997). In other words, Plaintiffs must set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).

## ARGUMENT

The alleged statements underlying Plaintiffs' claims generally concern four categories of information: (i) Waitr's prospects for future success, (ii) the hoped-for efficacy of its pricing and

labor models, (iii) the rationale for Waitr's acquisition of Bite Squad, or (iv) the filing of lawsuits by employees and restaurant owners against Waitr. None of the challenged statements can support any claim for violation of the securities laws.[3]

## I.    PLAINTIFFS' SECTION 10(B) AND RULE 10B-5 CLAIM (COUNT II) FAILS BECAUSE THE COMPLAINT DOES NOT PLEAD FALSITY OR SCIENTER WITH PARTICULARITY.

"To state a securities-fraud claim under section 10(b), and Rule 10b-5, plaintiffs must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland*, 365 F.3d at 362 (citations omitted). Under the PSLRA and Rule 9(b), Plaintiffs must plead each element of a Section 10(b) and Rule 10b-5 claim with particularity. Because Plaintiffs have failed to plead either falsity or scienter, the Court should dismiss Count II with prejudice.

### A.    Plaintiffs Fail to Plead Any Actionable Material Misstatement or Omission.

Under Rule 9(b) and the PSLRA, plaintiffs are required to plead with particularity "contemporaneous facts to indicate that defendants' statements were false when made." *Tarica v. McDermott Int'l*, No. 99-3831, 2000 U.S. Dist. LEXIS 14144, at *19 (E.D. La. Sep. 19, 2000). Dismissal is compelled where plaintiffs do not specifically identify the content of each misleading statement, the speaker, and explain how the statement was misleading. *Id.* at *19-21; *ABC Arbitrage*, 291 F.3d at 350. Plaintiffs must satisfy the same particularity requirements when pleading omissions, *Southland*, 365 F.3d at 362, and must also establish that disclosure of the allegedly omitted fact was required under the Exchange Act, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). "[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx*, 563 U.S. at 44. Rather,

---

[3]    Only the first two categories of statements are relevant to Plaintiffs' Section 14(a) claim.

"[d]isclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'"  *Id.* (ellipsis in original) (quoting 17 C.F.R. § 240.10b-5).  Simply stated, "a corporation 'is not required to disclose a fact merely because a reasonable investor would very much like to know that fact.'"  *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 556 (N.D. Tex. 2003) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)).

### 1. *Plaintiffs Have Not Identified Any False Statement or Material Omission.*

Although Plaintiffs generally allege a variety of statements made in SEC filings, investor calls, and interviews were false or misleading—identified as Nos. 9-32 on Appendix A—the Amended Complaint fails to allege any particularized misstatement or omission.

*First*, Plaintiffs point to several statements regarding Waitr's actual financial performance and potential future profitability as allegedly false or misleading.  *See, e.g.*, App'x A, Nos. 16, 21, 26; AC ¶¶ 111-12, 121, 130.  Notably, Plaintiffs do not identify *any* particular statement regarding Waitr's growth or financial performance that was actually false.  Instead, Plaintiffs generally allege that Waitr did not comply with GAAP, and that its disclosures were otherwise misleading, because they failed to disclose a number of additional alleged facts or trends, including several related to the alleged unsustainability of its growth and to an alleged slowdown in late 2018.  *See, e.g.*, App'x A, Nos. 18-21, 27, 28; AC ¶¶ 113, 117-20, 134, 137.  Section 10(b) and "Rule 10b-5 do[] not impose on a corporation an affirmative duty to disclose all nonpublic material information," however.  *Newby v. Lay (In re Enron Corp. Sec., Derivative & ERISA Litig.)*, 258 F. Supp. 2d 576, 589 (S.D. Tex. 2003); *see also Matrixx*, 563 U.S. at 44.  Rather, a duty to disclose arises only where disclosure of information is required to prevent statements made from being misleading.  *See Matrixx*, 563 U.S. at 44 (citing 17 CFR § 240.10b-

5(b)).  Plaintiffs' failure to explain how any particular statements were rendered misleading by the failure to identify particular omitted information is therefore fatal to their claim.

*Second*, Plaintiffs claim that statements about Waitr's plans for growth and expansion were allegedly false or misleading.  *See, e.g.*, App'x A, 9, 12, 14-15, 26; AC ¶¶ 98, 102, 108-09, 130.  Plaintiffs further assert that the Section 10(b) Defendants misrepresented the strategic alignment and integration of Bite Squad.  *See, e.g.*, App'x A, Nos. 14-15, 17, 21, 23, 29; AC ¶¶ 108-09, 114, 121, 124, 139.  But Plaintiffs do not identify even one statement about Waitr's expansion plans that they say was false—if anything, the Bite Squad acquisition refutes this notion.  Plaintiffs likewise fail to identify any misrepresentation about Bite Squad, instead speculating that the "acquisition was conducted with little or no due diligence and with disregard for the fact that Bite Squad's haphazard structure . . . was not consistent with Waitr's 'continuous growth' model."  AC ¶ 110.  Plaintiffs nowhere describe what diligence was supposedly lacking or how Bite Squad's structure was incompatible, much less what statements would be rendered untrue even if these facts were well pleaded.

*Finally*, Plaintiffs submit that statements regarding Waitr's pricing structure (*see* App'x A, Nos. 11, 30, 31; AC ¶¶ 100, 141, 143), driver employees (*see* App'x A, Nos. 11, 24; AC ¶¶ 100, 126), and technology (*see* App'x A, Nos. 25, 32; AC ¶¶ 128, 145) were false or misleading.  Plaintiffs first allege that Waitr's 15-percent take rate was unsustainable and unprofitable for certain restaurants, causing Waitr to unilaterally increase the take rate after its acquisition by Landcadia.  *See* AC ¶ 101.  Plaintiffs do not, however, identify any statement regarding Waitr's pricing structure that was false *when made*.  In other words, Plaintiffs do not and cannot allege that Waitr misstated its then-applicable take rate.  To the contrary—statements from Confidential Witness #1 ("CW1") show that the first pricing change came on July 18, 2019, *after* the last

11

alleged misstatement and near the end of the putative class period.  *See id.* ¶¶ 188-89.  Plaintiffs likewise fail to identify any statement regarding Waitr's W-2 workforce or technology that was false, let alone false *when made*.  Waitr accurately described its labor model and technology and there is no allegation to the contrary.  That Waitr ultimately incurred extra costs due to its labor force structure and strategically changed its technology development source *after* these statements were made does not change that the identified statements were truthful when uttered.  *See, e.g.*, *Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*, No. 4:13-CV-2393, 2015 U.S. Dist. LEXIS 31468, at *28 (S.D. Tex. Mar. 13, 2015) ("Absent substantiation, [] later results do not establish that the earlier statements were false when made.").

### 2.    *Expressions of Forward-Looking Projections Are Not Actionable.*

In addition, the PSLRA provides a "safe harbor" from liability where a statement is either (1) "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially," or (2) "immaterial."  15 U.S.C. § 78u-5(c)(1); *Southland*, 365 F.3d at 371.  Forward-looking statements accompanied by "meaningful cautionary" language are also, in effect, immaterial and therefore not actionable.  15 U.S.C. § 78u-5(i)(1); *Southland*, 365 F.3d at 371.  "Cautionary language must advise an investor of risks of a significance similar to that actually realized in order to put the investor on notice of the danger of the investment, but need not list the specific risk factor alleged to have rendered the forward-looking statement false."  *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 162 (N.D. Tex. 2007) (internal quotation marks and citation omitted) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999); *In re Blockbuster Inc., Sec. Litig.*, 2004 U.S. Dist. LEXIS 7173, at *5 (N.D. Tex. April 26, 2004)).  "Statements that are predictive in nature are actionable only if they were false when made."  *Shushany*, 992 F.2d at 524; *see also Millcreek Assocs., L.P. v. Bear, Stearns & Co.*, 205 F. Supp.

12

2d 664, 670 (W.D. Tex. 2002) ("Rule 10b-5 for predictive statements will depend on 'whether the predictive statement was false when made' and not on whether the prediction later proved to be wrong."). Accordingly, "[t]he mere fact that a business did not live up to expectations is insufficient to create an inference of fraud." *See Rosenzweig v. Azurix Corp. (In re Azurix Corp. Sec. Litig.)*, 198 F. Supp. 2d 862, 882 (S.D. Tex. 2002) (citing *Shushany*, 992 F.2d at 524-25).

The Amended Complaint cites several forward-looking statements made by Section 10(b) Defendants. *See* App'x A, Nos. 12, 14, 17, 23-24, 26, 32. None of these statements are actionable under Section 10(b) or Rule 10b-5. For instance, Plaintiffs cite to general financial projections made by Waitr. App'x A, Nos. 17, 24; AC ¶¶ 114, 126. These are textbook forward-looking statements, however, cloaked with cautionary and predictive language like "expect to achieve" and "targeting." *Id.* Plaintiffs similarly allege falsity of several forward-looking statements related to growth goals and the Bite Squad acquisition and integration. *See, e.g.*, App'x A, Nos. 12, 14; AC ¶¶ 102, 108-09. Once again, these statements are cloaked in cautionary language about "goals" and "opportunities," and were an accurate depiction of Waitr's ambitions when made. These forward-looking statements cannot serve as the basis for Plaintiffs' Section 10(b) and Rule 10b-5 claim. *See In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d at 563 ("[S]tatements are not 'facts' which are 'false' when made merely because the prediction turned out to be wrong.").

### 3.    *Statements of Corporate Optimism and Puffery Are Not Actionable.*

Plaintiffs further claim that the Section 10(b) Defendants misled them via false assurances of the strength of the business. However, statements that are "of the vague and optimistic type . . . and contain no concrete factual or material misrepresentation" are "non-actionable puffery . . . that cannot support a securities fraud action." *Southland*, 365 F.3d at 372 (quoting *Lain v. Evans*, 123 F. Supp. 2d 344, 348 (N.D. Tex. 2002)). The Fifth Circuit has

13

explained that "generalized positive statements about the company's competitive strengths, experienced management, and future prospects" are not material misrepresentations. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003). Courts in the Fifth Circuit have rejected as non-actionable puffery statements that future transactions "remain[] strong," *id.*, as well as "generally positive statements about demand." *Southland*, 365 F.3d at 371. Similarly, statements describing corporate capabilities as "sophisticated" and teams as "well prepared" are non-actionable. *Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 273 F. Supp. 3d 650, 677-78 (N.D. Tex. 2017). Nor are statements asserting that "years of experience" allowed delivery of "consistent performance" actionable. *Microcapital Fund LP v. Conn's Inc.*, No. 4:18-CV-1020, 2019 U.S. Dist. LEXIS 127748, at *26 (S.D. Tex. July 24, 2019).

Most of the statements that Plaintiffs decry as material misrepresentations are, likewise, non-actionable puffery. *See* App'x A, Nos. 9-15, 17, 21-26, 29-32. For instance, Mr. Fertitta's statements that Waitr was "positioned well to take advantage of . . . unpenetrated . . . secondary markets" and expansion opportunities fall within the ambit of clear corporate puffery. App'x A, No. 9; AC ¶ 98. Statements regarding the "combined experience" and "complementary nature" of Waitr and Landcadia likewise amount to nothing more than general corporate optimisms. *See, e.g.*, App'x A, Nos. 9, 13; AC ¶¶ 98, 104. Similarly, statements about the "synergies" of Waitr and Bite Squad and growth opportunities following the acquisition (*see, e.g.*, App'x A, Nos. 15, 21, 29; AC ¶¶ 109, 121, 139) "are the sort of puffery that a reasonable investor would not rely on" and cannot support Plaintiffs' 10(b) claims. *Emps.' Ret. Sys. of Haw. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 902 (5th Cir. 2018).

**B.     Plaintiffs Fail To Plead Scienter with Respect to Each Section 10(b) Defendant.**

Plaintiffs have also failed to plead that each Section 10(b) Defendant acted with scienter, a mental state embracing the intent to deceive, manipulate, defraud, or acting with severe recklessness.  *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001).  Although scienter may be "averred generally" under Rule 9(b), the Fifth Circuit requires that "the plaintiff must set forth specific facts that support an inference of fraud."  *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  To adequately plead scienter, plaintiffs must allege specific facts showing a defendant's motive to commit securities fraud or—where motive is not evident—by the more difficult method of "identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater."  *Id.*  The allegations must "make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Id.*  The PSLRA mandates that Plaintiffs plead specific facts giving rise to a "strong inference" that each defendant acted with severe recklessness or actual knowledge of falsity.  *Southland*, 365 F.3d at 363 (quoting 15 U.S.C. § 78u-4(b)(2)); *see also Nathenson*, 267 F.3d at 410-11. Courts must weigh inferences urged by a plaintiff against "any opposing inference" and "consider plausible, nonculpable explanations for the defendant's conduct."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 324 (2007).

Plaintiffs fall far short of the requirement.  They do not allege specific facts giving rise to a strong inference that any Section 10(b) Defendant intended to deceive, manipulate, or defraud. They do not allege that any Section 10(b) Defendant was motivated to make fraudulent statements, much less that they actually knew any statements were materially false or misleading.  Instead, Plaintiffs engage in sheer speculation, asserting that every Section 10(b)

15

Defendant either had access to unspecified information that revealed the falsity or failed to conduct adequate diligence in connection with the Waitr Acquisition and Secondary Offering. None of these conclusory assumptions adequately pleads scienter.

*First*, scienter allegations must be pled with particularity as to *each* defendant:  "group pleading" does not suffice.  *Southland*, 365 F.3d at 363-65.  As such, "each defendant must be individually named and the basis for their particular knowledge must be stated" to plead scienter under Rule 9(b) and the PSLRA.  *Chiaretti v. Orthodontic Ctrs. Of Am., Inc.*, No. 03-1027, 2004 U.S. Dist. LEXIS 33913 (E.D. La. Apr. 6, 2004).  Yet Plaintiffs repeatedly attempt to group plead scienter allegations for Waitr, Mr. Meaux, Mr. Fertitta, Mr. Pringle, and Mr. Yurecko. *See, e.g.*, AC ¶¶ 186, 195, 199, 203, 206, 210-11, 216.  This falls well short of particularity.

*Second*, "corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded."  *Southland*, 365 F.3d at 365.  Plaintiffs attempt to plead scienter based upon individual Section 10(b) Defendants' alleged access to unspecified information (AC ¶¶ 185-86), but this reveals nothing about what information each Defendant *actually* had.  So too with Plaintiffs' assumption that the individual defendants acted with scienter because they filed certifications supporting various investor reports.  *See id.* ¶¶ 119, 134, 186.  Plaintiffs allege no "facts establishing that the officer who signed the certification had a reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other red flags, that the financial statements contained material misstatements or omissions." *In re Dell Inc., Secs. Litig.*, 591 F. Supp. 2d 877 (W.D. Tex. 2008).[4]

---

[4]    Plaintiffs' conclusory speculation that Mr. Fertitta "knowingly failed to conduct adequate due diligence" in connection with the Waitr Acquisition and Secondary Offering is likewise

*Third*, the timing of various Waitr executive retirements and resignations is irrelevant. As Plaintiffs admit, Mr. Pringle retired in March 2019 to spend more time with his family.  AC ¶ 200.  Though Plaintiffs speculate about Mr. Pringle's age and the proximity of his departure to the acquisition by Landcadia, they make no allegations about what information was purportedly known by Mr. Pringle from which fraud could be inferred.  *Id.* ¶¶ 202-03.  Plaintiffs also point to Mr. Meaux's resignation on August 8, 2019, alleging that Mr. Meaux forfeited two-thirds of his restricted stock and was "forced out of his position due to, among other things, his failure and inability to successfully integrate Bite Squad and refine and enhance Waitr's technology platform."  *Id.* ¶¶ 204-05.  At most, Plaintiffs' speculation suggests that Mr. Meaux did not meet strategic goals set for the Company—not that he intended to defraud shareholders.  *See In re Azurix Corp. Sec. Litig.*, 198 F.Supp. 2d 862, 891 (S.D. Tex. 2002), *aff'd sub. nom Rosenzweig*, 332 F.3d at 867-68 (rejecting defendants' resignations as sufficient to raise a "strong inference" of scienter); *Rosenzweig*, 332 F.3d at 867 ("[T]he successive resignations of key officials, as the district court stated, is more likely probative only of the fact that the company was failing."). Likewise, the post-class period comments of a successor CEO (AC ¶¶ 196-98) do not establish what the Section 10(b) Defendants knew or intended in the nearly twelve months before his appointment.  These comments describe a change in strategic direction and management practices—not past occurrences of fraud.

*Fourth*, Plaintiffs' suggestion that Mr. Meaux's personal investment in Waitr stock via the Secondary Offering reveals fraudulent intent (AC ¶¶ 212-16) is grossly inadequate.  Courts routinely reject "evidence of a personal profit" as "insufficient to raise a strong inference of

---

insufficient.  *See* AC ¶¶ 207-11.  Plaintiffs allege no facts concerning Mr. Fertitta's purported involvement in the diligence process, much less how that process was supposedly inadequate.

scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008); *see also*

*Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (holding that

"incentive compensation can hardly be the basis on which an allegation of fraud is predicated").

This is so because the desires that motivate most if not all corporate executives, such as "the

desire to raise capital, bring a public offering to fruition, economic self-interest and the desire to

protect one's executive position[,] are inadequate to plead motive." *Coates v. Heartland*

*Wireless Communications, Inc.*, 55 F. Supp. 2d 628, 644 (N.D. Tex. 1999) (internal citations

omitted); *accord Eizenga v. Stewart Enters.*, 124 F. Supp. 2d 967, 986 (E.D. La. 2000). Where

"Plaintiffs have not alleged that Defendants themselves profited from their alleged

misstatements"—as Plaintiffs have not here—this "undercuts a motive allegation." *Neiman v.*

*Bulmahn*, 854 F.3d 741, 751-52 (5th Cir. 2017).

 *Finally*, Plaintiffs' citation to testimony from CW1 does not create any inference—let

alone a strong inference—that any Section 10(b) Defendant acted with intent to defraud. *See* AC

¶¶ 188-89. CW1 claims that Waitr charged the unnamed restaurant a take-rate of 10% until July

18, 2019, when it was raised to 18%. *Id.* ¶¶ 190-91. By that time, however, Waitr had already

publicly announced a price increase raising commissions from 15% to 25%. *Id.* ¶¶ 49, 150-52.

In any event, CW1 does not assert that *any* individual Defendant was involved with negotiations

of take rates with restaurants, instead describing interactions with other employees to try to

establish what each Section 10(b) Defendant knew. *See id.* ¶¶ 188-95. These allegations fall far

short of alleging scienter with particularity.

 In short, the Amended Complaint utterly fails to plead any particularized facts from

which fraudulent intent could be inferred as to any Section 10(b) Defendant. Plaintiffs therefore

18

fail to plead scienter as required by Rule 9(b) and the PSLRA.  This failing, both independently and together with the lack of false statements, compels dismissal.

## II.      PLAINTIFFS' SECTION 20(A) CLAIM (COUNT III) ALSO FAILS.

Plaintiffs purport to assert a control person claim under Section 20(a) against Defendants Meaux, Fertitta, Pringle, and Yurecko for underlying violations of Section 10(b) and Rule 10b-5 (AC ¶ 232), but "[c]ontrol person liability is secondary only and cannot exist in the absence of a primary violation," *Southland*, 365 F.3d 353 at 383 (citation omitted); *see also Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*, 537 F.3d 527, 545 (5th Cir. 2008).  Because Plaintiffs have not adequately pleaded a Section 10(b) and Rule 10b-5 claim, as discussed *supra* Section I, the Section 20(a) claim accordingly fails.

Plaintiffs also fail to meet the Fifth Circuit's requirement "to allege some facts beyond a defendant's position or title that show that the defendant had actual power or control over the controlled person."  *In re Enron Corp. Sec.*, 235 F. Supp. 2d 549, 595 (S.D. Tex. 2002) (citing *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509-10 (5th Cir. 1990)).  Plaintiffs presume that each Defendant had "direct and supervisory involvement in the day-to-day operations" of Waitr and exercised control "[b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements."  AC ¶¶ 230-31.  These conclusory statements fail as a matter of law to establish that each Defendant controlled Waitr.

## III.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 14(A) (COUNT I).

Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), prohibits the solicitation of proxies by virtue of misleading proxy statements or other solicitation materials.  To state a claim under Section 14(a), plaintiffs must allege that "proxies necessary to approval of the merger were obtained by means of a materially misleading solicitation." *Mills v. Electric Auto-Lite Co.*, 396

U.S. 375, 386 (1970).  The PSLRA applies to Section 14(a) claims and requires plaintiffs to allege "with particularity facts giving rise to a strong inference" that each defendant acted with the "required state of mind."  15 U.S.C. § 78u-4(b)(2); *see, e.g.*, *Hohenstein v. Behringer Harvard Reit I, Inc.*, No. 3:12-CV-3772-G, 2014 U.S. Dist. LEXIS 40759, at *23-28 (N.D. Tex. Mar. 27, 2014) (applying PSLRA standard to dismiss Section 14(a) claims ); *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 341 n.4 (N.D. Tex. 2008) (same); *Hollywood Casino Corp. v. Simmons*, No. 3:02-CV-0325-M, 2002 U.S. Dist. LEXIS 13182, at *21-25 (N.D. Tex. July 18, 2002) (same); *In re Fossil, Inc.*, 713 F. Supp. 2d 644, 655 (N.D. Tex. 2010) (applying PSLRA pleading standard to Section 14(a) claims).[5]

**A.      The Amended Complaint Fails To Adequately Allege Any False or Misleading Statements Contained in Solicitation Materials.**

Plaintiffs fail to meet the most basic pleading requirement of a Section 14(a) claim:  that the Landcadia proxy solicitation made a materially misleading statement or omission.  *See Mills*, 396 U.S. 375 at 386.  Importantly, Plaintiffs do not even attempt to allege that the Proxy Statement itself—which was chock full of both facts and meaningful cautionary statements— contained a single misstatement.  Instead, Plaintiffs' Section 14(a) claim relies on eight alleged statements made *outside* of the Proxy Statement—like call transcripts, interviews, and investor presentations—that were later filed by the Company with SEC as solicitation materials.  *See*

---

[5]      These courts join numerous others following this well-reasoned rule.  *See, e.g.*, *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig*., 757 F. Supp. 2d 260, 323 (S.D.N.Y. 2010) (PSLRA requires negligence be pled with specificity for Section 14(a)); *Bond Opportunity Fund v. Unilab Corp.*, No. 99-CV-11074, 2003 U.S. Dist. LEXIS 7838, at *8-9 (S.D.N.Y. May 9, 2003) (same), *aff'd*, 87 F. App'x 772 (2d Cir. 2004); *In re McKesson HBOC, Inc. Sec. Litig*., 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) (same); *Burt v. Maasberg*, No. ELH-12-0464, 2013 U.S. Dist. LEXIS 46732, at *83-89 (D. Md. Mar. 31, 2013) (PSLRA applies to Section 14(a)).

20

App'x A, No. 1-8.  Plaintiffs fail to adequately allege that any at-issue statement was materially misleading or actionable under Section 14(a).

### 1.    *Plaintiffs Fail Adequately To Allege Falsity.*

The Amended Complaint includes no particularized factual allegations showing that any challenged statement was false when made, or that the statements were anything other than the sort of optimistic predictions that courts uniformly find immaterial as a matter of law.

To begin with, most of the challenged statements reflected, at most, the speaker's opinions about Waitr's competitive strengths and future prospects.  *See, e.g.*, App'x A, Nos. 1, 3, 5-6, 8; AC ¶¶ 29, 33, 39, 43.  For instance, Plaintiffs cite statements by Mr. Fertitta about what he "believe[d]" and "thought" about the "opportunit[ies]" presented by the Waitr Acquisition and why he was "excited about it."  App'x A, Nos. 1, 5; AC ¶¶ 29, 37.  Plaintiffs likewise cite Mr. Meaux's statement that he "believe[d]" that the Company's performance and "high growth business model . . . positioned [it] well for the long term," and that "high quality partners" would facilitate future "expan[sion] into new markets.  App'x A, Nos. 6, 8; AC ¶¶ 39, 43.  Such statements of opinion are not actionable under Section 14(a) unless they are both objectively false *and* not sincerely held.  *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991).  Plaintiffs do not even bother alleging that the speakers of these statements did not sincerely hold their opinions when expressed, nor could they plausibly do so.  That mandates dismissal of the Section 14(a) claims based on these statements.  *See, e.g.*, *Hohenstein*, 2014 U.S. Dist. LEXIS 40759, at *30-31 (dismissing 14(a) claims where complaint did not adequately allege "directors did not subjectively believe" their expressed opinions).

With respect to statements concerning Waitr's reported pricing model, restaurant subscribers, or employees (*see* App'x Nos. 2-3, 7; AC ¶¶ 31-34, 41), Plaintiffs allege no basis from which it could be inferred that these statements were false.  Instead, Plaintiffs generally

21

claim that Waitr's pricing was unsustainable and its labor model was inefficient and caused it to incur "unique risks." *Id.* ¶¶ 34, 42. That Waitr's models ultimately did not perform as well as hoped does not mean predictions about the competitive advantages they might provide were false at the time they were made. *See, e.g.*, *Southland*, 365 F.3d at 372 (securities plaintiffs only have "a claim based on [predictions of future earnings and revenues] if they were made with actual knowledge that they were false or misleading.").

Finally, Plaintiffs' oblique assertions that Waitr "artificially inflated profits and revenues" (AC ¶ 26) and failed to appropriately recognize revenue pursuant to GAAP (*id.* ¶ 116) are utterly conclusory. Plaintiffs do not actually allege that Waitr misrepresented its sales figures (*see id.* ¶¶ 35-36, 43-44), nor do they allege any other facts—much less particularized facts—to support those conclusory assertions. Indeed, the Amended Complaint is utterly bereft of any allegation identifying even one aspect of the Company's financial position that was misstated. *See, e.g.*, *Southland*, 365 F.3d at 372; *Hohenstein*, 2014 U.S. Dist. LEXIS 40759, at *30-31.

### 2. *Forward-Looking Statements and Puffery Are Not Actionable.*

Several other misrepresentations in the Amended Complaint amount to no more than non-actionable forward-looking statements or corporate puffery. *See supra* Section I(A)(2)-(3).

For instance, statements about Waitr's sales projections for 2018 are forward-looking. *See* App'x A, Nos. 5-6; AC ¶¶ 35, 37. The Proxy Statement warned that these forward-looking statements "are based on information available as of the date of this proxy statement" and "should not be relied upon as representing our views as of any subsequent date." *See* Proxy Statement at 5. Under the PSLRA and the "bespeaks caution" doctrine, a defendant cannot be "held liable for a forward-looking statement that is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'" *Heinze v.*

22

*Tesco Corp.*, 971 F.3d 475, 483 (5th Cir. 2020) (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)); *see also*

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882,

914 n.92 (E.D. La. 2014) ("The 'bespeaks caution' doctrine is the common-law counterpart to

the PSLRA safe harbor.").

Likewise, Mr. Fertitta's statements regarding Waitr's "huge potential," "many acquisition

opportunities," and "highly complementary" nature with Fertitta Entertainment businesses

(App'x A, No. 1; AC ¶ 29) are merely corporate optimism and puffery.  Statements by Mr.

Fertitta regarding Waitr's "strong value proposition" and "edges" over the competition (App'x

A, No. 2, 5-6; AC ¶¶ 31, 37, 39) are sales speak that no reasonable investor would rely upon

when making an investment decision.  *See Southland*, 365 F.3d at 372 (deeming certain

statements "non-actionable puffery, as they are of the vague and optimistic type that cannot

support a securities fraud action . . . and contain no concrete factual or material

misrepresentation") (internal citations and quotation marks omitted); *Police & Fire Ret. Sys. of*

*City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019)

(statements of "corporate cheerleading" are not actionable if not false or misleading when made).

### 3.     *Cautionary Language Warned of the Very Risks that Befell Waitr.*

Even if the challenged statements were not statements of opinion (they were), or

somehow crossed the line from inactionable puffery to a factual representation (they did not), the

challenged statements became part of solicitation materials that included the Proxy Statement,

which detailed highly specific cautionary disclosures concerning the very risk factors Plaintiffs

allege were concealed.  For example, optimism about Waitr's low take rate was coupled with

clear warnings in the Proxy Statement that future rate increases might be both necessary and

unsuccessful, that Waitr's increased restaurant membership and growth of revenue did "not

enjoy long historical data trends," and that its ability to diversify beyond current "revenue

23

sources . . . has not been demonstrated." Proxy Statement at 44. The Proxy Statement also warned of "cost increases outside of our control that could materially reduce our profitability if we are unable to increase our rates sufficiently." *Id.* at 43. Similarly, optimism about Waitr's technology was tempered by clear warnings that the Company "face[d] substantial competition in technology innovation and distribution" and that inability "to continue to innovate and provide technology desirable to diners and restaurants" could cause the business to "materially suffer." *Id.* at 55.

The Fifth Circuit has soundly rejected claims based on predictive statements where, like here, those statements are coupled with cautionary language. *Rubinstein v. Collins*, 20 F.3d 160, 167-68 (5th Cir. 1994) ("[P]redictive statements are just what the name implies: predictions [and] the 'bespeaks caution' doctrine . . . address[es] situations in which optimistic projections are coupled with cautionary language—in particular, relevant specific facts or assumptions— affecting the reasonableness of the reliance on and the materiality of those projections."). The Court should similarly conclude that the cautionary language in the Proxy Statement negated any potentially misleading statements about the Waitr Acquisition.

## B.    Plaintiffs Fail To Plead the Requisite State of Mind.

Plaintiffs expressly concede they have not pleaded scienter with respect to their Section 14(a) claims, contending that pleading negligence is sufficient to state the claim. AC ¶ 27. Although the Fifth Circuit has not yet addressed whether scienter is required for Section 14(a) claims, this Court should conclude scienter is required and dismiss Count I for failure to plead it. Even if negligence applies, however, Plaintiffs' Section 14(a) claim still fails to state a claim.

### 1.    *Scienter is Required to Plead a Viable Section 14(a) Claim.*

The Supreme Court has twice expressed doubt that *any* Section 14 claim can be established without pleading scienter, but has reserved ruling on the question of whether scienter

24

is required under Section 14(a). *TSC Industries, Inc. v. Northway, Inc.*, <u>426 U.S. 438, 444</u> n.7 (1976); *Virginia Bankshares, Inc. v. Sandberg,* <u>501 U.S. 1083, 1090</u> n.5 (1991). Circuit courts have split on the requisite state of mind for Section 14(a) claims, with some concluding that scienter is required and others applying a negligence standard. *See, e.g.*, *Beck v. Dobrowski*, <u>559 F.3d 680, 682</u> (7th Cir. 2009); *In re Exxon Mobil Corp. Securities Litigation,* <u>500 F.3d 189, 196-97</u> (3d Cir. 2007); *Shidler v. All American Life & Financial Corp.,* <u>775 F.2d 917, 926-27</u> (8th Cir. 1985); *Gerstle v. Gamble-Skogmo, Inc.*, <u>478 F.2d 1281, 1300-01</u> (2d Cir. 1973). Although the Fifth Circuit has not addressed the scienter requirement in the Section 14(a) context, it requires scienter to plead a claim under Section 14(e) of the Exchange Act. *See Smallwood v. Pearl Brewing Co.*, <u>489 F.2d 579, 606</u> (5th Cir. 1974) ("[T]he elements to be proved to establish a violation of Section 14(e) are identical to those under [Rule 10b-5]. There is no question of requiring plaintiffs to prove scienter in its strict common law sense…."). This Court should similarly conclude that scienter is required for a Section 14(a) claim, adopting the reasoning set forth in the Sixth Circuit's well-reasoned opinion in *Adams v. Standard Knitting Mills, Inc.*, <u>623 F.2d 422, 428-30</u> (6th Cir. 1980), *cert. denied*, <u>449 U.S. 1067</u> (1980).

As the *Standard Knitting* court explained, "the overall structure and collective legislative histories of the securities laws, as well as important policy considerations" favor a scienter requirement for Section 14(a). <u>623 F.2d at 428</u>. The court found that the legislative history of Section 14 makes it abundantly clear that the statute targets fraud—not mere negligence. *Id.* at 429-31. For example, the court reviewed Senate Reports focused on "unscrupulous proxy committees," executives who sought to "conceal[] and distort[] facts," "the use of such proxies for manipulation," solicitations seeking shareholder ratification of illegal acts, and even "larceny." *See id.* (citations omitted). The legislative history therefore evidences a focus on

25

intentional fraud—not careless error—creating a powerful reason to require scienter to plead any Section 14 claim, including under Section 14(a).

Requiring scienter for Section 14(a) claims also ensures consistency in the standards for liability under the subsections of Sections 14(a) and 14(e) of the Exchange Act. Section 14(e) is the subsection of Section 14 that regulates tender offers for registered securities, whereas Section 14(a) regulates proxy solicitations. The Fifth Circuit—and several others—have squarely held that Section 14(e) requires scienter. *Smallwood*, 489 F.2d at 606; *Standard Knitting*, 623 F.2d at 430; *SEC v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004); *In re Digital Island Sec. Litig.*, 357 F.3d 322, 328-29 (3d Cir. 2004); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 363-64 (2d Cir. 1973), *cert. denied*, 414 U.S. 910 (1973). As the Sixth Circuit explained in *Standard Knitting*, it would be both inconsistent to require scienter for Section 14(e) but not for Section 14(a). 623 F.2d at 430.[6]

Because the Court should require scienter to plead a viable Section 14(a) claim and the Amended Complaint expressly disclaims any allegation of scienter for its Section 14(a) claim, (*see* AC ¶ 27), Count I must be dismissed.

## 2. *Even if Scienter Is Not Required, Plaintiffs Fail To Plead Negligence.*

Even if the Court requires Plaintiffs to plead only negligence, however, Plaintiffs' Section 14(a) claim fails for at least three reasons.

*First*, Plaintiffs' allegations fail to meet the PSLRA's heightened particularity standard, which requires plaintiffs to plead "how each Defendant was negligent . . . clearly articulating the

---

[6] Congressional history confirms that the standards for these sister statutory provisions were intended to overlap. Section 14(e) was intended "to provide *the same kind of disclosure requirements which now exist….in contests through proxies* for controlling ownership in a company" and that Section 14(e) was intended to be "*analogous to the proxy rules*." *Standard Knitting*, 623 F.2d at 430-31 (citing 113 Cong. Rec. 24665 (1967)) (emphasis added).

duty each Defendant had to the Plaintiffs and how their failure to satisfy that duty gave rise to negligence." *In re Ocera Therapeutics, Inc. Sec. Litig.*, No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270, at *37-38 (N.D. Cal. Oct. 16, 2018), *aff'd*, 806 F. App'x 603 (9th Cir. 2020). The Complaint falls woefully short of this requirement—indeed, Plaintiffs plead no facts about how Defendants' conduct was negligent.[7] In lieu of facts, the Amended Complaint recites legal conclusions, asserting that that the Section 14(a) claims "are based in negligence" and that "Defendants were required to assure that statements contained in the" proxy solicitation materials "were true, accurate and reliable." AC ¶ 27. These conclusory statements are nothing more than an impermissible "formulaic recitation of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and allege nothing about what any Defendant knew or should have known about Waitr's business, or—more importantly—how their diligence efforts allegedly fell short.

Such conclusory assertions are insufficient to plead negligence even under the generous standards of Rule 8(b) of the Federal Rules of Civil Procedure, much less under the PSLRA's requirement of particularity. *See id.*; *In re Ocera Therapeutics Sec. Litig.*, 2018 U.S. Dist. LEXIS 219270, at *35-36 (negligence not pled where "there are no facts alleging Defendants failed to review certain materials, or were neglecting their responsibilities, or designed and oversaw a flawed review process"); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 757 F.

---

[7]    Nor do Plaintiffs make any allegation about what actions particular Defendants supposedly took with respect to preparing for the analyst calls and other statements on which Plaintiffs purport to base their claims, let alone what materials would have led the non-speaking Defendants to conclude that the speakers had made a misleading statement. Thus, while Plaintiffs claim that the Defendants who made statements about Waitr's business were negligent in not knowing that Waitr's take rate was not sustainable, that its labor model would not be competitive, or that its technology systems did not provide a meaningful business advantage, the Amended Complaint does not allege any fact that would have revealed information that Plaintiffs contend a non-negligent Defendant would have or should have discovered.

27

Supp. 2d 260, 323 (S.D.N.Y. 2010) (generic allegations about "due diligence . . . are too thin to ascribe even negligence" for Section 14(a)); *Bond Opportunity Fund*, 2003 U.S. Dist. LEXIS 7838, at *14 (in pleading negligence, "[p]laintiffs may not impute knowledge to the individual Defendants solely on the basis of the positions they held").

*Second*, Plaintiffs failure to adequately plead negligence is compounded by their resort to impermissible group pleading.  For example, the Amended Complaint asserts that a "time crunch prevented Defendants from doing thorough due diligence" (AC ¶ 68) but alleges no facts whatsoever about what diligence was conducted, by whom, or how it was supposedly inadequate.  Similarly, although Plaintiffs recite a handful of public comments made by certain individual Defendants (*see* App'x A, Nos. 1-8), they never explain how *all* Section 14(a) Defendants are liable for a statement made by one person, identify which part of each supposedly untrue statement is attributable to which Defendant, or articulate how each Defendant's role with respect to the Waitr Acquisition should have alerted that Defendant to the supposed inaccuracies. Nor do Plaintiffs allege that specific Section 14(a) Defendants knew of facts that should have alerted them to discrepancies with respect to the alleged misstatements, much less that they were aware of, or negligent regarding, the supposedly omitted facts.

Such group pleading is impermissible in the Fifth Circuit and particularly problematic where, as here, specific defendants had different roles and different levels of access to information.  *See Southland*, 365 F.3d at 365 (applying PSLRA in context of a Section 10(b) claim).  As one federal court has explained, a defendant's liability "is dependent upon *his* due diligence or exercise of reasonable care," such that allegations in a complaint must "permit consideration of the individual's particular position with the corporation and his relationship to the pertinent information held to be erroneously or incompletely stated in the proxy materials."

28

*Gould v. Am. Haw. Steamship Co.*, 351 F. Supp. 853, 865 (D. Del. 1972) (emphasis in original). Plaintiffs' Section 14(a) claim is therefore doomed by its reliance on group pleading. *Southland*, 365 F.3d at 365; *Salit v. Stanley Works*, 802 F. Supp. 728, 733 (D. Conn. 1992) (negligence not pled where plaintiffs do not allege "that the individual defendants knew of the facts allegedly omitted").

*Third*, Plaintiffs do not adequately allege the specific legal or fiduciary duties that each Section 14(a) defendant supposedly owed and upon which any finding of negligence must rest. *See, e.g.*, *SEC v. Shanahan*, 646 F.3d 536, 545-46 (8th Cir. 2011) (a finding of negligence in the context of a Section 14 action requires that a defendant owed a duty of care). For a duty to exist, Plaintiffs must establish that each defendant owed a duty with respect to that particular alleged misstatement. *See, e.g.*, *Little Gem Life Skis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 917 (8th Cir. 2008) (dismissing Section 14(a) claims because "[n]egligence requires a duty, an obligation of conduct to another person"); *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2012 U.S. Dist. LEXIS 74214, at *22 (N.D. Cal. May 29, 2012) (dismissing Section 14(a) claim where "Plaintiff has not adequately pled that any specific Defendant breached any duty, a necessary element of a negligence claim"); *Salit*, 802 F. Supp. at 733 (no negligence alleged where defendants had not been "alleged to have been personally involved" in proxy issuance and "therefore, had no duty to see" alleged omissions). Plaintiffs do not cogently allege any such facts, particularly as to those Section 14(a) Defendants who are not alleged to have had involvement with or visibility into a particular challenged statement by another Defendant.

## C. Investors Who Did Not Hold Landcadia Shares at the Time of the Waitr Acquisition Vote Have No Standing To Bring a Section 14(a) Claim.

The Amended Complaint purports to describe two "class periods" (AC ¶ 1) but does not clearly define which Landcadia shareholders are included in the putative Section 14(a) class. To

29

the extent Plaintiffs propose to include Landcadia shareholders who sold their shares prior to the

shareholder vote on Landcadia's acquisition of Waitr, such shareholders would not have had the

right to vote on the Waitr Acquisition and thus have no standing for a Section 14(a) claim.  *7547*

*Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 230 (5th Cir. 1994) (persons not

entitled to vote have no standing to bring actions alleging violations of Section 14(a)).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Amended Complaint, in its entirety and with prejudice.

Dated: November 30, 2020
                                   */s/   George Denegre, Jr*

George Denegre, Jr., T.A. (Bar #08387)
Melanie N. Derefinko (Bar #37658)
**LISKOW & LEWIS, APLC**
701 Poydras Street
One Shell Square, 50th Floor
New Orleans, LA  70139-5001
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108
Email:  gdenegre@liskow.com

James K. Langdon (*pro hac vice*)
Andrew Brantingham (*pro hac vice*)
Caitlin L.D. Hull (*pro hac vice*)
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868
Email: langdon.jim@dorsey.com
        brantingham.andrew@dorsey.com
        hull.caitlin@dorsey.com

*Counsel for Defendants Christopher Meaux,*
*David Pringle, Jeff Yurecko, Tilman J. Fertitta,*
*Richard Handler, and Waitr Holdings, Inc.*

30

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 30, 2020, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.


                        */s/   George Denegre, Jr*
                          George Denegre, Jr