# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **WALTER WELCH, Individually and on behalf of all others similarly situated,**<br><br>v.<br><br>**CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. F/K/A LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., AND JEFFERIES, LLC,** | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* | **CIVIL ACTION NO. 2:19-CV-01260-TAD-KK (Lead)**<br><br>**CIVIL ACTION NO. No. 2:19-CV-01427-TAD-KK (Member)**<br><br>**JUDGE TERRY A. DOUGHTY**<br><br>**MAGISTRATE JUDGE KATHLEEN KAY** |

**REPLY MEMORANDUM IN SUPPORT OF THE JEFFERIES DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

22665037_1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

    I.     The Jefferies Defendants Were Not "Underwriters" for the Waitr Acquisition .................................................................................................................... 2

    II.    The Jefferies Defendants Are Not Proper Section 14(a) Defendants ..................... 3

          A.     The Jefferies Defendants Did Not Solicit Proxies ..................................... 4

          B.     References to "Jefferies" Do Not Trigger Liability ................................... 6

    III.   Plaintiffs Fail Adequately To Allege Negligence, Much Less Scienter, Against the Jefferies Defendants ............................................................................... 8

          A.     Scienter Should Be Required To Plead a Section 14(a) Claim against Third-Party Advisors ....................................................................... 8

          B.     Plaintiffs Do Not Adequately Plead Negligence by the Jefferies Defendants .................................................................................................... 9

CONCLUSION ........................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (1980) ........................................................9

*In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*, 757 F. Supp. 2d 260 (S.D.N.Y. 2010) ...............................................................................................................4, 8

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 238 F. Supp. 3d 799 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019) ..............................................................................................................2

*Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179 (3d Cir. 1988) ...................................................7

*Jones v. S. Univ.*, No. CV 18-1034-SDD-EWD, 2020 WL 1431722 (M.D. La. Mar. 3, 2020), *report and recommendation adopted*, No. CV 18-1034-SDD-EWD, 2020 WL 1433529 (M.D. La. Mar. 23, 2020), *aff'd*, No. 20-30231, 2020 WL 6735616 (5th Cir. Nov. 13, 2020) ................................................................5

*Lewis v. Byrnes,* 538 F. Supp. 1221 (S.D.N.Y. 1982) .......................................................6

*McMullan v. Cook*, 109 F.3d 765 (5th Cir. 1997) ..........................................................4

*Mendell v. Greenberg*, 612 F. Supp. 1543 (S.D.N.Y. 1985), *aff'd in part*, 927 F.2d 667 (2d Cir. 1990), *amended*, 938 F.2d 1528 (2d Cir. 1990) .....................................6

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) ...................................................................8

*N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267 (1974) ......................................8, 9

*Old Time Enter., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213 (5th Cir. 1989) ...................................4

*SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C. Cir. 1980) ..........................................6

*SEC v. Hurgin*, No. 19-CV-5705 (MKV), 2020 WL 5350536 (S.D.N.Y. Sept. 4, 2020) ...............................................................................................................................4

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794 (5th Cir. 2012) .........................................................................................5

*Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987 (2d Cir. 1988) .......................................9

*Yamamoto v. Omiya*, 564 F.2d 1319 (9th Cir. 1977) ........................................................6

22665037_1

**Statutes and Rules**

15 U.S.C. § 77b(a)(11).............................................................................................................2

15 U.S.C. § 77k......................................................................................................................3

15 U.S.C. § 78n......................................................................................................................3

Exchange Act § 10(b) .............................................................................................................1

Exchange Act § 14(a)...................................................................................................... *passim*

Securities Act of 1933 § 11.....................................................................................................1

Fed. R. Civ. P.10(c) ...............................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................................4

iii

The Jefferies Defendants[1] respectfully submit this Reply in response to Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss (ECF No. 56) ("Opposition" or "Opp."). Pursuant to Federal Rule of Civil Procedure 10(c), the Jefferies Defendants also join, to the extent applicable, the concurrently filed Reply of the Waitr Defendants (the "Waitr Reply").

## PRELIMINARY STATEMENT

Although Plaintiffs' Section 14(a) claim, which is the only claim asserted against the Jefferies Defendants, should be dismissed as to all Defendants for all of the reasons explained in the Waitr Reply, the claims against the Jefferies Defendants fail for additional reasons made even more clear by Plaintiffs' own Opposition.

The Opposition merely repeats the same conclusory and otherwise inadequate allegations contained in the Complaint. The Opposition also fundamentally mischaracterizes and misunderstands (1) the role of the Jefferies Defendants, which was clearly disclosed and delineated in the Proxy Statement, and (2) the function and application of Section 14(a) of the Exchange Act, which is the only claim asserted against the Jefferies Defendants. The Jefferies Defendants are not sued for fraud under Section 10(b) of the Exchange Act, nor are they sued as securities "underwriters" pursuant to Section 11 of the Securities Act of 1933. Consequently, despite all of the ink that Plaintiffs spill regarding the Jefferies Defendants' purported roles and responsibilities, the Opposition misses the point. Section 14(a) is a narrow statutory provision aimed exclusively at the solicitation of proxies in connection with a vote of public company shareholders. As a matter of law, the Jefferies Defendants simply do not fit in that box.

*First*, Plaintiffs do not seriously allege that the Jefferies Defendants solicited votes in

---

[1] Capitalized terms used but not defined herein shall have the meaning as defined in the opening briefs submitted in connection with defendants' motions to dismiss (*i.e.*, ECF Nos. 45-1 (the "Jefferies MTD") and 47-1 (the "Waitr MTD", and together, the "Opening Briefs").

1

favor of the Waitr Acquisition, and their arguments that the Jefferies Defendants allowed their names to be used to solicit proxies is refuted by the very disclosures upon which Plaintiffs purport to sue. *Second*, the alleged misstatements at issue are not alleged to have had anything to do with the Jefferies Defendants' alleged roles in the transaction. *Third*, the Complaint does not allege that the Jefferies Defendants acted with scienter, which is required by logical extension of Fifth Circuit case law, particularly for a claim against a secondary actor. *Fourth*, the Complaint fails to explain how the Jefferies Defendants could be liable even under a negligence standard. Each of these failures independently requires the dismissal of the Jefferies Defendants, on top of the grounds to dismiss the Section 14(a) claim as to all Defendants.

## ARGUMENT

### I.     The Jefferies Defendants Were Not "Underwriters" for the Waitr Acquisition

The Opposition to the Jefferies' Defendants' arguments centers on a demonstrably incorrect and—in any event—irrelevant legal conclusion:  that the Jefferies Defendants were "underwriters" in connection with Landcadia's acquisition of Waitr.  Plaintiffs insist this is a "factual argument" not suitable for resolution pleading stage.  Opp. at 27.  But properly understood, it is a legal conclusion, and an indisputably and irrelevant incorrect one at that.

To begin with, the securities laws codify the definition of an underwriter, a role that is established and defined by the Securities Act of 1933 (the "Securities Act"), which includes specific causes of action directed at underwriters with respect to registered offerings of securities.  15 U.S.C. § 77b(a)(11).[2]  *But Plaintiffs do not assert any Securities Act claims*

---

[2] "The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking."  15 U.S.C. § 77b(a)(11); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 238 F. Supp. 3d 799, 829 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019) ("[A] statutory underwriter is defined functionally on the basis of its relationship to a particular offering" of securities.).

2

22665037_1

*against the Jefferies Defendants*.  Nor could they with respect to the subject matter of their case—Landcadia's acquisition of Waitr—which was a merger, not a registered offering of securities.  *See, e.g.*, Proxy Statement at 3; Opp. at 4; AC ¶ 19.  Plaintiffs assert only claims under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act")—a statutory provision that does not address securities offerings or underwriters at all; it addresses only the solicitation of shareholder votes on corporate actions such as mergers.  15 U.S. Code § 78n.  Nor are Plaintiffs themselves even asserting claims against the Jefferies Defendants in Plaintiffs' capacities as purchasers of securities pursuant to a registered offering as would be required for underwriter liability.  *See* 15 U.S. Code § 77k.  Rather, as Plaintiffs' Opposition reconfirms, Plaintiffs are suing the Jefferies Defendants exclusively with respect to disclosures made in the Proxy Statement in connection with the shareholder vote on the Waitr Acquisition.  *See*, *e.g.*, Opp. at 27-28.  Plaintiffs' attempt to "mix and match" duties across statutes (including one not even invoked in this action) to concoct a special duty on behalf of the Jefferies Defendants is as misguided as it is unsupported by *any* case law.[3]

## II.    The Jefferies Defendants Are Not Proper Section 14(a) Defendants

Plaintiffs' Opposition fails to show that either of the Jefferies Defendants is a proper defendant under Section 14(a).  To be liable under Section 14(a), a defendant must have either solicited proxies or permitted the use of its name in a manner having a sufficiently "substantial connection" to the solicitation of shareholder votes.  Jefferies MTD at 8.  The Jefferies Defendants are not—and could not be—properly alleged to have engaged in either of those

---

[3] Similarly muddled is Plaintiffs' irrelevant reference (Opp. at 4) to the fact that JLLC acted as an underwriter of Landcadia's 2016 initial public offering, a transaction not at issue in this litigation and as to which no disclosure violation is alleged.  The mere fact that, as is customary in SPAC transactions, a portion of JLLC's fees for that work were deferred and conditional upon the completion of the acquisition of a then-unknown target (Proxy Statement at 64) obviously does not transform JLLC into an "underwriter" of the acquisition—a concept that simply does not exist under the securities laws.

3

activities.

### A.    The Jefferies Defendants Did Not Solicit Proxies

Plaintiffs effectively concede that financial advisors—like JLLC—are generally excluded from the regulatory definition of parties who properly can be classified as having solicited proxies. Opp. at 27. They nevertheless claim that the Jefferies Defendants should not be dismissed because the applicable regulations potentially permit a narrow universe of advisors who perform duties beyond customary advisory work to be treated as soliciting parties. Plaintiffs then leap from that limited potentiality to the conclusion that there is "necessarily" a factual dispute about whether the Jefferies Defendants fit that exception. *Id.* But the mere existence of an exception does not mean that it is presumed to apply to a defendant. It must be alleged on the basis of well-pleaded facts, and here it is not. *Old Time Enter., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir. 1989) (plaintiffs bear the burden of pleading all elements of their claims); *McMullan v. Cook*, 109 F.3d 765 (5th Cir. 1997) (same). Moreover, in deciding FRCP 12(b)(6) motions, courts routinely assess whether a complaint properly names a Section 14(a) defendant by evaluating the adequacy of well-pleaded facts in the complaint and the contents of the solicitation materials themselves. *See*, *e.g.*, *In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*, 757 F. Supp. 2d 260, 293 (S.D.N.Y. 2010); *SEC v. Hurgin*, No. 19-CV-5705 (MKV), 2020 WL 5350536, at *12 (S.D.N.Y. Sept. 4, 2020).

A review of the Complaint and the Proxy Statement here make plain that neither JLLC nor JFG is properly alleged to have solicited shareholder votes. Leaving aside Plaintiffs' legally and factually unsupported contention that the Jefferies Defendants were "underwriters" (which has nothing to do with proxy solicitation, let alone a Section 14(a) claim), the only fact that Plaintiffs cite about JLLC's supposed involvement in the solicitation of proxies is boilerplate cautionary language from a set of pre-proxy solicitation materials (*e.g.*, investor communications

4

and earnings releases) circulated prior to distribution of the final Proxy Statement.  But these materials stated only that "Jefferies LLC *may* be deemed [a] participant[] in the solicitation." *See* Opp. at 28 (emphasis added).  This language, read fairly, merely warns that JLLC might be viewed by others as a participant, not that JLLC believed or agreed it was soliciting proxies. Conditional words such as a "may" do not excuse Plaintiffs' from pleading facts suggesting that the Jefferies Defendants actually "did" solicit proxies.  And even if the "may" language somehow were relevant (which it is not), the *final* Proxy Statement, which is the document upon which Plaintiffs' do and must rely in pursuing a Section 14(a) claim, made it abundantly clear that JLLC was not soliciting proxies.  The proxy card itself—the official legal document by which the solicitation occurs—unambiguously identifies the Landcadia board of directors, and only the directors, as the parties soliciting shareholder votes.  Proxy Card at 1, ECF No. 47-2 at 480-481.

Plaintiffs' half-hearted allegations as to JFG fare no better.  Plaintiffs appear to suggest that, because the Proxy Statement supposedly contained "no explanation of" JFG's role, the Court should simply assume that being an early investor in (or sponsor of) Landcadia means that JFG solicited proxies for the Waitr Acquisition under the securities laws.  Opp. at 27.  Plaintiffs offer no support for this assumption, which would impermissibly relieve them of their duty to plead facts in support of their claim.[4]

---

[4] Plaintiffs also offer an even more half-hearted and unsupported argument that JFG might have financed the proxy solicitation (Opp. at 27 n.12) but allege no facts to support any such assertion in the Complaint.  Amendment by briefing is not permitted.  *See Jones v. S. Univ.*, No. CV 18-1034-SDD-EWD, 2020 WL 1431722, at *8 n.102 (M.D. La. Mar. 3, 2020), *report and recommendation adopted*, No. CV 18-1034-SDD-EWD, 2020 WL 1433529 (M.D. La. Mar. 23, 2020), *aff'd*, No. 20-30231, 2020 WL 6735616 (5th Cir. Nov. 13, 2020) ("…a court should not consider allegations that appear for the first time in plaintiffs' briefing.") (citing *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012)).

22665037_1

**B.       References to "Jefferies" Do Not Trigger Liability**

Plaintiffs' fallback argument—that because the word "Jefferies" appears in the Proxy Statement the Jefferies Defendants *a fortiori* had a substantial connection to the solicitation sufficient to impose liability under Section 14(a)—finds no support in the law.  Opp. at 28-31. Plaintiffs simplistically rely on the number of times Jefferies is mentioned in the proxy materials but cite absolutely no legal authority for the notion that multiple references establish the required "substantial connection" necessary to establish Section 14(a) liability for a party that has not solicited votes.[5]  Lots of words and names appear repeatedly in the Proxy Statement—such as Luxor Capital, Waitr's lender, whose name appears 50 times.  No one could or would suggest that this makes the lender a proper Section 14(a) defendant.

Plaintiffs rely on dicta from cases such as *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C. Cir. 1980) and *Lewis v. Byrnes,* 538 F. Supp. 1221 (S.D.N.Y. 1982) to make a strained argument that any time a named entity has any continuing relationship with the soliciting company, the named entity can be held liable.  Opp. at 28-31.  But the actual holding of those cases, and others like them, is that where a named entity is acquiring control of the issuer, the named entity may be liable under Section 14(a).[6]  Plaintiffs do not and cannot assert in good faith

---

[5] There is good reason for the lack of authority for a "name count" theory of Section 14(a) liability, given that lengthy proxy materials may make numerous references to entities that cannot reasonably provide a basis for liability.  For example, the Proxy Statement for the Waitr Acquisition was over 300 pages long (not including attachments) and contained numerous redundant references to the Jefferies Defendants.  *See*, *e.g.*, Proxy Statement at F-5, 2 (identifying JFG as an early investor in Landcadia); Proxy Statement at 220, 233, F-11, F-26 (identifying JLLC as an affiliate of JFG); Proxy Statement at 33, 64, 167, 171 (identifying Handler as CEO of JFG and JLLC).

[6] *See*, *e.g.*, *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 69 (D.C. Cir. 1980) ("substantial connection" was present where named defendant's role was "pivotal" because shareholders were "being asked to transfer control of the company to him"); *Yamamoto v. Omiya*, 564 F.2d 1319, 1322–23 (9th Cir. 1977) (use of name liability not proper for mere buyer of assets from corporation where buyer would have no ongoing relationship with soliciting company or its stockholders following the transaction); *Mendell v. Greenberg*, 612 F. Supp. 1543, 1552 (S.D.N.Y. 1985), *aff'd in part*, 927 F.2d 667 (2d Cir. 1990), *amended*, 938 F.2d 1528 (2d Cir. 1990) (substantial connection exists only where named defendant will enjoy a direct benefit such as "by taking control of the corporation or becoming a director" and rejecting use of name liability against defendant not acquiring such control); *Lewis v. Byrnes*, 538 F. Supp. 1221, 1224 (S.D.N.Y. 1982) (citing with approval the relevance of the acquisition of control in *Falstaff Brewing* and finding a named defendant had a substantial connection only where the named defendant was acquiring

22665037_1

that either Jefferies Defendant acquired control of Waitr.  Instead, they resort to again referring to JLLC's deferred underwriting fees earned from a prior transaction, JFG's diluted minority interest in Waitr, and other ephemera unrelated to the question at hand.  Opp. at 29-31.  Plaintiffs identify no authority whatsoever to support the notion that these scattered and extraneous allegations establish a "substantial connection" sufficient to trigger Section 14(a) liability.

Plaintiffs offer similarly scant and inapposite authority in support of their argument that merely serving as a financial advisor to the acquiring company is itself sufficient to trigger Section 14(a) liability.  Plaintiffs cite only to *Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179, 184-85 (3d Cir. 1988), a single decision from another Circuit in which the named defendant broker-dealer issued a *fairness opinion*—which the Jefferies Defendants undisputedly did not do here—that was at the center of the alleged misstatements.  Opp. at 34 n.19.  In so arguing, Plaintiffs would have this Court ignore significant precedent holding that merely serving as a financial advisor does not render a defendant responsible for all misstatements in a proxy.  *See* Jefferies MTD at 11-12.[7]  Plaintiffs' "automatic" rule that all financial advisors are subject to Section 14(a) liability would not only impermissibly rewrite the statute but also conflict directly with the statute's accompanying regulations, which expressly exclude financial advisors and other professionals from the default definition of soliciting entities.  Jefferies MTD at 10-13. The Opposition does not even attempt to respond to this argument because there is no cogent response.  Nor do Plaintiffs attempt to reconcile their arguments with precedent holding that parties named in a proxy statement can only be liable for statements related to the specific work

a directorship and substantial shareholdings in the merged entity that would allow the defendant to implement his own "plans" over the newly formed entity).

[7] Moreover, the Complaint does not allege that JLLC's advisory work is connected with anything false or misleading.  The Proxy Statement expressly stated that JLLC was *not* responsible for conducting due diligence into the matters that Plaintiffs claim were misrepresented.  *See* Proxy Statement at 129-31.

7

22665037_1

they performed or reviewed. *Compare In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 757 F. Supp. 2d 260, 331 (S.D.N.Y. 2010) (defendant not liable under "use of name" theory for statements unrelated to work performed).

### III.   Plaintiffs Fail Adequately To Allege Negligence, Much Less Scienter, Against the Jefferies Defendants

#### A.   Scienter Should Be Required To Plead a Section 14(a) Claim against Third-Party Advisors

Plaintiffs concede that they have not alleged that the Jefferies Defendants acted with scienter. Opp. at 31-33. As explained in the Opening Briefs and Waitr Reply, that should be dispositive of Plaintiffs' Section 14(a) claim against all Defendants. But even if the Court concludes otherwise, the Court should at a minimum follow the line of authority holding that scienter is required for a Section 14(a) claim against an advisor. Waitr MTD at 24-26; Jefferies MTD at 15-16.

Plaintiffs' primary argument in the Opposition appears to be that scienter should never be required for purported "underwriters." Opp. at 33-34. But this, as explained in Section II.A above, is a concocted and blatantly erroneous use of a legal term contained in the federal securities laws. The Jefferies Defendants, as a matter of both law and well-disclosed fact, were not underwriters of the Waitr Acquisition, and Plaintiffs do not even invoke the statute governing underwriter liability.

Plaintiffs also urge the Court to disregard the well-reasoned rulings cited by Defendants and instead attempt to use a handful of non-controlling decisions that have rejected scienter as a required element for Section 14(a) claims against third-party advisors. Opp. at 31-32. The Jefferies Defendants respectfully submit that the better-reasoned rulings are those that take into account the history and evident intent of the statute. *See Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) ("Legislative history…is meant to clear up ambiguity…"); *N.L.R.B. v. Bell*

8

*Aerospace Co. Div. of Textron*, 416 U.S. 267, 274 (1974) (noting the "importance of legislative history" in interpreting statutes).  The Sixth Circuit's decision in *Adams v. Standard Knitting Mills, Inc.* explains in detail that the legislative history overwhelmingly supports the conclusion that Congress intended Section 14(a) to be a remedy against fraudulent proxy solicitations and, thus, that scienter should be a required element, particularly for advisors.  623 F.2d 422, 428–30 (1980); Waitr MTD at 24-26.

**B.      Plaintiffs Do Not Adequately Plead Negligence by the Jefferies Defendants**

Plaintiffs' primary theory of negligence against the Jefferies Defendants turns, once again, on the legally and factually erroneous notion that they acted as "underwriters" on the Waitr Acquisition.  Opp. at 35.  Plaintiffs contend that, accordingly, the Jefferies Defendants "had a duty to conduct an adequate and detailed 'due diligence investigation.'"  *Id*.  But for the reasons discussed above, the Jefferies Defendants, as a matter of law, were not underwriters on the Waitr Acquisition.  And regardless, the Proxy Statement made it abundantly clear that JLLC, the entity that Plaintiffs appear to be suggesting was an underwriter, was not asked to perform due diligence on Waitr's revenues or operations, which are the only matters alleged to have been misstated.  Proxy Statement at 129.

For the same reason, Plaintiffs' heavy reliance on the holding of *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988) is misplaced as to the Jefferies Defendants.  In *Wilson*, the court required fewer factual allegations to adequately plead negligence by "corporate insiders," who had extensive access to internal information about the company and its finances.  *Id*.  Here, by contrast, as made clear by the very disclosures upon which Plaintiffs purport to sue, JLLC was an outside advisor not asked to conduct due diligence on Waitr's revenue reporting and projections.  Proxy Statement at 129.  Moreover, Plaintiffs do not allege that JLLC's role, or the information it provided, if any, was misrepresented or inaccurate.  *See* ECF No. 47-2,

9

22665037_1

Appendix A, Nos. 1-8 (identifying eight allegedly false statements, concerning topics such as Waitr's growth potential (No. 1), 15% take rate (No. 3); and proprietary technology (No. 6), none of which relate to the work performed by JLLC).  Plaintiffs' reliance on conclusory allegations and invocation of inapt case law are not sufficient to plead negligence, even if scienter were not required.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Opening Briefs and Waitr Reply, the Court should dismiss the claim asserted against the Jefferies Defendants with prejudice.

10

22665037_1

Respectfully submitted:


 /S/ CLAIRE ELIZABETH JUNEAU
Michael R. Phillips (#21020)
Erin Lutkewitte Kilgore (#31244)
Claire Elizabeth Juneau (#33209)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras St., Suite 3600
New Orleans, LA 70112
(504) 585-3050

-and-

**SHEARMAN & STERLING LLP**
Adam S. Hakki *(admitted pro hac vice)*
599 Lexington Avenue
New York, New York 10022
Tel:  (212) 848-4000
ahakki@shearman.com

K. Mallory Brennan *(admitted pro hac vice)*
800 Capitol Street, Suite 2200
Houston, Texas 77002
Tel:  (713) 354-4847
mallory.brennan@shearman.com


*Attorneys for Defendants Jefferies Financial Group, Inc., and Jefferies, LLC*

11

22665037_1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 8th day of February, 2021.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system and/or U.S. Mail.

/s/Claire Elizabeth Juneau
Claire Elizabeth Juneau

22665037_1