**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

|  |  |
|---|---|
| WALTER WELCH, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, <br><br> Defendants. | CIVIL ACTION NO. 2:19-cv-01260-TAD-KK <br><br> JUDGE: Terry A. Doughty <br><br> MAGISTRATE JUDGE: Kathleen Kay |

**DEFENDANTS CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO,
TILMAN J. FERTITTA, RICHARD HANDLER, AND WAITR HOLDINGS, INC. F/K/A
LANDCADIA HOLDINGS, INC.'S REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     PLAINTIFFS' SECTION 10(B) AND RULE 10B-5 CLAIM FAILS TO PLEAD MATERIAL MISREPRESENTATIONS OR SCIENTER. ......................2

     A.     Plaintiffs Fail to Allege Any Actionable Misrepresentation or Omission ..................................................................................................2

          1.     Most Statements Identified by Plaintiffs are Non-Actionable Puffery ...........................................................2

          2.     The AC Does Not Plead False Statements of Fact .........................3

          3.     Conclusory, Non-Specific Allegations Regarding Waitr's Financials and Certifications Do Not State a Claim .......................6

     B.     Even Taken Together, Plaintiffs' Allegations are Insufficient to Give Rise to the Requisite Strong Inference of Scienter .............................7

II.     PLAINTIFFS' SECTION 14(A) CLAIM FAILS.....................................................8

     A.     Plaintiffs Fail to Allege Any Actionable Misstatement in the Solicitation ..................................................................................................8

     B.     Plaintiffs Do Not Allege Scienter, Which Should Be Required To Plead a Section 14(a) Claim.........................................................................9

     C.     Plaintiffs Do Not Adequately Plead Negligence ......................................11

CONCLUSION.....................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Standard Knitting Mills, Inc.*,
  623 F.2d 422 (6th Cir. 1980), *cert. denied*, 449 U.S. 1067 (1980)..........................................10

*Beck v. Dobrowski*,
  559 F.3d 680 (7th Cir. 2009) ...............................................................................................11

*Birdwell v. Skeen*,
  983 F.2d 1332 (5th Cir. 1993) .............................................................................................10

*In re BP PLC Sec. Litig.*,
  843 F. Supp. 2d 767 (S.D. Tex. 2012) ...................................................................................3

*Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)...................................................................................................8

*Callinan v. Lexicon Pharms., Inc.*,
  2020 U.S. Dist. LEXIS 146580 (S.D. Tex. Aug. 14, 2020).....................................................4

*In re Capstead Mortg. Corp. Sec. Litig.*,
  258 F. Supp. 2d 533 (N.D. Tex. 2003) ...................................................................................6

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.*,
  2004 U.S. Dist. LEXIS 33913 (E.D. La. Apr. 5, 2004) ...........................................................7

*Collmer v. U.S. Liquids, Inc.*,
  268 F. Supp. 2d 718 (S.D. Tex. 2003) ...................................................................................8

*In re Comshare, Inc. Sec. Litig.*,
  183 F.3d 542 (6th Cir. 1999) .................................................................................................6

*In re Exxon Mobil Corp. Sec. Litig.*,
  387 F. Supp. 2d 407 (D.N.J. 2005) ........................................................................................8

*Guangyi Xu v. ChinaCache Int'l Holdings, Ltd.*,
  2017 U.S. Dist. LEXIS 4235 (C.D. Cal. Jan. 9, 2017) ............................................................5

*Hall v. Rent-A-Ctr., Inc.*,
  2017 U.S. Dist. LEXIS 205959 (E.D. Tex. Oct. 19, 2017) ......................................................7

*Hopson v. MetroPCS Communs., Inc.*,
  2011 U.S. Dist. LEXIS 47177 (N.D. Tex. Mar. 25, 2011) .......................................................2

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ...................................................................................4

*Kaltman v. Key Energy Servs., Inc.*,
447 F. Supp. 2d 648 (W.D. Tex. 2006)....................................................................3

*Krieger v. Atheros Commc'ns, Inc.*,
2012 U.S. Dist. LEXIS 74214 (N.D. Cal. May 29, 2012) .......................................12

*Kurtzman v. Compaq Computer Corp.*,
2002 U.S. Dist. LEXIS 26569 (S.D. Tex. Mar. 30, 2002)....................................2, 5

*Little Gem Life Scis., LLC v. Orphan Med., Inc.*,
537 F.3d 913 (8th Cir. 2008) .................................................................................12

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ...................................................................................3

*In re McKesson HBOC Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................11, 12

*Mortensen v. AmeriCredit Corp.*,
123 F. Supp. 2d 1018 (N.D. Tex. 2000) ..................................................................6

*In re OCA, Inc. Sec. & Deriv. Litig.*,
2006 U.S. Dist. LEXIS 90854 (E.D. La. Dec. 14, 2006)..........................................6

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)..................................................................................................9

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015).......................................................................3

*Plumbers & Pipefitters Nat. Pension Fund v. Davis*,
2020 U.S. Dist. LEXIS 66016 (S.D.N.Y. Apr. 14, 2020)..........................................6

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
777 F. App'x 726 (5th Cir. 2019) ...........................................................................10

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ..............................................................................4, 7

*SEC v. Hurgin*,
2020 U.S. Dist. LEXIS 162447 (S.D.N.Y. Sep. 4, 2020).......................................12

*SEC v. Shanahan*,
646 F.3d 536 (8th Cir. 2011) .................................................................................12

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
  365 F.3d 353 (5th Cir. 2004) ..............................................................................2, 7

*Stone v. Life Partners Holdings, Inc.*,
  26 F. Supp. 3d 575 (W.D. Tex. 2014)....................................................................3, 4

*Tanaskovic v. Realogy Holdings Corp.*,
  2021 U.S. Dist. LEXIS 11090 (D.N.J. Jan. 21, 2021) .............................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................................7, 11

*Virginia Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991) ..............................................................................................9

*Walker v. Rent-A-Center*,
  2005 U.S. Dist. LEXIS 63595 (E.D. Tex. July 25, 2005)........................................6

*In re Willis Towers Watson PLC Proxy Litig.*,
  439 F. Supp. 3d 704 (E.D. Va. 2020) ...................................................................10

**Statutes**

15 U.S.C. § 77k(a) ..................................................................................................10

15 U.S.C. § 78j(b)...........................................................................................1, 2, 10

15 U.S.C. § 78u-4(b)(2)(a)......................................................................................11

15 U.S.C. § 78u-5(c)..................................................................................................9

15 U.S.C. § 78t..................................................................................1, 2, 9, 10, 11

**Other Authorities**

17 C.F.R. § 240.10b-5.............................................................................................10

17 C.F.R. § 240.14a-9(a) .........................................................................................10

Federal Rules Rule 8(a) ...........................................................................................12

Rule 10B-5 ...........................................................................................................2, 10

Rule 14a-9 ..............................................................................................................10

iv

**<u>INTRODUCTION</u>**

Plaintiffs' Opposition cannot change the reality that the Amended Complaint ("AC") is merely buyers' remorse writ large. No one disputes Waitr Holdings, Inc. did not succeed as its founders and early investors hoped. But dashed hopes are not the stuff of securities fraud. To state a claim under the Securities and Exchange Act of 1934, whether under Section 10(b) or 14(a), Plaintiffs must allege much more: they must allege, with specificity, a misrepresentation or omission of material fact made to mislead—that is, lies about specific and important facts by defendants who knew but withheld the truth. The AC utterly fails to allege such facts, and the Opposition does not cure that failure.

Instead, the Opposition regurgitates vague and conclusory allegations that Defendants were overly enthusiastic about Waitr's prospects—the sustainability of its pricing, the efficiency of its labor model, the competitive strength of its software, the value of acquiring Bite Squad, and the company's anticipated growth. But Plaintiffs' only reason for claiming these statements were misrepresentations derives from the clarity of hindsight—in other words, that Waitr's business model did not succeed, and Waitr made changes as a result. That does not amount to securities fraud. What the AC does not allege, and what the Opposition cannot support, is that any Defendant misrepresented or misstated specific facts to mislead investors.

The myriad cases Plaintiffs cite are inapposite for this reason. Those cases invariably involve allegations of specific bad acts: someone cooked the books; or knew the sales data said one thing but told investors it said another; or violated specific GAAP rules to hide bad news; or painted a rosy picture of a company's devotion to safety or ethics, while knowing the company was taking extraordinary risks. No such facts are alleged here, for good reason: none happened.

To the contrary, investors had full disclosure of Waitr's business model, financial performance, and risks, from which they were free to draw their own conclusions and to make their own decisions. Plaintiffs may be disappointed that Defendants' enthusiasm for the business did not come to fruition, but securities laws are not a guarantee of performance, and disappointing investors is not securities fraud.

Because the AC fails to plead actionable misstatements or the requisite state of mind, the Court should dismiss Plaintiffs' claims with prejudice.

## ARGUMENT

**I.    PLAINTIFFS' SECTION 10(B) AND RULE 10B-5 CLAIM FAILS TO PLEAD MATERIAL MISREPRESENTATIONS OR SCIENTER.[1]**

### A.    Plaintiffs Fail to Allege Any Actionable Misrepresentation or Omission

To state a claim under Section 10(b) and Rule 10b-5, Plaintiffs must plead, with particularity, a misrepresentation or omission of material fact. *See Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 362-63 (5th Cir. 2004). The AC fails this threshold requirement because it challenges not the accuracy of the *facts* disclosed but merely Defendants' *interpretation* of those facts. Neither the Opposition's insistence on the inaccuracy of those interpretations nor its citation to inapposite case law cures that fundamental pleading deficiency.

#### 1.    *Most Statements Identified by Plaintiffs are Non-Actionable Puffery*

Most statements alleged in the AC are not misrepresentations of fact but merely broad statements of corporate optimism that courts uniformly regard as non-actionable "puffery." Such expressions, without more, are immaterial as a matter of law and do not state a fraud claim. *See, e.g.*, *Southland*, 365 F.3d at 372. Statements about Waitr being "positioned well to take advantage of" market and expansion opportunities, for example, are clear corporate puffery. *Compare* AC ¶ 98 *with Hopson v. MetroPCS Communs., Inc.*, 2011 U.S. Dist. LEXIS 47177, at *70-72 (N.D. Tex. Mar. 25, 2011) ("defendants' statements portraying a [company as] 'strong,' 'resilient,' or 'perfectly positioned,'" are immaterial puffery). Similarly, statements that an acquisition integration is "moving along nicely" are the sort that no reasonable investor would rely on. *Compare* AC ¶ 124 *with Kurtzman v. Compaq Computer Corp.*, 2002 U.S. Dist. LEXIS 26569, at *55-64 (S.D. Tex. Mar. 30, 2002) ("[V]ague statements . . . about the integration of [an acquired company] . . . are mere corporate puffery . . . .").

---

[1] Plaintiffs' Section 20(a) claim fails for these same reasons. *See Southland*, 365 F.3d 353 at 383 (no control person liability without primary violation under Section 10(b) or Rule 10b-5).

Notwithstanding Plaintiffs' attempts to characterize such statements as "objectively verifiable" and, therefore, not puffery, Opp. at 16-17, they are not actionable without allegations of specific contrary facts known but withheld. The cases Plaintiffs cite are distinguishable for that reason—they each allege real fraud, *i.e.*, that defendants knowingly made statements contradicted by *specific* concealed facts. *See, e.g.*, *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 586-95 (W.D. Tex. 2014) (failure to disclose "departure from the industry standard" rendered statements about product "strength" misleading); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 249 & n.14 (5th Cir. 2009) (statements misleading by "discuss[ing] the very specific benefits" while omitting "known severe risks"); *In re BP PLC Sec. Litig.*, 843 F. Supp. 2d 767, 757-59 (S.D. Tex. 2012) (Deepwater Horizon accident called into question whether BP implemented represented process safety reforms); *Kaltman v. Key Energy Servs., Inc.*, 447 F. Supp. 2d 648, 652-53, 660-62 (W.D. Tex. 2006) (statements company was "well positioned" actionable in context of inflated cash flow and earnings); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (repeated statements about "general integrity and ethical soundness" used to further "concealment of the unlawful bribery scheme" were actionable).

Plaintiffs do not allege similarly verifiably false statements here. Instead, they use hindsight to argue optimistic statements were fraudulent, even when no known contrary fact was concealed. *See* Opp. at 16-17 (citing AC ¶ 100 ("advantage" of Waitr's labor model); *id.* ¶ 108 ("[Bite Squad] acquisition will help us drive additional growth"); *id.* ¶ 124 (Bite Squad integration "moving along nicely"). But optimism, without more, is not securities fraud, and the AC does not allege the more. That alone justifies dismissal. *See* Opening Br. at 13-14, 22-23.

### 2.    *The AC Does Not Plead False Statements of Fact*

Plaintiffs insist the AC addresses five topics on which investors were supposedly misled: the company's pricing model, labor model, technology, Bite Squad acquisition, and growth prospects. Opp. at 8-15. But the AC includes no particularized allegation of falsity related to any of these topics. Instead, all either were true or otherwise non-actionable puffery, opinion, or forward-looking statements. *See* Opening Br. at 9-14. This warrants dismissal. *See, e.g.*,

3

*Tanaskovic v. Realogy Holdings Corp.*, 2021 U.S. Dist. LEXIS 11090 (D.N.J. Jan. 21, 2021).

With respect to Waitr's pricing model, for example, Plaintiffs allege only that the 15% take rate was "unsustainable," Opp. at 8-9—not that Waitr charged more than 15% when the statements were made or knew it would raise rates in the future. Indeed, Plaintiffs allege Waitr charged 15% until the tail end of the class period, when it raised rates (and promptly disclosed that fact). AC ¶¶ 190-91, 49, 150-52.[2] Waitr never told investors its 15% rate was sustainable under all conditions or ensured profitability, nor suggested rates could be successfully raised in the future. To the contrary, investors were warned of these very risks.[3]

That its financial performance later caused Waitr to raise the take rate does not mean Defendants lied when they touted the perceived advantages of undercutting competitor pricing. It is not, as Plaintiffs suggest, Opp. at 10, that Defendants are hiding behind the literal truth. Unlike in *Stone*, 26 F. Supp. 3d at 586-89, the AC does not identify any contrary fact, financial or otherwise, Defendants hid or lied about. *See Callinan v. Lexicon Pharms., Inc.*, 2020 U.S. Dist. LEXIS 146580, at *44-45 (S.D. Tex. Aug. 14, 2020) (granting motion to dismiss and distinguishing *Stone* as involving "statements . . . contradicted by information contained in specifically identified . . . reports").[4] Plaintiffs simply assail Defendants' interpretation of the company's anticipated financial performance.

The allegations about Waitr's labor model are similarly deficient. Statements regarding the perceived "advantage" of the "fixed cost per hour" with W-2 employees, smaller driver corps, and uniformed drivers as "enhanc[ing] the quality of the experience for both restaurants

---

[2] The contention that this raises a premature fact question, Opp. at 9-10, is a curious one, given that the AC itself pleads these facts.

[3] AC ¶ 130 (Waitr was not yet profitable and would continue to pursue growth over profitability); Proxy at 189 (Waitr had frequently changed pricing model and could be required to do so again in the future).

[4] Other cases Plaintiffs cite actually support Defendants. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 868 (5th Cir. 2003) (dismissing for failure to plead misstatements or scienter and rejecting "hindsight assessment"); *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541-42 (5th Cir. 2008) (dismissing because no actionable omission).

and consumers," Opp. at 11, do not identify any actual fact that was misrepresented or omitted. That Waitr's new CEO offered his (post-class-period) opinion that the "driver model [] could never work," Opp. at 11, is neither surprising nor evidence of prior fraud. All statements about Waitr's workforce were true when made, and the failure of anticipated efficiencies or branding advantages to pan out as expected does not amount to securities fraud. *See, e.g.*, *Guangyi Xu v. ChinaCache Int'l Holdings, Ltd.*, 2017 U.S. Dist. LEXIS 4235, at *24 (C.D. Cal. Jan. 9, 2017) (claims of being "more efficient" too vague to be actionable).

The allegations regarding Waitr's technology platform also fail to identify any purportedly false fact. Instead, the AC merely bemoans that the partnership with Olo showed Waitr "was not technologically competitive . . . ." Opp. at 12. That Waitr entered into a technology-related partnership does not, however, establish that earlier statements were misrepresentations. In fact, Waitr issued cautionary statements on the precise issues Plaintiffs raise, acknowledging that the Company "face[d] substantial competition in technology innovation and distribution" and its inability "to continue to innovate and provide technology desirable to diners and restaurants" could cause the business to "materially suffer." Proxy at 55.

Nor does the Opposition identify a single misstatement about the Bite Squad acquisition. Opp. at 12-13. Optimistic opinions about the anticipated success of the acquisition, such as that the integration was "moving along nicely," are just that: opinions. *Compare Kurtzman*, 2002 U.S. Dist. LEXIS 26569, at *55-64 *with* AC ¶ 124. That Defendants later decided the two platforms were not sufficiently compatible to be completely integrated does not retroactively render earlier statements about the integration goals misleading. Nor does the vague assertion that the "acquisition was conducted with rushed or inadequate due diligence," Opp. at 12, identify any particular false or misleading statement about the due diligence process.

The final category to which Plaintiffs point—that Defendants "regularly and falsely hyped Waitr's growth and growth plans," Opp. at 13—also lacks any particularized allegation of falsity. The AC does not allege Waitr had not experienced substantial growth or that its backers did not believe such growth could continue. Instead, Plaintiffs allege fraud—without any fact

revealing contrary growth statistics or known adverse trends—merely because those aspirations did not succeed. Plaintiffs do not allege Waitr hid the existence of its burgeoning competitors (or the differences in their business models), misstated revenues or expenses, or knowingly inflated projections. Instead, Plaintiffs once again attempt to impose liability for, in the course of fully disclosing accurate financial information to investors, being optimistic about growth potential.[5]

In sum, none of the purportedly false statements in the five categories Plaintiffs identify constitutes an actionable misstatement of fact.

### 3. Conclusory, Non-Specific Allegations Regarding Waitr's Financials and Certifications Do Not State a Claim

The AC's passing conclusory allegations that Waitr's financials were not in accordance with GAAP and its SOX certifications included false statements, Opp. at 14-15, are not enough to rescue Plaintiffs' claims. In fact, Plaintiffs do not dispute that Waitr accurately stated all numbers and financial statements.

A general reference to the failure to follow GAAP is, by itself, insufficient to state a securities fraud claim. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999); *accord Mortensen v. AmeriCredit Corp.*, 123 F. Supp. 2d 1018, 1026 (N.D. Tex. 2000). Rather, plaintiffs must identify *which* GAAP principles were violated, along with particular facts supporting each alleged violation. *Compare Walker v. Rent-A-Center*, 2005 U.S. Dist. LEXIS 63595, at *39 (E.D. Tex. July 25, 2005) (particularity met where plaintiffs pleaded specific facts supporting allegation that defendants acted contrary to GAAP, by inflating earnings via improper deferral of operating expenses) *and In re OCA, Inc. Sec. & Deriv. Litig.*, 2006 U.S. Dist. LEXIS 90854, at *55 (E.D. La. Dec. 14, 2006) (SOX certifications actionable where plaintiffs identified statements as misrepresenting efforts to address prior control failures) *with In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 549-54 (N.D. Tex. 2003) (granting motion to

---

[5] The Opposition misplaces reliance on *Plumbers & Pipefitters Nat. Pension Fund v. Davis*, 2020 U.S. Dist. LEXIS 66016, at *26-30 (S.D.N.Y. Apr. 14, 2020), in which the court considered detailed allegations of a Ponzi-like scheme to inflate growth rates in short-run sales tactics criticized by insiders.  No such allegations are to be found here.

dismiss on only "conclusory allegations" that defendants violated GAAP principles).

Here, Plaintiffs do not dispute Waitr accurately stated its financials and only allege the same misstatements as above. Opp. at 14-15. In so doing, Plaintiffs fail to identify *which* GAAP principle Defendants allegedly violated or *how* the 10-K and 10-Q were allegedly inaccurate, and offer only conclusory statements. Such conclusory allegations cannot state a claim.

**B.     Even Taken Together, Plaintiffs' Allegations are Insufficient to Give Rise to the Requisite Strong Inference of Scienter**

In considering scienter allegations, courts must weigh inferences urged by a plaintiff against "any opposing inference" and "consider plausible, nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 324 (2007). Moreover, scienter must be sufficiently pled as to *each* Defendant—group pleading does not suffice. *Southland*, 365 F.3d at 363-65; *Chiaretti v. Orthodontic Ctrs. of Am., Inc.*, 2004 U.S. Dist. LEXIS 33913, at *5-6 (E.D. La. Apr. 5, 2004). The AC falls far short of these standards.

Taken singly or together, the "circumstantial evidence" Plaintiffs cite, Opp. at 18-22, does not support a strong inference of scienter, much less one as to *each individual* Defendant. *First*, the post-class-period statements by Waitr's current CEO, Mr. Grimstad, are far from an "admission." Rather, Mr. Grimstad's statements simply evidence his belief that his strategy was better. AC ¶¶ 196-97. His statements do not claim—or even imply—that his predecessors engaged in fraud. *Id. Second*, Plaintiffs do not identify any particular diligence Defendants failed to conduct as a result of the purported "[u]rgency" they cite. Opp. at 19. *Third*, the inference Plaintiffs draw from the timing of Mr. Pringle and Mr. Meaux's departures is but sheer speculation. *Compare Rosenzweig*, 332 F.3d at 867 (affirming dismissal for failure to plead scienter where "successive resignations of key officials . . . is more likely probative only of the fact that the company was failing") *with Hall v. Rent-A-Ctr., Inc.*, 2017 U.S. Dist. LEXIS 205959, at *11-13, 102 (E.D. Tex. Oct. 19, 2017) (executive terminations and resignations support inference of scienter when paired with confidential employee witness statements regarding defendants' knowledge). *Fourth*, statements from Confidential Witness 1 do not

7

implicate *any* Defendant. Opp. at 21-22. *Finally*, Mr. Meaux's stock purchases and the ultimate size of the offering were fully disclosed, and Plaintiffs do not explain how a CEO's investment in his company (as opposed to selling stock) evidences an intent to defraud. *See id.* at 22.[6]

In the absence of well-pleaded false statement or omission, the most compelling inference from the AC is not of fraud, but of a hopeful company that failed to meet expectations.

## II.   PLAINTIFFS' SECTION 14(A) CLAIM FAILS

The Opposition grounds Plaintiffs' Section 14(a) claim on the notion that Landcadia Holdings, Inc. was on the brink of failure and engaged in nefarious conduct to complete the Waitr acquisition. *See* Opp. at 27-31. But Landcadia was a typical special purpose acquisition company, designed for investors to pool their money so experienced operators could acquire ventures with growth potential. Waiting for the right deal, even if doing so required extending deadlines, is hardly unusual. In any event, the Section 14(a) claim should be dismissed for the AC's failure to plead any actionable misstatement or omission and scienter (or even negligence).

### A.   Plaintiffs Fail to Allege Any Actionable Misstatement in the Solicitation

The Opposition's incantations to the contrary notwithstanding, the Court should apply the heightened PSLRA standard to Section 14(a) claims because the AC grounds those allegations in fraud.[7] Even under a negligence standard, however, Plaintiffs' failure to plead actual *facts* misrepresented or omitted dooms Count I. *See supra* Section I(A). For example, Plaintiffs do not identify any falsity in statements regarding Waitr's pricing or labor models. *See* AC ¶¶ 31-34, 41-42. Instead, they generally claim Waitr's pricing was "unsustainable" and its labor model was "inefficient," *id.* ¶¶ 34, 42, but fraud-by-hindsight is not the law, and Plaintiffs allege no specific facts suggesting disclosures about pricing and labor models were inaccurate when made, *see*

---

[6] Plaintiffs' reliance on the so-called "core operations" theory does not add anything to the analysis. *See Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 754 (S.D. Tex. 2003) (rejecting core operations theory as failing to meet PSLRA particularity requirements).

[7] *See, e.g.*, *Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 145 n.9 (3d Cir. 2004) (14(a) claims must meet the PSLRA particularity requirements because grounded in fraud); *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 415 (D.N.J. 2005) (same).

*infra* Section II(C). Further, as explained above, statements about pricing, labor models, future growth, or technology are non-actionable corporate puffery or opinion. *See supra* Section I(A).

Plaintiffs invoke the Supreme Court's *Omnicare* decision to argue that opinions can be actionable under Section 14(a), Opp. at 38, but their argument misapplies the ruling and its progeny. To begin, Plaintiffs assume—without argument or authority—that *Omnicare* applies to Section 14(a) claims. Neither the Supreme Court nor the Fifth Circuit has so held, making the controlling authority *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991). There, the Supreme Court held statements of opinion can be actionable under Section 14 only if not sincerely believed when made. *Id.* at 1095-96. Plaintiffs make no such allegation. Moreover, Plaintiffs' allegations do not pass muster even under *Omnicare*. The Supreme Court made clear that "[t]he [plaintiff] must identify particular (and material) facts going to the basis for the [speaker's] opinion—*facts about the inquiry the [speaker] did or did not conduct or the knowledge [he] did or did not have*—whose omission makes the opinion statement at issue misleading . . . ." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015) (emphasis added). Plaintiffs fail to allege any of these required facts.

The Opposition likewise fails to identify any facts that render forward-looking statements—like those concerning Waitr's growth prospects—actionable. The Proxy Statement included many cautionary statements warning that such forward-looking statements "are based on information available as of the date of this proxy statement" and "should not be relied upon as representing our views as of any subsequent date." *See* Proxy at 5. Accordingly, any forward-looking statements in the solicitation materials are non-actionable under the PSLRA's "safe harbor" provision. 15 U.S.C. § 78u-5(c).

### B.   Plaintiffs Do Not Allege Scienter, Which Should Be Required To Plead a Section 14(a) Claim

Plaintiffs admit that courts are split on whether scienter must be established to plead a Section 14(a) claim, Opp. at 31-32, but nevertheless ask this Court to follow non-precedential and unpersuasive authority. The Court should decline their invitation.

9

Most decisions that reject scienter as an element of Section 14(a) ignore both the language and legislative history of the statute. For example, some courts focus on the absence of the words "manipulative or deceptive device," language that courts agree requires scienter under Section 10(b) of the Exchange Act. *See, e.g.*, *In re Willis Towers Watson PLC Proxy Litig.*, 439 F. Supp. 3d 704, 713 (E.D. Va. 2020). But these words do not carry talismanic importance and should not be the only statutory formulation that invokes scienter as a required element. Sections 10(b) and 14(a) both speak in terms of unlawful acts committed *affirmatively*: Section 10(b) and Rule 10b-5 prohibit making untrue statements, while Section 14(a) and Rule 14a-9 prohibit soliciting votes by false proxy. *Compare* 17 C.F.R. § 240.10b-5 *with* 17 C.F.R. § 240.14a-9(a). Because both address intentional conduct, it is reasonable to infer that both require scienter.

Other cases compare the wording of Section 14(a) to the wording of Section 11 of the Securities Act, but these also miss the mark. Unlike Sections 10(b) and 14(a) of the Exchange Act, Section 11 is a strict liability offense, thus requiring *no* state of mind to prove a claim. *See Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 732 (5th Cir. 2019). Section 11 uses passive language to describe a right to sue for buyers of securities whose registration statements are misleading, 15 U.S.C. § 77k(a), with no reference to action at all. Plaintiffs cannot credibly claim that Section 14(a) is a strict liability statute, and thus comparisons to Section 11 are inapt.

In ruling that scienter is required for Section 14(a) claims, the Sixth Circuit cautioned that interpreting the federal securities laws is "not simply a question of statutory interpretation" and that courts have "a special responsibility to consider the consequences of their rulings and to mold liability fairly to reflect the circumstances of the parties." *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 428 (6th Cir. 1980), *cert. denied*, 449 U.S. 1067 (1980). To avoid a liability-expanding interpretation that exceeds Congressional intent, "courts should . . . refer to the legislative history of the act." *Birdwell v. Skeen*, 983 F.2d 1332, 1337 (5th Cir. 1993). Even Plaintiffs concede that the legislative history of Section 14(a) demonstrates a Congressional

10

focus on fraud, and hence scienter. Opp. at 33-34. This Court should decline to follow decisions that interpret Section 14(a) inconsistently with that intent.

### C.     Plaintiffs Do Not Adequately Plead Negligence

Even if this Court concludes that negligence, and not scienter, is required to plead a Section 14(a) claim, the PSLRA still applies, and Plaintiffs still fall short.

Plaintiffs' contention that the PLSRA does not apply to claims sounding in negligence, Opp. at 34-36, is misguided.[8] The PLSRA was enacted to curtail meritless securities litigation by imposing "[e]xacting pleading standards" as "a check against abusive [securities] litigation." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). It requires plaintiffs to plead specific facts rather than conclusory assertions like those in the AC. *See id.*; *see* 15 U.S.C. § 78u-4(b)(2)(a). The Court should reject Plaintiffs' proposal because courts in this Circuit require heightened pleading of PSLRA-covered claims that sound in negligence (*see* Opening Br. at 20, collecting cases). Moreover, "[t]he text of the [PLSRA] provides no exception for standards of culpability lower than scienter." *In re McKesson HBOC Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) (finding "a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence").

Though Plaintiffs insist they plead negligence with particularity, Opp. at 35, they merely allege that Defendants "signed" or "assisted in the preparation of" proxy materials that allegedly contain omissions. *Id*. Plaintiffs do not explain what each Defendant knew (or should have known) or when they knew it, much less how each Defendant should have foreseen that Waitr

---

[8] Plaintiffs prefer the approach taken in *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009), which concluded negligence is a mindless failure and thus outside the PLSRA's heightened pleading standard.  But this rationale ignores the statute's language and clear intent: it refers not to "scienter" but to the broader phrase "state of mind," and it is implausible that Congress enacted the PLSRA to curtail abusive securities lawsuits sounding in fraud while permitting those sounding in negligence.

would be compelled to change its business plans in the future. The PLSRA—and indeed, Rule 8(a) of the Federal Rules—require more, even with respect to claims sounding in negligence.[9]

Nor can the Opposition excuse the AC's failure to plead which Defendant owed what duty. Opp. at 35-36. The law is not, as Plaintiffs wrongly state, that every defendant is liable for every misstatement in every document classified as proxy material, regardless of the role played with respect to the document or actual knowledge. *Id.* In each case they cite, the court required adequately specific facts regarding each defendant. *See SEC v. Hurgin*, 2020 U.S. Dist. LEXIS 162447, at *36 (S.D.N.Y. Sep. 4, 2020) (carefully examining defendant-specific facts); *In re McKesson HBOC Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1263 (N.D. Cal. 2000) (same).

Simply put, Plaintiffs bear the burden of alleging the duty each Defendant owed and facts from which breach of that duty can be inferred based on each Defendant's actual knowledge, role, and responsibilities.[10] *See, e.g.*, *SEC v. Shanahan*, 646 F.3d 536, 545-46 (8th Cir. 2011), *Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 917 (8th Cir. 2008), *Krieger v. Atheros Commc'ns, Inc.*, 2012 U.S. Dist. LEXIS 74214, at *22 (N.D. Cal. May 29, 2012). The AC does not even attempt to do this.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss the Amended Complaint, in its entirety and with prejudice.

Dated: February 8, 2021

         */s/   George Denegre, Jr.*
         George Denegre, Jr., T.A. (Bar #08387)
         **LISKOW & LEWIS, APLC**
         701 Poydras Street
         One Shell Square, 50th Floor
         New Orleans, LA 70139-5001
         Telephone: (504) 581-7979
         Facsimile: (504) 556-4108

---

[9] For the same reasons, the AC violates the Fifth Circuit's prohibition of group pleading. *See* Opening Br. at 28-29.

[10] The result Plaintiffs urge would be particularly unfair with respect to defendants like Mr. Handler, who Plaintiffs admit did not even make any of the at-issue statements (Opp. at 36 n.23).

Email: gdenegre@liskow.com

James K. Langdon (*pro hac vice*)
Andrew Brantingham (*pro hac vice*)
Caitlin L.D. Hull (*pro hac vice*)
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868
Email: langdon.jim@dorsey.com
      brantingham.andrew@dorsey.com
      hull.caitlin@dorsey.com

*Counsel for Defendants Christopher Meaux, David Pringle, Jeff Yurecko, Tilman J. Fertitta, Richard Handler, and Waitr Holdings, Inc.*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2021, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

/s/  George Denegre, Jr.
George Denegre, Jr