**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| WALTER WELCH, Individually and on Behalf of all Others Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) ) CIVIL ACTION NO. 2:19-cv-01260-TAD-KK |
| vs. | ) ) |
| CHRISTOPHER MEAUX, DAVID PRINGLE, JEFF YURECKO, TILMAN J. FERTITTA, RICHARD HANDLER, WAITR HOLDINGS, INC. f/k/a LANDCADIA HOLDINGS, INC., JEFFERIES FINANCIAL GROUP, INC., and JEFFERIES, LLC, | ) ) JUDGE: Terry A. Doughty ) ) ) MAGISTRATE JUDGE: Kathleen Kay ) ) ) ) |
| Defendants. | ) |

**WAITR DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND..................................................3

STANDARD OF REVIEW ....................................................................................4

ARGUMENT....................................................................................................5

I.      The Magistrate Judge Properly Recommended Dismissal of the Section 14(a) Claims................................................................................5

        A.      The Magistrate Judge Properly Determined Plaintiffs Failed to Plead Falsity................................................................................5

               1.      The Magistrate Judge Correctly Rejected Plaintiffs' Business Model, Take Rate, and W-2 Employee Allegations as Either Truthful Statements or Nonactionable Opinions....................................................... 6

               2.      The Magistrate Judge Properly Rejected Plaintiffs' Allegations About Waitr's Differentiated Technology Platform........................................................................ 9

               3.      Cautionary Language Protects Certain Forward-Looking Statements Challenged by Plaintiffs ............................... 9

               4.      Subsequent Business Adjustments and Statements by Mr. Grimstad Do Not Save Plaintiffs' Section 14(a) Claim................. 10

        B.      The Magistrate Judge Properly Found that Even Under a Negligence Standard Plaintiffs Had Not Met Their Pleading Burden...............................................................................13

I I.     Plaintiffs Fail to Plead Particularized Facts Supporting Their Section 10(B) and Section 20(a) Claims...............................................................17

        A.      The Magistrate Judge Properly Concluded that Plaintiffs Failed to Identify Any False Statement or Material Omission ...............................17

               1.      The Magistrate Judge Correctly Rejected Plaintiffs' Business Model, Take Rate, and W-2 Employee Allegations as either Truthful or Nonactionable Opinion............. 18

               2.      The Magistrate Judge Correctly Rejected Plaintiffs' Differentiated Technology Platform Allegations as Truthful....... 20

3.       The Magistrate Judge Properly Rejected Plaintiffs' Bite Squad Acquisition Allegations as Corporate Puffery or Conclusory ...................................................................... 21

B.       The Magistrate Judge Correctly Determined the Amended Complaint Failed to Meet Scienter Requirements ....................................21

III.     The Court Should Deny Plaintiffs' Request for Leave to File a Second Amended Complaint ...............................................................................24

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Standard Knitting Mills, Inc.*,
623 F.2d 422 (6th Cir. 1980), *cert. denied*, 449 U.S. 1067 (1980)..........................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................15

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
757 F.Supp.2d 260 (S.D.N.Y. 2010)..............................................................................15

*Battle v. U.S. Parole Comm'n*,
834 F.2d 419 (5th Cir. 1987) ..........................................................................................4

*Bluestone v. Sadove*,
No. 3:18-cv-63, 2019 U.S. Dist. LEXIS 62207 (E.D. Tenn. Mar. 14, 2019) ...........................7

*In re Capstead Mortg. Corp. Sec. Litig.*,
258 F.Supp.2d 533 (N.D. Tex. 2003) ...............................................................................19

*Coates v. Heartland Wireless Commc'ns, Inc.*,
100 F.Supp.2d 417 (N.D. Tex. 2000) ................................................................................22

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)...............................................................................................24

*Firefighters Pension & Relief Fund v. Bulmahn*,
147 F.Supp.3d 493 (E.D. La. 2015)...................................................................................7

*Gallegos v. Equity Title Co. of Am., Inc.*,
484 F.Supp.2d 589 (W.D. Tex. 2007)................................................................................5

*Hall v. Rent-A-Ctr., Inc.*,
2017 U.S. Dist. LEXIS 205959 (E.D. Tex. Oct. 19, 2017) .......................................12, 13, 23

*Heck v. Orion Grp. Holdings, Inc.*,
468 F.Supp.3d 828 (S.D. Tex. 2020) .................................................................................24

*In re Hutchinson Tech., Inc. Sec. Litig.*,
536 F.3d 952 (8th Cir. 2008) ...........................................................................................24

*Masel v. Villarreal*
924 F.3d 734 (5th Cir. 2019) .....................................................................................13, 20

*In re McKesson HBOC Inc. Sec. Litig.*,
126 F.Supp.2d 1248 (N.D. Cal. 2000) ...............................................................................14

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270 (N.D. Cal. Oct. 16,
2018), *aff'd*, 806 F. App'x 603 (9th Cir. 2020) .............................................................14, 15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).............................................................................................................7

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) .........................................................................................12, 20

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
620 F.3d 465 (5th Cir. 2010) ...............................................................................................24

*Rubinstein v. Collins*,
20 F.3d 160 (5th Cir. 1994) ................................................................................................10

*SEC v. Shanahan*,
646 F.3d 536 (8th Cir. 2011) ..............................................................................................16

*Smallwood v. Pearl Brewing Co.*,
489 F.2d 579 (5th Cir. 1974) ..............................................................................................16

*TSC Industries, Inc. v. Northway, Inc.*,
426 U.S. 438 (1976)............................................................................................................16

*Tuchman v. DSC Communications Corp.*,
14 F.3d 1061 (5th Cir. 1994) ..............................................................................................17

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991)......................................................................................................6, 16

**Statutes**

28 U.S.C. § 636(b)(1) ..............................................................................................................4

Exchange Act Section 10(b) ...................................................3, 7, 13, 16, 17, 18, 21, 22

Exchange Act Section 14(a)..........................................2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 18

Exchange Act Section 20(a)...........................................................................................4, 17

Securities Act of 1933 Section 11.......................................................................................7, 16

**Other Authorities**

Fed. R. Civ. P. 9 .................................................................................................17, 18, 19, 20, 23

L.R. 74.1(B) ......................................................................................................................4

Pursuant to 28 U.S.C. Section 636(b)(1)(C) and F.R.C.P. 72, the Waitr Defendants[1] respectfully submit this Response to Plaintiffs' Objections ("Objections") (Dkt. 93) to the Report and Recommendation of Magistrate Judge Kathleen Kay (the "Report") (Dkt. 89) regarding the Waitr Defendants' Motions to Dismiss (Dkt. 47) the Amended Complaint ("AC").

## **INTRODUCTION**

Magistrate Judge Kay's Report rightly recognized the Amended Complaint fails to allege a single actionable misrepresentation or omission under the federal securities laws. Those laws require materially accurate disclosure so that investors have appropriate information on which to base their investment and shareholder voting decisions. The securities laws, however, do not guarantee protection against the inherent risks any investor takes in acquiring a company's stock. Here, the relevant disclosures accurately disclosed key information about Waitr's business, but the company's post-closing performance did not meet expectations.  Because those disclosures were accurate, the disappointing results do not give rise to a viable securities law claim.

As the Report recognizes, this case does not bear the hallmarks of actionable misrepresentation. Instead, as is true of many start-ups, the officers and directors of Waitr, a competitor in the online food delivery industry, had high hopes for the company's success. They were energetic and driven people who frequently expressed their optimistic opinions in generalities. They also accurately reported the company's financial performance; the bases for their projections about future performance; the risks (and impact) of various obstacles to success, including harsh competition; and even the risks associated with the company's unique business

---

[1] "Waitr Defendants" means Christopher Meaux, David Pringle, Jeff Yurecko and Tilman Fertitta (collectively, the "Individual Defendants"), Richard Handler and Waitr Holding, Inc. ("Waitr"). Jefferies Financial Group, Inc. and Jefferies LLC are referred to as the "Jefferies Defendants".

model. As Magistrate Judge Kay properly concluded, investors had full—and accurate—disclosure from which to make their own investment decisions.

As the Magistrate Judge also recognized, although the Amended Complaint may be chock full of repetitive, rhetorical flourish, it does not supply the necessary "something more" to support an actionable claim. Unlike the cases on which Plaintiffs rely (in which courts have declined to dismiss securities fraud claims), Plaintiffs have not pleaded specific, particularized facts to establish the falsity or the materiality of the statements they challenge. The Court will not find any factual allegation supporting the contention Waitr—or any other Defendant—mislead investors about the sustainability of Waitr's business model, the competitive strength of Waitr's software programs, or the value of the Bite Squad acquisition. Instead, Plaintiffs merely point to optimistic pronouncements (general, and often forward-looking, opinions) and, with the clarity of hindsight, lament that Waitr did not ultimately achieve the hoped-for success. Under the rigorous pleading standard imposed by the Private Securities Litigation Reform Act ("PSLRA"), disappointing results are not—without more—a basis for Plaintiffs' claims under Section 14(a) of the Exchange Act (asserted against the Waitr Defendants and the Jefferies Defendants on behalf of Lancadia shareholders for alleged misstatements in proxy materials) or under Sections 10(b) and 20(a) of the Exchange Act (against the Waitr Defendants on behalf of Waitr shareholders, who purchased in the new public market, for alleged misrepresentations in public statements).

The Objections attempt to fill this hole by emphasizing after-the-fact commentary by Waitr's new CEO, Carl Grimstad, in which he expressed his opinions about the company's prior business model and the best path forward. Plaintiffs also contend the Magistrate Judge applied the wrong legal standard in assessing those (and other) statements. Neither argument is

2

meritorious. Rather, the Magistrate Judge considered those allegations and correctly concluded, under the applicable standards, they were not sufficiently specific and factual to support an inference that any Defendant misrepresented or omitted material facts. The two Fifth Circuit cases on which Plaintiffs now rely to argue otherwise (*see* Dkt. 93 at 21-22) are easily distinguished because the plaintiffs in those cases made specific factual allegations about information allegedly known at the time that contradicted the challenged statements. Plaintiffs here do no such thing and instead point to commentary from an executive who was not employed by Waitr when the challenged statements were made and who said nothing about the knowledge or opinions of any Defendant at that time.

As a result, and for this reason alone, the Report concluded the Amended Complaint does not state an actionable claim under the Securities Exchange Act. As an independent and additional basis for dismissal, the Magistrate Judge also properly concluded Plaintiffs failed to plead negligence for the Section 14(a) claim and scienter for the Section 10(b) claim.

Magistrate Judge Kay reached these conclusions after she considered full briefing from the parties, heard lengthy oral arguments, and received demonstrative exhibits. In a 62-page Report, she carefully considered, and roundly rejected, the very arguments Plaintiffs offer this Court. Her analysis was thoughtful, and her reasoning was correct. The Court accordingly should adopt the Report in its entirety.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed suit on September 26, 2019 (Dkt. 1), and the parties briefed motions to dismiss filed by the Waitr Defendants and the Jefferies Defendants, which the Court referred to the Magistrate Judge for report and recommendation. The Waitr Defendants incorporate by reference the factual backgrounds set forth in the opening briefs filed in support of both motions (Dkt. 45-1 at 5-7; Dkt. 47-1 at 4-8) and note the Amended Complaint challenges some 32 alleged

3

misrepresentations and/or omissions as the basis for claims under Section 14(a), Section 10(b) and Rule 10b-5, and Section 20(a) of the Exchange Act. *See* Dkt. 47-2; *see also* Langdon Declaration Ex. A.[2] The Waitr Defendants likewise incorporate by reference the transcript from oral argument held by the Magistrate Judge. Dkt. 81.

Magistrate Judge Kay issued two reports.  The first report addresses the Waitr Defendants' motion to dismiss and recommends dismissal of all claims for failure to allege an actionable statement or omission. Dkt. 89. The second report confirms the analysis in the first report applies equally to the Jefferies Defendants' motion to dismiss. Dkt. 94. In the Objections to the first report, which Plaintiffs incorporated into their Objection to the second report (Dkt. 95), Plaintiffs group their alleged misrepresentations and omissions into three categories: (1) statements regarding Waitr's business model (including growth potential, take rate, and labor model); (2) statements regarding Waitr's differentiated proprietary technology; and (3) statements regarding Waitr's acquisition of Bite Squad.[3] *See* Obj. at 4, 13, 20, and 22.

## STANDARD OF REVIEW

"A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject or modify in whole or in part, the findings or recommendations made by the magistrate judge." W.D. La., L.R. 74.1(B); *accord* Obj. at 3; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). General, vague, conclusive, or frivolous objections will not suffice, however. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). In such cases, the court will only

---

[2] Exhibit A to the Declaration of James Langdon, attached hereto, consists of the demonstrative exhibits used during oral argument on the Defendants' motions to dismiss and includes charts and timelines of the alleged misrepresentations and omissions from the Amended Complaint.

[3] Only the first two groups of allegations are relevant to the claims alleged under Section 14(a).

review the magistrate judge's findings to determine if they are clearly erroneous or contrary to the law. *See Gallegos v. Equity Title Co. of Am., Inc.*, 484 F.Supp.2d 589, 591 (W.D. Tex. 2007) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989)).

## ARGUMENT

**I.     The Magistrate Judge Properly Recommended Dismissal of the Section 14(a) Claims**

Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), prohibits the solicitation of proxies by virtue of misleading proxy statements or other solicitation materials. To state a claim under Section 14(a), plaintiffs must allege "proxies necessary to approval of the merger were obtained by means of a materially misleading solicitation." Report (Dkt. 89) at 14 (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 386 (1970)) (internal quotation marks omitted). Plaintiffs must also satisfy the particularity requirements imposed by the PSLRA and adequately plead specific facts showing at least negligence on the part of Defendants, as discussed below. Because the Magistrate Judge correctly assessed Plaintiffs' Section 14(a) claim, the Court should adopt the Report and dismiss Count I as to all the Defendants.

**A.     The Magistrate Judge Properly Determined Plaintiffs Failed to Plead Falsity**

As the Magistrate Judge correctly concluded, Plaintiffs cannot point this Court to any factual statement that was false or misleading when made. *See* AC ¶¶ 31-34, 41-42. Plaintiffs instead challenge accurate factual statements about key features of Waitr's business model and nonactionable opinions about the hoped-for advantages of that model, effectively arguing that the Waitr Defendants "omitted" to disclose that Waitr's business model was destined to fail. Obj. at 4-5 (citing AC ¶¶ 29, 31, 33, 37, 39, 41).[4] But literally true statements and honestly held

---

[4] Plaintiffs do not object to the Magistrate Judge's recommendation that the Court dismiss the following allegations related to their Section 14(a) claim: statements regarding onboarding fees (R&R at 22-23), statements describing Waitr as a "first mover" in a "tertiary market" (*id.* at 23-24), statements describing the benefits from Fertitta's experience and portfolio of holdings (*id.* at 24-25), and financial statements and growth projections (*id.* at 28-31).

5

opinions cannot give rise to Section 14(a) liability. Nor can post-class-period statements by non-parties who had no involvement with the business at the time establish liability. The Court should adopt the Magistrate Judge's Report and dismiss the Section 14(a) claims in full.

> **1.    The Magistrate Judge Correctly Rejected Plaintiffs' Business Model, Take Rate, and W-2 Employee Allegations as Either Truthful Statements or Nonactionable Opinions**

Plaintiffs contend the Report largely fails to consider whether Defendants made misleading omissions and instead "analyzes the alleged misstatements only in isolation and recommends dismissal because it finds certain statements 'literally' true." Dkt. 93 at 3-4 (citing Report at 20, 22, 26, 28, 30). But a careful reading of the Report makes quite clear the Magistrate Judge considered both alleged misstatements *and* omissions; she concluded each alleged misrepresentation or omission was non-actionable for specific reasons, characterizing specific statements as either objectively true or non-actionable opinions, puffery or immaterial. *See, e.g.*, Report at 17-31. For instance, the Magistrate Judge found statements that Waitr was a "growth business" with a "proven expansion strategy" literally true in May 2018 (*id.* at 20), Tilman Fertitta's opinion regarding the complementary nature between his businesses and Waitr to be a non-actionable opinion (*id.* at 25), and no material omission regarding Waitr's technology platform (*id.* at 26-27).

Plaintiffs next argue that the Magistrate Judge applied the wrong standard when analyzing opinion statements. Dkt. 93 at 9-11. The Magistrate Judge correctly applied *Virginia Bankshares v. Sandberg*, which specifically addressed the requirements to prove an opinion actionable under Section 14. 501 U.S. 1083, 1095-96 (1991). The Supreme Court's decision in *Virginia Bankshares* requires a plaintiff challenging opinion statements under Section 14(a) to prove the statement was both objectively false and not sincerely held. *Id.*; *see also* Report at 20.

Plaintiffs do not do so, and the Magistrate Judge therefore correctly dismissed claims based on allegedly misleading statements of opinion. *See* Report at 31.

Plaintiffs instead ask this Court to ignore *Virginia Bankshares* and apply *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-89 (2015), a case that examined claims brought under Section 11 of the Securities Act of 1933. *Omnicare* found that a plaintiff challenging opinion statements under Section 11 must "identify particular (and material) facts going to the basis for the [speaker's] opinion—*facts about the inquiry the [speaker] did or did not conduct or the knowledge [he] did or did not have*—whose omission makes the opinion statement at issue misleading . . .." *Id.* at 194. Contrary to Plaintiffs' claim that courts have universally applied *Omnicare* to Section 14 claims (Dkt. 93 at 9, n.7), however, the Fifth Circuit has not. And courts in other jurisdictions have rejected Plaintiffs' position outright. *See, e.g.*, *Bluestone v. Sadove*, No. 3:18-cv-63, 2019 U.S. Dist. LEXIS 62207, at *21 (E.D. Tenn. Mar. 14, 2019) (declining to apply *Omnicare* to Section 14(a) claims). In fact, the Eastern District of Louisiana has refused to extend *Omnicare*'s standard to claims brought under Section 10(b) of the Exchange Act based on forward-looking statements, noting the significant differences between the Securities Act and Section 10(b). *Firefighters Pension & Relief Fund v. Bulmahn*, 147 F.Supp.3d 493, 528 (E.D. La. 2015) (but noting that *Omnicare* provided "guidance" as to non-forward-looking statements). This Court should not disregard *Virginia Bankshares* by extending *Omnicare* to Plaintiffs' Section 14(a) claims.

Even under *Omnicare*, however, Plaintiffs' claims fail for the same reasons that Magistrate Judge Kay rejected them:  opinion statements that Waitr was a "growth business" with a "proven expansion strategy" were true. Waitr *was* a "growth business" with a "proven expansion strategy" in May 2018, when the complained-of statements were made. Report at 18-

20 (citing AC ¶¶ 16, 122, 125). Moreover, the "projections were based on accurate historical trends, and corollary risks and uncertainties were identified in the proxy statement," rendering "any omissions these statements contain [] immaterial." Report at 20 (citing *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F.Supp.3d 644, 651 (S.D. Tex. 2016)). Mr. Meaux's statements that Waitr had "the most attractive pricing in the industry, at 15% take rate" and Mr. Fertitta's description of the take rate as one of "Waitr's edges" were similarly true when made—Waitr *did* offer "an industry-low 15% take rate when these statements were made in May to October 2018." Report at 22 (citing Dkt. 37 at 72). Plaintiffs offer "no basis . . . to infer falsity" about this statement, and in all events, the Proxy Statement detailed certain risk factors that might lead to future rate raises, including "lack of long-term data on revenue streams, onboarding fees, and service and delivery fees." *Id.* (citing Dkt. 47-2 at 77-78).[5]

These allegations are insufficient because the PSLRA does not permit fraud-by-hindsight pleading. Simply because "Waitr ultimately incurred extra costs due to its labor force structure and strategically changed its technology development source after these statements were made [this] does not change the fact that the identified statements were truthful when uttered." R&R at 28. Thus, whether analyzed under *Virginia Bankshares* or *Omnicare*, the Court should adopt the Report's conclusion that none of the opinion statements challenged by Plaintiffs provide any basis for liability.

---

[5] Statements about Waitr's use of a W-2 employee model were likewise all true when made. *See* Report at 27-28. Thus while the Amended Complaint challenges statements that focused on "user experience (uniforms, performance), the employee's experience (stable job environment, community), and the company's ability to control these factors through scheduling and quality control measures," the Magistrate Judge correctly found that Plaintiffs "do[] not identify anything misleading" about these statements. *Id.* Plaintiffs at most make "a generalized criticism of the W-2 labor model as inefficient and expensive" and essentially assert that "Waitr should have known better than to choose this labor model." *Compare id.* at 28 *with* Obj. at 7.

**2.      The Magistrate Judge Properly Rejected Plaintiffs' Allegations About Waitr's Differentiated Technology Platform**

Plaintiffs next contend the Magistrate Judge incorrectly analyzed alleged misstatements regarding Waitr's "differentiated proprietary technology platform" as being "literally true." Dkt. 93 at 8 (citing R&R at 25-26). Plaintiffs do not dispute, however, that the statements made *were* literally true (*id.*), since Waitr did possess software and openly headquartered its software engineers in Lake Charles, Louisiana (R&R at 25-26 (citing AC ¶¶ 31-39)). Instead, Plaintiffs argue that the statements were misleading because the "growth" Waitr expected as a result of its software was not achieved and the company switched to a new platform in August 2019, months after the statements had been made. Dkt. 93 at 8 (citing AC ¶¶ 156, 173). Once again, fraud by hindsight pleading is not sufficient. Because "the Amended Complaint identifies no omission of material fact in the . . . descriptions of Waitr's technology platform," (R&R at 27), the Magistrate Judge properly concluded Plaintiffs' allegations cannot support a Section 14(a) claim.

**3.      Cautionary Language Protects Certain Forward-Looking Statements Challenged by Plaintiffs**

Plaintiffs also fault the Magistrate Judge's observation that "the Proxy Statement itself contained cautionary language relevant to [all] categories of allegedly misleading statements" (Dkt. 93 at 8 (citing R&R at 17-18)), and her conclusion that such language adequately warned Waitr investors and thus precludes liability for forward-looking statements.

Plaintiffs first argue that the cautionary language should be ignored because "all but one of the statements at issue were made months earlier than the Proxy Statement." *Id.* (citing AC ¶¶ 29, 31, 33, 35, 37). This (new) argument is meritless. The oral statements were made part of solicitation materials that included the Proxy Statement, which is the only reason that they are subject to Section 14(a) in the first place. That Proxy Statement detailed highly specific

9

cautionary disclosures concerning the very risk factors Plaintiffs allege were concealed, and Plaintiffs offer no authority to support the distinction they purport to draw.

Plaintiffs also mischaracterize Waitr's comprehensive risk disclosures as "boilerplate" that did not "dispel" various "misleading impressions." Dkt. at 8. Not so. Optimism about Waitr's low take rate was coupled with clear warnings in the Proxy Statement that future rate increases might be both necessary and unsuccessful; statements about Waitr's increased restaurant membership and revenue growth were tempered by the warning that the company did "not enjoy long historical data trends" and that its ability to diversify beyond current "revenue sources . . . has not been demonstrated." Dkt. 47-2 at 77-78; *see also* Report at 17.[6]

A reasonable investor would have thus heeded these many cautionary statements, as well as the warning that all forward-looking statements "are based on information available as of the date of this proxy statement" and "should not be relied upon as representing our views as of any subsequent date." Dkt. 47-2 at 37; *accord* Report at 17.  Where, as here, "optimistic projections are coupled with cautionary language—in particular, relevant specific facts or assumptions— affecting the reasonableness of the reliance on and the materiality of those projections," that is precisely the purpose of the "bespeaks caution" doctrine that the Magistrate Judge applied here. *See Rubinstein v. Collins*, 20 F.3d 160, 167-68 (5th Cir. 1994).

### 4. Subsequent Business Adjustments and Statements by Mr. Grimstad Do Not Save Plaintiffs' Section 14(a) Claim

Plaintiffs now place greater emphasis on post-class-period statements by Waitr's then-new CEO, Carl Grimstad, as purported proof of the falsity of earlier statements (Dkt. 93 at 2, 5-

---

[6] The Proxy Statement also warned of "cost increases outside of our control that could materially reduce our profitability if we are unable to increase our rates sufficiently." Dkt. 47-2 at 43. Similarly, optimism about Waitr's technology was balanced by clear warnings that the Company "face[d] substantial competition in technology innovation and distribution" and that inability "to continue to innovate and provide technology desirable to diners and restaurants" could cause the business to "materially suffer." *Id.* at 88.

8, 10,13, 16-19, 23). But the post-class-period statements by Mr. Grimstad are far from an "admission" that the Waitr Defendants made any misstatement or omission. Mr. Grimstad's statements do not claim—or even imply—that his predecessors misrepresented facts known at the time. Rather, Mr. Grimstad's statements simply evidence his belief that his business strategy is *better* than those who came before him. *See* AC ¶¶ 196-97.

As an example, Plaintiffs allege Mr. Grimstad stated "Waitr's business model was never sustainable, because it was based on a 'driver model that could never work' and a 'service offering [that] was mispriced,'" and perceived that pricing analyses performed under his predecessor were lacking. Dkt. 93 at 5-6 (citing AC ¶¶ 196, 197; Dkts. 93-1 & 93-2). Plaintiffs would have it that Mr. Grimstad's Monday-morning-quarterbacking somehow renders his predecessors' comments about the company's business model and prospects retroactively false and misleading. It does not.

To begin with, Mr. Grimstad's statements shed no light as to the truth of the statements at the time they were made, and Plaintiffs cannot gainsay the reality that the original business model did work for some time—which is all that was reported to investors. Nor do Plaintiffs purport to say that any of the financial information, or other *facts* actually disclosed by the company, were *ever* false.  Plaintiffs' reliance on Mr. Grimstad's opinions falls far short of the PSLRA's requirement of particularized allegations of fact. Furthermore, Plaintiffs ask the Court to conclude that the Waitr Defendants must have held the same opinions as Mr. Grimstad, although the Complaint includes no such allegations. For all these reasons, the Magistrate Judge thus properly disregarded Mr. Grimstad's alleged statements, focusing instead on the statements made by the Waitr Defendants during the class period. *See* Report at 28 (citing *Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*, No. 4:13-CV-2393, 2015 U.S. Dist. LEXIS

11

31468, at *28 (S.D. Tex. Mar. 13, 2015)) ("Absent substantiation, [] later results do not establish that the earlier statements were false when made.").

Plaintiffs similarly point to Waitr's eventual decision to increase its take rate as evidence that prior statements had been an "illusion," citing to allegations from Confidential Witness 1 that the "unilateral increases in the take rate were necessary for Waitr to 'continue doing business and be solvent.'" Dkt. 93 at 5 (citing AC ¶¶ 90, 193). The alleged statements from Confidential Witness 1, however, do not implicate the knowledge, involvement, or opinions of *any* Defendant. *See* AC ¶¶ 90, 193. They accordingly are irrelevant.

Likewise, the Magistrate Judge properly disregarded Plaintiffs' rank speculation about the post-class-period resignation of Mr. Meaux and Mr. Pringle. *Compare Rosenzweig*, 332 F.3d at 867 (affirming dismissal for failure to plead scienter where "successive resignations of key officials . . . is more likely probative only of the fact that the company was failing") *with Hall v. Rent-A-Ctr., Inc.*, 2017 U.S. Dist. LEXIS 205959, at *11-13, 102 (E.D. Tex. Oct. 19, 2017) (executive terminations and resignations support inference of scienter when paired with confidential employee witness statements regarding defendants' knowledge).

The two Fifth Circuit opinions to which Plaintiffs now point for the proposition that later conduct or statements, in some instances, can be sufficient to allege the falsity of earlier statements (Dkt. 93 at 17, 21 and 24), are readily distinguishable from the circumstances here. In *Plotkin v. IP Axess Inc., Etc.*, for example, the misrepresentations at issue related to specific contracts and receivables defendants had allegedly earned and were paired with allegations that some of the contracts did not exist and defendants knew the purchase orders would not be paid. 407 F.3d 690, 693, 695, 697-98 (5th Cir. 2005). Accordingly, the post-statement events were "so temporally connected that they shed light on the financial condition at the time of the

12

announcements ….” *Id.* at 698. Here, there are no such particularized allegations of falsities known when the statements were made. Similarly, *Masel v. Villarreal* involved particularized factual allegations about the efficacy of a specific asset (a billing algorithm facilitating collection of payments due) and how much money could be collected, when in fact the asset was worthless and no money was collected. 924 F.3d 734, 739, 750 (5th Cir. 2019). The Fifth Circuit concluded that, where “the representation in question concerned an asset or skill possessed by the defendant, [his] failure to perform as promised casts doubt on whether he possessed that skill in the first place.” *Id.* Here, there is no allegation Defendants were unable to perform entirely; nor do Plaintiffs identify any subsequent statement from any Defendant.  The Court’s pianist analogy accordingly does not fit what Plaintiffs here alleged.

> **B.     The Magistrate Judge Properly Found that Even Under a Negligence Standard Plaintiffs Had Not Met Their Pleading Burden**

The Magistrate Judge identified a second and independently fatal pleading defect in the Amended Complaint:  Plaintiffs failed to “plead specific facts that give rise to a ‘strong inference’ that each defendant acted with the requisite state of mind of at least negligence,” as required by the PSLRA. *See*, *e.g.*, R&R at 22 (citing *Hohenstein v. Behringer Harvard Reit I, Inc.*, No. 3:12-CV-3772-G, 2014 WL 1265949, at *10 (N.D. Tex. Mar. 27, 2014); *see also* Report at 25 (recommending dismissal of claims because the “Complaint provides no basis to assume that [Defendant] Fertitta made these statements negligently”). Although the Report identifies only two instances in which the failure to plead facts showing negligence specifically supported dismissal, the conclusion applies to all of the alleged misstatements and omissions because Plaintiffs do not allege facts that give rise to an inference of negligence for any of them.

Plaintiffs contend that the Magistrate Judge improperly “conflate[d] the pleading standard for Section 14(a) claims with the enhanced pleading standard for claims, such as Section 10(b),

that require plaintiffs to plead a 'strong inference of scienter' (*i.e.*, 'a particular state of mind')."

Dkt. 93 at 11 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 317-29 (2007)).

Plaintiffs also quarrel with the Magistrate Judge's conclusion that the PSLRA applies to Section

14(a) claims in the first place, arguing that negligence is not a "state of mind" and can therefore

be pleaded in conclusory fashion. Dkt. 93 at 16-18. Plaintiffs are wrong as to both.

Magistrate Judge Kay properly concluded that Section 14(a) claims remain subject to the

PSLRA's particularity requirement. Report at 15 (citing *Camelot Event Driven Fund v. Alta

Mesa Res., Inc.*, No. 4:19-CV-957, 2021 WL 1416025, at *10 (S.D. Tex. Apr. 14, 2021)); *accord

In re McKesson HBOC Inc. Sec. Litig.*, 126 F.Supp.2d 1248, 1267 (N.D. Cal. 2000) ("a Section

14(a) plaintiff must plead with particularity facts that give rise to a strong inference of

negligence"). The Magistrate Judge also properly held that, to meet PSLRA requirements,

Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons

why the statement is misleading, and, if an allegation regarding the statement or omission is

made on information and belief ... all facts on which that belief is formed." Report at 15 (quoting

*Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-4330, 2021 WL 1421603, at *5 (S.D. Tex.

Apr. 13, 2021)) (internal citation marks omitted); *accord In re Ocera Therapeutics, Inc. Sec.

Litig.*, No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270, at *37-38 (N.D. Cal. Oct. 16, 2018)

(The PSLRA also requires that Plaintiffs plead "how each Defendant was negligent . . . clearly

articulating the duty each Defendant had to the Plaintiffs and how their failure to satisfy that duty

gave rise to negligence."), *aff'd*, 806 F. App'x 603 (9th Cir. 2020). The Amended Complaint

falls woefully short of this requirement—indeed, Plaintiffs plead *no* facts suggesting that any Defendant's conduct was negligent (much less facts sufficient to show any strong inference).[7]

Plaintiffs instead rely on formulaic conclusions that the Section 14(a) claims "are based in negligence" and that "Defendants were required to assure that statements contained in the" proxy solicitation materials "were true, accurate and reliable." AC ¶ 27. Such conclusory assertions are insufficient to plead negligence even under the generous standards of Rule 8(b) of the Federal Rules of Civil Procedure, much less under the PSLRA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re Ocera Therapeutics Sec. Litig.*, 2018 U.S. Dist. LEXIS 219270, at *35-36 (negligence not pled where "there are no facts alleging [d]efendants failed to review certain materials, or were neglecting their responsibilities, or designed and oversaw a flawed review process"); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 757 F.Supp.2d 260, 323 (S.D.N.Y. 2010) (generic allegations about "due diligence . . . are too thin to ascribe even negligence" for Section 14(a)); *Bond Opportunity Fund*, 2003 U.S. Dist. LEXIS 7838, at *14 ("[p]laintiffs may not impute knowledge to the individual [d]efendants solely on the basis of the positions they held").

Plaintiffs' impermissible group pleading fares no better. Although the Amended Complaint asserts that a "time crunch prevented Defendants from doing thorough due diligence" (AC ¶ 68), Plaintiffs allege nothing about what diligence was conducted, by whom, much less why it was supposedly inadequate. And while Plaintiffs recite a handful of public comments by certain Individual Defendants (*see* App'x A, Nos. 1-8), they never explain how *all* Section 14(a) Defendants could be liable for a statement made by one person, nor do they even attempt to

---

[7] Nor do Plaintiffs allege what actions particular Defendants took with respect to preparing for the analyst calls and other statements on which Plaintiffs purport to base their claims, let alone what materials would have led the non-speaking Defendants to conclude that the speakers had made a misleading statement.

15

attribute portions of challenged statements to each Defendant or explain why each Defendant should have known about inaccuracies. Instead, Plaintiffs argue it is sufficient simply to allege "Meaux, Pringle, Fertitta, and Handler signed, made, and/or assisted in the preparation of the proxy filings" and "JFG and/or Jefferies served as underwriters for the Going Public Transaction." Dkt. 93 at 12 (citing AC ¶¶ 8-11, 13-14).[8] Such group pleading is impermissible in the Fifth Circuit and particularly problematic where, as here, specific defendants had different roles and different levels of access to information. *See Southland*, 365 F.3d at 365 (applying PSLRA in context of a Section 10(b) claim).[9]

Although this Court, like Magistrate Judge Kay, need not address state of mind given the absence of an actionable misstatement or omission, it bears emphasis that Plaintiffs have failed to adequately plead even negligence, and the Section 14(a) claims are subject to dismissal on that additional basis. In addition, the Waitr Defendants respectfully submit Plaintiffs must plead scienter—not negligence—under Section 14(a).[10]

---

[8] As explained in the Jefferies Defendants' Motion to Dismiss, Plaintiffs do not alleged facts demonstrating that the Jefferies Defendants were underwriters and, in any event, Plaintiffs do not assert any claims of underwriter liability under the Securities Act of 1933, such as under Section 11 thereof. Dkt. 45 at 5-6 and n.5.

[9] Nor do Plaintiffs adequately allege the specific legal or fiduciary duties that each Section 14(a) Defendant supposedly owed and upon which any finding of negligence must rest. *See, e.g.*, *SEC v. Shanahan*, 646 F.3d 536, 545-46 (8th Cir. 2011) (a finding of negligence in the context of a Section 14 action requires that a defendant owed a duty of care).

[10] The Magistrate Judge found that dismissal was warranted under the lesser burden of negligence, but the Supreme Court itself has twice expressed doubt that *any* Section 14 claim can be established without pleading scienter (though it has reserved ruling on the question of whether scienter is required under Section 14(a)). *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 444 n.7 (1976); *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1090 n5 (1991). The Fifth Circuit has not yet reached the question, which has split other Circuit courts, but as explained in the Sixth Circuit's opinion in *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 428-30 (6th Cir. 1980), *cert. denied*, 449 U.S. 1067 (1980), "the overall structure and collective legislative histories of the securities laws, as well as important policy considerations" favor a scienter requirement for Section 14(a)." Requiring scienter for Section 14(a) claims also ensures consistency in the Fifth Circuit's standards for liability under Sections 14(a) and 14(e) of the Exchange Act. *See, e.g.*, *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 606 (5th Cir. 1974) (scienter required for Section 14(e) claims). Thus, even if Plaintiffs had adequately pleaded an actionable misstatement or omission plus negligence—and they have not—the Section 14(a) claims must be dismissed because Plaintiffs admit they have not pled scienter. AC ¶ 17.

16

## II.   Plaintiffs Fail to Plead Particularized Facts Supporting Their Section 10(B) and Section 20(a) Claims[11]

The Magistrate Judge likewise recommends dismissal of Plaintiffs' Section 10(b) and Rule 10b-5 claim, correctly concluding "the alleged statements do not give rise to a strong inference of knowing falsity and therefore do not meet the pleading requirements established by Fed. R. Civ. P. 9(b) and the PSLRA and therefore warrant dismissal under Fed. R. Civ. P. 12(b)(6)." R&R at 60. Indeed, pursuant to Rule 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud or mistake," including "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (citation omitted); *accord* R&R at 32. "The PSLRA reinforces the particularity requirements of Fed. R. Civ. P. 9 with respect to pleading securities-fraud claims." R&R at 33 (citing *Schiller*, 2002 WL 318441, at *4; *Coates I*, 26 F.Supp.2d at 914). "A plaintiff alleging securities fraud must, therefore, not only allege the time, the place, the identity of the speaker, and the content of the alleged misrepresentation, but also explain why the challenged statement or omission is false or misleading." *Id.* (citing *Williams v. WMX Tech.*, 112 F.3d 175, 179 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 412 (1997).

### A.   The Magistrate Judge Properly Concluded that Plaintiffs Failed to Identify Any False Statement or Material Omission

Plaintiffs insist statements regarding Waitr's business model, differentiated proprietary technology, and Bite Squad acquisition were false or misleading,[12] but the allegations pled are

---

[11] The parties agree that, at the pleading stage, Plaintiffs' Section 20(a) claims rise or fall with their Section 10(b) and Rule 10b-5 claim. *See* Dkt. 47 at 19; Dkt. 93 at 25; *see also* Report at 61.

[12] Plaintiffs do not object to the Magistrate Judge's recommendation that the Court dismiss the following allegations related to their Section 10(b) claim: statements describing Waitr as a "first mover" in a "tertiary market" (R&R at 43-44), statements describing the benefits from Fertitta's experience and portfolio of holdings (*id.* at 45-46), and

17

neither detailed nor compelling and fall far short of the heightened particularity requirements demanded by Rule 9 and the PSLRA. Because the Amended Complaint challenges not the accuracy of the *facts* disclosed but merely the Waitr Defendants' *interpretation* of those facts, the Magistrate Judge properly recommends dismissal of Count II.

> **1.    The Magistrate Judge Correctly Rejected Plaintiffs' Business Model, Take Rate, and W-2 Employee Allegations as either Truthful or Nonactionable Opinion**

As with their Section 14(a) allegations, Plaintiffs argue that the Waitr Defendants' statements "relentlessly tout[ing] Waitr's business model," including its secondary market focus, take rate, and W-2 employee structure, were "materially misleading" under Section 10(b). Dkt. 93 at 14 (citing AC ¶¶ 98, 100, 123, 126). But the Amended Complaint includes no particularized allegation of *falsity* related to any of these topics. Instead, as the Magistrate Judge found, all statements were either true or otherwise non-actionable puffery, opinion, or forward-looking.

For instance, statements regarding the perceived "advantage" of the "fixed cost" of Waitr's W-2 employees, smaller driver corps, and uniformed drivers as "enhanc[ing] the quality of the experience for both restaurants and consumers," do not identify any fact misrepresented or omitted. *See id*. (citing AC ¶ 100); R&R at 50. Instead of identifying any actual falsity or omission, Plaintiffs again rely solely upon Mr. Grimstad's alleged opinion that the W-2 model "could never work." Dkt. 93 at 14-15. As explained *supra* Section I(A)(5), the Magistrate Judge properly disregarded such statements from a third party that are not tied to any Defendant's knowledge or action and which constitute non-actionable opinions in any event.

---

financial statements and growth projections (*id.* at 51-56).

Plaintiffs further criticize the Magistrate Judge for recommending dismissal of the W-2 claims where the Waitr "Defendants intentionally omitted a key negative fact with regards to its labor model (*i.e.*, its profitability), while only discussing positive aspects of the model," which Plaintiffs insist "is a textbook example of securities fraud." Dkt. 93 at 15 (citing *Lormand*, 565 F.3d at 248-49). In so arguing, Plaintiffs disregard the Magistrate Judge's "careful examination of the quoted statements" (R&R at 50) and misapply the law. "[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx*, 563 U.S. at 44. Rather, "[d]isclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (ellipsis in original) (quoting 17 C.F.R. § 240.10b-5). Here, Plaintiffs do not identify *how* any statement was rendered misleading by the Waitr Defendants' failure to explicitly note that the February 2019 FLSA suit by drivers could impact profitability. *Compare* R&R at 50-51 *with* Dkt. 93 at 14-15. Instead, Plaintiffs complain that they would have liked to know more about this (publicly available) information. "[A] corporation 'is not required to disclose a fact merely because a reasonable investor would very much like to know that fact,'" however. *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F.Supp.2d 533, 556 (N.D. Tex. 2003) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)).  In any event, Plaintiffs do not contend the financial information Waitr disclosed, which included information about revenues and expenses, was incorrect.

The Magistrate Judge therefore properly determined that the Amended Complaint's allegations regarding Waitr's W-2 model (R&R at 48-51), as well as its market position and take rate (*id.* at 37-43), failed to meet pleading requirements under Rule 9 and the PSLRA.

### 2. The Magistrate Judge Correctly Rejected Plaintiffs' Differentiated Technology Platform Allegations as Truthful

Plaintiffs next argue the Magistrate Judge erred in concluding that their allegations regarding Waitr's technology platform failed to meet Rule 9 and PSLRA pleading requirements. Dkt. 93 at 20-22. In short, Plaintiffs argue that the Waitr Defendants misrepresented that Waitr used a "scalable software to provide a consistent and robust user experience" and that the platform "creat[ed] leveragable advantages in [Waitr's] business model," when in reality the platform was not performing well and would be replaced by August 2019. *Id.* at 20 (citing AC ¶¶ 121, 123, 128, 136, 145).

That Waitr entered into a technology-related partnership, however, does not establish that earlier statements were misrepresentations. Unlike in *Masel*, for instance, Plaintiffs do not allege that the platform *never* worked. *See* 924 F.3d at 750. And, unlike in *Plotkin*, Plaintiffs do not allege the Waitr Defendants falsified the existence of contracts or misled investors about receivables. *See* 407 F.3d at 698. Moreover, Waitr issued cautionary statements on the precise issues Plaintiffs raise, acknowledging that the Company "face[d] substantial competition in technology innovation and distribution" and its inability "to continue to innovate and provide technology desirable to diners and restaurants" could cause the business to "materially suffer." Dkt. 47-2 at 47. Waitr's open acknowledgement of these risks, as well as its openness about basing software developers in Lake Charles, Louisiana, undercuts any allegation of falsity with respect to Waitr's technology platform. *See* R&R at 48; *see also id.* at 26-27.

The Magistrate Judge therefore properly concluded that Plaintiffs failed to identify any actionable statement or omission with respect to Waitr's technology platform.

**3.      The Magistrate Judge Properly Rejected Plaintiffs' Bite Squad Acquisition Allegations as Corporate Puffery or Conclusory**

In objecting to the Magistrate Judge's rejection of their Bite Squad allegations, Plaintiffs improperly characterize the Report and Recommendation as rejecting the allegations solely for failing to meet scienter requirements. Dkt. 93 at 23 (citing R&R at 58-59). But the Magistrate Judge also concluded that certain of the Bite Squad allegations—including allegations "about why Waitr acquired Bite Squad"—were nonactionable corporate puffery. R&R at 58. Likewise, although the Magistrate Judge did note "some lack of consistency between Meaux's May 2019 statement that the integration of Bite Squad is 'moving along nicely' and Price's August 2019 statement that the integration was more challenging than initially imagined" (Dkt. 93 at 23 (citing R&R at 58-59)), she nevertheless concluded that the "moving along nicely" statement amounts to non-actionable corporate puffery (R&R at 59 (citing *Southland*, 365 F.3d at 372)). The Magistrate Judge further rejected Plaintiffs' allegations that the Bite Squad "acquisition was ill-conceived and the integration of Bite Squad into Waitr was both impossible and inconsistent with Waitr's early growth goal" as conclusory and unsupported by particularized facts. R&R at 59 (citing AC ¶ 122). The Court should reach the same conclusion.

**B.      The Magistrate Judge Correctly Determined the Amended Complaint Failed to Meet Scienter Requirements**

Plaintiffs further argue that the Magistrate Judge erroneously concluded that the Amended Complaint lacked scienter for its allegations regarding the Waitr business model. Dkt. 93 at 15 (citing R&R at 43, 44, 55-56). Not so. Rather, the Magistrate Judge properly applied the well-established standards for Section 10(b) and Rule 10b-5 claims, which require that the "state of mind 'is an intent to deceive, manipulate, or defraud or severe recklessness.'" R&R at 34 (quoting *Lormand*, 565 F.3d at 251). Under this standard, where scienter relies upon inferences, "a complaint will survive a motion to dismiss 'only if a reasonable person would deem the

21

inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs*, 127 S. Ct. at 2510); *see also Coates v. Heartland Wireless Commc'ns, Inc.*, 100 F.Supp.2d 417, 422 (N.D. Tex. 2000).

Plaintiffs urge the Court to reassess scienter from a "holistic" perspective (Dkt. 93 at 14-15), but the Magistrate Judge's careful and detailed assessment of each allegation was more than sufficient to determine that no "strong inference" arose. For instance, the Court concluded that an equally cogent and compelling inference from Mr. Meaux's statements about its growth models is that he "believed what he said and that he hoped Waitr's past growth would be a model for its future growth," as opposed to Mr. Meaux perceiving the flaws in the business model and knowing they would fail. R&R at 39-40. Similarly, the Court concluded that Mr. Meaux's statements regarding the take rate undermine any inference of an intent to deceive (*id.* at 43) and that no scienter inference could be drawn from Mr. Meaux's statements regarding the Bite Squad acquisition, which was underway in May 2019 (*id.* at 58-59).

Plaintiffs confuse the issue by pointing to alleged statements from *Mr. Grimstad* as supposedly giving "rise to a particularly strong inference of scienter on their own." Dkt. 93 at 16. As previously discussed, however, the Amended Complaint does not provide any particularized allegation as to how *Mr. Grimstad's* statements and knowledge can be imputed to any particular *Defendant*, as is necessary to establish scienter under Section 10(b). *See* R&R at 34-35 ("Plaintiffs cannot rely on group pleading and 'must allege facts sufficient to raise a strong inference of scienter with respect to each individual defendant.'") (quoting *R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005)).[13]

---

[13] This is true even under a reckless state of mind assessment, which still requires individualized pleading of "those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."

22

In any event, Plaintiffs do not cite any case law applying this approach in the manner they seek to do here. Nor do they explain how their allegations, even viewed "holistically," satisfy the dictates of Rule 9 and the PSLRA. Speculation that Mr. Fertitta and Richard Handler had mal intent based on the timing and potential profitability of the Going Public Transaction cannot outweigh the equally (or more) compelling inferences that they believed in the Company (in which they invested their own capital) and wanted it to succeed.

Mr. Pringle and Mr. Meaux's departures do not support a finding of scienter, as explained *supra* Section I(A)(5). Unlike in *Hall v. Rent-A-Ctr., Inc.*, No. 4:16cv978, 2017 U.S. Dist. LEXIS 205959, at *101-02 (E.D. Tex. Oct. 19, 2017), where the executive resignations were accompanied by press releases indicating that the "change [in leadership] was aimed at improving shareholder value," Mr. Pringle and Mr. Meaux's departures are not tied to any of the alleged statements or omissions alleged by Plaintiffs.

Finally, Waitr's receipt of a request from the SEC voluntarily to provide documents cannot itself evidence any finding of scienter. As explained in the Waitr Defendants' response to Plaintiffs' request to supplement the Amended Complaint with this information (Dkt. 88), a voluntary request from the SEC does not even require the production of documents, and, unlike a charging document, in no way suggests that the SEC perceives that a violation of the securities laws has occurred. *See* SEC Enforcement Manual § 3.2.3 (explaining that voluntary requests are routinely used even "before the staff opens an investigation"). As courts have made clear, the "mere existence of an SEC investigation [and here there is not even an investigation, but rather a voluntary request] does not suggest that any of the allegedly false statements were actually

---

*Indiana Electrical*, 537 F.3d at 533 (citation omitted); *accord* R&R at 34. Plaintiffs have not plead particularized allegations showing how each Defendant allegedly departed from his ordinary care or that each Defendant knew or should have known that such departure could mislead buyers.

23

false . . . ." *See, e.g.*, *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 962 (8th Cir. 2008); *see also* Dkt. 88. This mid-litigation request from the SEC thus has absolutely no bearing on the state of mind of the Waitr Defendants during the period at issue in this case.

The Magistrate Judge therefore properly concluded that Plaintiffs failed to plead scienter with respect to Count II.

### III. The Court Should Deny Plaintiffs' Request for Leave to File a Second Amended Complaint

Plaintiffs' preemptive request for leave to amend should be denied. Plaintiffs do not offer any detail regarding how an amendment would overcome the pleading deficiencies in their current 99-page Amended Complaint. Absent the sort of particularized factual allegations necessary to establish the Waitr Defendants made a false and actionable statement—which details would have been forthcoming long ago had they existed—any amended complaint will be destined to meet the same end as this one. *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) ("The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss."). Put another way, "[t]he problem with [plaintiffs'] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Heck v. Orion Grp. Holdings, Inc.*, 468 F.Supp.3d 828, 863 (S.D. Tex. 2020) (amendment to Exchange Act claims futile where plaintiff failed to "describe[] any additional facts that could be alleged . . . that could not have been alleged in the" prior complaint and where "the court is persuaded that [] Plaintiff has pleaded his best case"). Accordingly, the Court should deny Plaintiffs' request that it be granted leave to amend.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court overrule the

Objections and adopt the Magistrate Judge's Report and Recommendation in its entirety.


Dated: August 9, 2022                    */s/ George Denegre, Jr.*
                                         George Denegre, Jr., T.A. (Bar #08387)
                                         **LISKOW & LEWIS, APLC**
                                         701 Poydras Street
                                         One Shell Square, 50th Floor
                                         New Orleans, LA 70139-5001
                                         Telephone: (504) 581-7979
                                         Facsimile: (504) 556-4108
                                         Email: gdenegre@liskow.com

                                         James K. Langdon (*pro hac vice*)
                                         Andrew Brantingham (*pro hac vice*)
                                         Caitlin L.D. Hull (*pro hac vice*)
                                         **DORSEY & WHITNEY LLP**
                                         50 South Sixth Street, Suite 1500
                                         Minneapolis, MN 55402
                                         Telephone: (612) 340-2600
                                         Facsimile: (612) 340-2868
                                         Email: langdon.jim@dorsey.com
                                                 brantingham.andrew@dorsey.com
                                                 hull.caitlin@dorsey.com

                                         *Counsel for Defendants Christopher Meaux,*
                                         *David Pringle, Jeff Yurecko, Tilman J. Fertitta,*
                                         *Richard Handler, and Waitr Holdings, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 9, 2022, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

*/s/ George Denegre, Jr.*_____
George Denegre, Jr